IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

LEO DONOHOE,                              :
                                          :
        **Plaintiff,**                    :
                                          :
v.                                        :        Civil Action No.: 07-949 (RWR)
                                          :
BONNEVILLE INT'L CORP.,                   :
                                          :
        **Defendant.**                    :

**MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO INCREASE THE NUMBER OF DEPOSITIONS**

Having taken no depositions in this case, and as of the date of his motion scheduled only

one, preliminarily, and citing no authority, plaintiff Leo Donohoe asks this Court to increase the

number of depositions from seven to 25 each – for potentially 350 hours of total deposition time

(50 times seven hours per deposition per side), all to be completed in the next 51 days, by May

16, 2008.[1]  One would think from plaintiff's motion that he were prosecuting a complex class

action.  But he is not.  This is a single plaintiff age discrimination case involving one reduction in

force ("RIF") in one division of a company.  Plaintiff fails to make even the requisite showing as

to why a more than three-fold increase in the number of depositions is necessary in this

straightforward case, particularly at this juncture when he has not yet taken a single deposition.

Instead, he presents a list of ancillary and redundant witnesses, some of whom may have little or

no information relevant to this action.  The relief plaintiff seeks would unduly prejudice

Bonneville.  Accordingly, plaintiff's motion should be denied.

---

[1] Since he filed his motion, plaintiff's counsel has noticed seven depositions.

## BACKGROUND

In the spirit of cooperation, Bonneville agreed at the October 26, 2007 Scheduling

Conference to increase the Court's recommended number of depositions for standard cases such

as this from five to seven each.  Bonneville sees no reason why seven depositions are not

sufficient.  Plaintiff knew at that time that over 50 employees in Bonneville's Washington DC

Radio Group had been RIF-ed on January 4, 2006 and that a small group of Bonneville

corporate/HR employees and managers were responsible for implementing the RIF and

"involved with the employment decisions at issue," Mot. at 3.  Plaintiff was well aware at that

time that Michael Spacciapolli, the employee selected over Mr. Donohoe for the new position for

which Mr. Donohoe applied, was a likely witness.  And it is no surprise that Bonneville's one

expert would need to be deposed.  However, in an effort to resolve the instant motion without

Court intervention, Bonneville offered plaintiff a compromise of 12 depositions each, including

experts.  Plaintiff counter offered with 18 depositions each.  Because 12 depositions each is more

that sufficient for a simple age discrimination case such as this, and for the further reasons

outlined in this opposition, the parties were unable to reach agreement.

## ARGUMENT

It is well settled that a party is not entitled to take the deposition of each and every

individual who may have relevant information in a case.  "The mere fact that many individuals

may have discoverable information does not necessarily entitle a party to depose each such

individual."  *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996).  In *Bell v. Fowler*,

99 F.3d 262 (8th Cir. 1996), for example, the Eighth Circuit held that the district court did not

abuse its discretion when it denied the plaintiff's request to take the depositions of two additional

city council members when the plaintiff had already deposed eight city council members, the

2

mayor, and the former police chief.  *Id.* at 271.  The court noted that the plaintiff failed to demonstrate that these two additional council members were likely to reveal any new information.  *Id.*

It is generally held that a party seeking to exceed the limits on depositions contemplated by the Rules must satisfy certain requirements, all notably absent here:

1.  The party must show that *each* additional deposition will reveal new information that has not already been revealed in the previously allowed depositions;

2.  The party must show that the depositions already taken were themselves necessary and not duplicative or otherwise unjustified;

3.  The party must exhaust his already-allowed depositions before moving for the additional depositions;

4.  The party must have exhausted less expensive and burdensome means of discovery before resorting to a request for relief; and

5.  The party must demonstrate a factual basis, such as the case's particular complexity, justifying the need for the additional depositions.

Plaintiff cannot even make the threshold showing that the additional depositions he seeks will reveal new information that has not already been revealed in previously allowed depositions or that the depositions already taken were themselves necessary – <u>because he has yet to take a single deposition</u>.

Plaintiff's motion is premature.  In *Barrow v. Greenville Indep. Sch. Dist.*, the court held that a party requesting more than ten depositions must demonstrate the need not only for the additional depositions but also for the depositions already taken.  202 F.R.D. 480, 482-83 (N.D. Tex. 2001).  Absent such a rule, "a party could circumvent the cap by taking ten depositions of

questionable relevance first and leave the most crucial depositions for the end, confident in the

belief that leave of the court shall not be denied." *Id.* at 483. *Newell v. State Teamsters Joint*

*Council No. 39*, No. 05-C-552, 2007 U.S. Dist. LEXIS 82253, at *3–4 (E.D. Wis. Oct. 25, 2007);

*see also Lewis v. Mt. Morris Twp.*, No. 06-cv-15428, 2007 U.S. Dist. LEXIS 72489, at *1–2

(E.D. Mich. Sept. 28, 2007) (citing *Barrow* for the proposition that "[c]ourts ordinarily require a

particularized showing of necessity for each additional deposition" over the 10-deposition limit);

*Mazur v. Lampert*, No. 04-61159, 2007 U.S. Dist. LEXIS 13934, at *5 (S.D. Fla. Feb. 28, 2007)

(denying motion for extra depositions where plaintiff had only taken five depositions; the party

must justify all the previously taken ten depositions in order to get more, and a particularized

showing is necessary); *Baker County Med. Servs. v. Summit Smith, LLC*, No. 05-cv-541, 2007

U.S. Dist. LEXIS 1967, at *4–5 (M.D. Fla. Jan. 9, 2007) (particularized showing is required); *In*

*re At Home Corp.*, No. 04-0931, 2005 U.S. Dist. LEXIS 43437, 2005 WL 289976, *3 (N.D. Cal.

Feb. 4, 2005) (same).

Similarly, in *Finazzo v. Hawaiian Airlines*, No. 05-524, 2007 U.S. Dist. LEXIS 34606

(D. Haw. May 10, 2007), the court, in denying plaintiff's requested extra depositions, observed

that (1) a particularized showing is necessary for the additional discovery; that (2) "[c]ourts do

not grant leave to take additional depositions until the moving party has exhausted the ten

depositions permitted as of right" because the Rule "clearly contemplates that a party has already

taken ten depositions before a motion is filed" for leave to exceed the limit. *Id.* (quoting *Lloyd v.*

*Valley Forge Life Ins. Co.*, No. 06-5325, 2007 U.S. Dist. LEXIS 40526, 2007 WL 906150, at *2

(W.D. Wash. Mar. 23, 2007)); *see also Mazur*, 2007 U.S. Dist. LEXIS, at *5–6 (same); *Gen.*

*Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 3:06-CV-232, 2006 WL 1525970, at *2 (D. Conn.

May 25, 2006) (observing that "courts will generally not grant leave to expand the number of

depositions until the moving party has exhausted the ten depositions permitted as of right");

*Whittingham v. Amherst Coll.*, 163 F.R.D. 170, 171 (D. Mass. 1995) explaining similar local rule

by noting that the rule "requires a party to exhaust available discovery before seeking leave for

additional discovery events").  The court also observed that (3) "[i]t is also necessary that the

moving party have exhausted less expensive and burdensome means of discovery before

resorting to a request for relief."  *Id.* (quoting *Lloyd*, 2007 WL 906150, at *2); *see also Alaska*

*Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519, 2006 U.S. Dist. LEXIS 59095 (D.N.J.

Aug. 18, 2006) (discussing same principles discussed in *Finazzo*).

Furthermore, as a factual matter, the plaintiff must be able to show some complexity to

his case, or other justifying reason to obtain the requested additional discovery.  *See*, *e.g.*, *Campo*

*v. Am. Corrective Counseling Servs.*, No. 01-21151, 2007 U.S. Dist. LEXIS 87150, at *15–18

(N.D. Cal. Nov. 6, 2007) (additional depositions allowed in Fair Debt Collection Practices Act

class action, seeking to certify a state-wide class covering a span of many years (where five

plaintiffs were already named and eleven defendants remained in suit), where "the complexity

clearly warrant[ed] more than ten depositions" – but allowing less (23, including the eleven

defendants) than the requested 30 depositions).  This is no such case.  Here, one plaintiff brings

suit against one defendant over his termination and the failure to rehire him following a single

RIF in a single market.

On March 21, 2008, after serving his motion, plaintiff noticed seven depositions:  those

of Mark O'Brien, a former General Manager at Bonneville's former radio station Z104, who left

the company a year before the RIF and who is not listed in plaintiff's motion; two employees –

John Hesano and Christine Travaligni – from Bonneville's representation firm Katz who

attended a meeting in which applicants for the new Director of National Sales/Sports Sales

position were briefly discussed; Jean Fowler, a Bonneville sales employee not included in the

RIF and not listed in plaintiff's motion; Joel Oxley; Matt Mills; and Bonneville's 30(b)(6)

corporate designee.  Yet he has failed to notice more crucial depositions, such as Bonneville's

damages expert, Dr. Paul White, Mr. Spacciapolli, the allegedly less qualified younger employee

who was hired for the position for which Mr. Donohoe applied after the RIF, and corporate/HR

professionals responsible for implementing the RIF, Scarlett Pate and Joan Henson.  It is

apparent from plaintiff's shotgun approach that he may not be able to justify the necessity of

even the majority of the seven depositions just noticed.  But exhaustion of his seven depositions

through ancillary witnesses is no justification for granting plaintiff's motion for even more

depositions either now or upon completion of those seven depositions.

There is no reason that plaintiff must depose dozens of individuals when the information

they have is cumulative and duplicative of other witness testimony as well as of information

contained in the three bankers boxes of documents Bonneville has already served on plaintiff in

response to his discovery requests.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (allowing court to limit

discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some

other source that is more convenient, less burdensome, or less expensive").  A case in point is

plaintiff's insistence on deposing all seven Katz employees who attended a meeting with Joel

Oxley and Matt Mills at which there was a brief discussion about candidates for the new Director

of National Sales/Sports Sales position.  Such opinions of third parties do not amount to "direct

involvement" in Bonneville's hiring decisions, Mot. at 3.  Plaintiff's counsel is free to contact the

Katz employees identified in defendant's disclosures and discovery responses.  Should he do so,

he will likely learn that any relevant information about opinions briefly shared in a meeting will

be cumulative and that depositions of all identified Katz employees is wholly unwarranted, since

most of them attended the same meeting.  The better course is to depose one representative

witness, the witness plaintiff determines to have the most relevant information.

In addition, plaintiff offers no viable explanation as to why he would need to depose all

57 employees who were RIF-ed on the same day as Mr. Donohoe – particularly to the extent

those employees worked in the corporate, programming, marketing, IT and additional

departments other than sales, where Mr. Donohoe was employed.  Whether the 57 RIF-ed

employees could have relevant knowledge of Bonneville's "motivation" for the RIF, the

inclusion of Mr. Donohoe in the RIF or the "motivation" behind the rehiring of employees is

questionable.  Mot. at 2.  Those decisions were made by corporate and department heads already

identified by Bonneville in its initial disclosures and discovery responses.  The opinions of the 57

RIF-ed employees on these topics would be speculative at best, as well as cumulative and unduly

burdensome.  Plaintiff is free to depose similarly situated sales managers and employees who

were RIF-ed, such as Michael Spacciapolli, but to depose the 50 other employees is not justified.

Furthermore, the "different set of witnesses" Plaintiff cites, Mot. at 2, with relevant

information about the decision to hire Michael Spacciapolli over Mr. Donohoe for the new

position of Director of National Sales/Sports Sales are Joel Oxley and Matt Mills, already

identified as the principle decision makers involved in the January 4, 2006 RIF.

Moreover, according to his motion, plaintiff also seeks to depose Bonneville's CEO and

COO, Bruce Reese and Bob Johnson.  Requests to depose corporate executives "serve as a

potent tool for harassment in litigation."  *Wertheim Schroeder & Co. v. Avon Products, Inc.*, No.

91 CIV. 2287, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995) (denying deposition of corporate

officers when information they could offer would be duplicative); *see also Tri-Star Pictures, Inc.*

*v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. 1997) (citations omitted) ("[w]hen the discovery to be

obtained is through the deposition of a senior executive, a court must remain mindful that

permitting unfettered discovery of corporate executives would threaten disruption of their

business and could serve as a potent tool for harassment in litigation" (placing strict restrictions

upon continued deposition of Columbia Pictures' Senior Vice President)).  Thus, where – as here

– a party can obtain relevant information through other means, courts commonly view deposing

a corporate litigant's president or CEO as vexatious and harassing.  A party who can obtain

necessary information from a less burdensome and expensive source, such as subordinates, has

no justification for deposing a corporation through its president or CEO "other than to afford an

opportunity to vex and harass an opposing litigant."  *New Sanitary Towel Supply, Inc. v. Consol.*

*Laundries Corp.*, 24 F.R.D. 186, 189 (S.D.N.Y. 1959).  This is particularly true where, as here,

the executives do not have personal knowledge about the specific inclusion of Mr. Donohoe in

the suit or the decision not to rehire him.  *See Harris v. Computer Assocs. Int'l Inc.*, 204 F.R.D.

44, 46 (E.D.N.Y. 2001) (observing that "[d]epositions of high level corporate executives may be

duplicative, cumulative and burdensome where the person sought to be deposed has no personal

knowledge of the events in dispute"); *see also Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 333-

35 (M.D. Ala. 1991) (denying plaintiff's request to depose corporate vice president who lacked

unique personal knowledge of the issues).

        Finally, contrary to plaintiff's false claims, Bonneville's counsel did not and would not

instruct any Bonneville employee or other potential fact witness "not to cooperate informally

with Plaintiff."  Mot. at 3.  Counsel instructed Bonneville's employees that they could respond to

Plaintiff's lawyer's queries but they did not have to.  They were told the decision was up to them.

*See* Declaration of Constance M. Pendleton, Esq. ("Pendleton Decl.") at 3.  Accordingly,

Plaintiff has not been "prevented from informally gathering information from many of the

critical fact witnesses that are still employed by Defendant." Mot. at 3. In fact, since plaintiff

filed this motion, plaintiff's counsel continues to contact Bonneville's employees to discuss the

suit. *See* Pendleton Decl. at 4. Bonneville's counsel reiterated to those contacted employees that

it was their choice whether they wished to speak with plaintiff's counsel or not. *See id.* There is

zero basis, therefore, for plaintiff's misleading assertion that he "has no choice," Mot. at 3, but to

depose these witnesses.

It is Bonneville – not plaintiff – that would be seriously prejudiced by the more than three

fold increase plaintiff seeks from 14 to 50 total depositions in this case. Remarkably, Plaintiff

demands what could amount to 252 additional hours of depositions (36 additional depositions

between the parties times seven hours per deposition), plus innumerable hours of preparation and

travel time for lawyers and witnesses alike, when he has not yet taken a <u>single</u> deposition and

preliminarily scheduled but one, as of the date of his motion. In a case such as this, "where the

sole object is to recover money, the cost of discovery is something the court should have in mind

when contemplating limitations on the amount of discovery activity that is appropriate."

8 Charles Alan Wright, Arthur R. Miller & Richard A. Marcus, *Federal Practice and Procedure*

§ 2008.1, at 120 (1994). Moreover, to claim that this request "will not delay any further

proceeds in this matter," Mot. 5, is a false hope indeed, when the already once postponed

discovery deadline looms a mere 51 days away.

WHEREFORE, Defendant Bonneville respectfully requests that the Court deny

Plaintiff's motion for leave to increase the number of depositions in this case from seven (7) to

twenty-five (25) each.

Dated: March 26, 2008

DAVIS WRIGHT TREMAINE LLP


   /s/  Constance M. Pendleton

Richard L. Cys (D.C. Bar No. 087536)
Constance M. Pendleton (D.C. Bar No. 456919)
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006-3402
(202) 973-4200
(202) 973-4499 facsimile
richardcys@dwt.com
conniependleton@dwt.com

Counsel for Defendant Bonneville International
   Corporation

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th of March 2008, true and correct copies of the

foregoing Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave

to Increase the Number of Depositions and Declaration of Constance M. Pendleton in support

were served by first class mail, postage prepaid, and electronic mail upon:

> Thomas L. McCally, Esq.
> Carr Maloney P.C.
> 1615 L Street, NW
> Suite 500
> Washington, D.C. 20036

                                                   /s/ Constance M. Pendleton
                                                  Constance M. Pendleton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **LEO DONOHOE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.: 07-949 (RWR)** |
| | : | |
| **BONNEVILLE INT'L CORP.,** | : | |
| | : | |
| **Defendant.** | : | |

**DECLARATION OF CONSTANCE M. PENDLETON  IN SUPPORT OF**
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO**
**INCREASE THE NUMBER OF DEPOSITIONS**

I, Constance M. Pendleton, Esq. declare as follows:

1.      I am a partner in the law firm of Davis Wright Tremaine LLP, and I represent the

defendant Bonneville International Corporation in this action.

2.      At no time did I instruct any Bonneville employee or any other fact witness in this

case not to speak with plaintiff Leo Donohoe or his lawyers in this action.

3.      To the contrary, when I learned that plaintiff's counsel contacted certain of my

client's current employees about this lawsuit, some of these employees asked me if they "had to"

talk to plaintiff's counsel.  I advised them that they could speak with plaintiff's counsel, but that

they did not have to speak with plaintiff's counsel and that the decision was up to each

employee.

4.      Upon information and belief, since plaintiff filed this motion, plaintiff's counsel

continues to contact Bonneville's employees to discuss the suit.  Bonneville's counsel has since

reiterated to those contacted employees that it was their choice whether they wish to speak with

plaintiff's counsel or not.

I declare under penalty of perjury that the foregoing is true and correct.


Executed:     Washington, D.C.
              March 26, 2008


                                        _Constance M. Pendleton_
                                        Constance M. Pendleton

2