IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO INCREASE THE NUMBER OF DEPOSITIONS**

On or about March 12, 2008, Plaintiff filed a Motion for Leave to increase the number of depositions from seven (7) to twenty-five (25). The Plaintiff demonstrated in his Motion that the requested increase in the number of depositions is necessary in order to allow Plaintiff to effectively conduct discovery in this matter, as there are numerous employment decisions that are at issue. Furthermore, the number of depositions requested is also justified based upon the number of witnesses that have been identified by the parties during the course of discovery as having knowledge relevant to the claims that have been asserted in this matter.

It is important to note that even prior to the exchange of Initial Disclosures and prior to the receipt of Defendants responses to written discovery requests, Plaintiff requested that he be permitted to take a minimum of ten (10) depositions. The Court held at the Scheduling Conference that each party would be permitted to take seven (7) depositions, stating that the parties could request additional depositions if necessary. Information adduced during the course written discovery makes it readily apparent that additional depositions are necessary.

As courts in this jurisdiction have consistently recognized, establishing discrimination is not

often easy.  Employers do not generally tell employees that they are being terminated because they are a certain race, ethnicity or a certain age.  Often times, employers attempt to insulate themselves from legitimate claims of discrimination by disguising the true motivation for the termination. One way that employers sometimes attempt to conceal the true motivation behind termination is by characterizing such improperly motivated terminations as a "Reduction in Force."

Such is the situation in the case at bar.  This is not, as Defendant contends, a simple employment discrimination case involving a straight-forward termination.  In this case, Plaintiff challenges multiple employment decisions, including the implementation of the Reduction in Force itself, the decision to include the Plaintiff in the Reduction in Force even though Plaintiff was primarily performing services for WTOP (a radio station that was not impacted by the RIF), the rehiring process that was implemented after the Reduction in Force was imposed (in which a significantly younger workforce was re-hired) and the decision not to re-hire the Plaintiff after the RIF and to instead hire a much younger, much less experienced individual to take over the Plaintiff's job responsibilities.

Under the law of this jurisdiction, Plaintiff bears the ultimate burden of establishing that the motivation behind each of these decisions was improper and illegal, and that the reasons proffered by the Defendant are pretext for discrimination.  In order to satisfy this burden, Plaintiff must be given the opportunity during the course of discovery to investigate the decisions fully, and elicit testimony not only from the decision makers themselves (who most assuredly are not going to admit to the discrimination), but also from others who have insight and relevant information regarding how and why the decisions were made.   This testimony will be critical to Plaintiff's ability to defend against dispositive motions, which the Defendant ultimately will file in this matter.  Requiring Plaintiff to establish motive and then limiting the Plaintiff's ability to obtain evidence of

motive and pretext would not only be unfair and prejudicial to the Plaintiff, but would also undermine the very purpose of the District of Columbia Human Rights Act (DCHRA).

It is Plaintiff's contention that the "Reduction in Force" was implemented as a tool to eliminate certain protected employees. This is not mere speculation, nor would permitting the Plaintiff to conduct depositions of current and former employees of Bonneville be a mere fishing expedition. In fact, informal interviews with some of the witnesses have confirmed that it was immediately apparent that the Reduction in Force was a "joke" and that it was clear that Bonneville was using the RIF as a clearing house to get rid of certain employees that it may be risky to terminate. Informally, these witnesses have also indicated that although the proffered reason for the Reduction in Force was that WGMS was going to be moving in a new direction, it in fact continued on in the same format for well over a year. These witnesses, some of which are still employed by Bonneville, have indicated that they cannot sign affidavits to that effect for fear of retaliation, but that they would testify to that effect if deposed.[1] Plaintiff should be permitted the opportunity to obtain this testimony, and the Court should have the benefit of considering such testimony in response to Motions for Summary Judgment and at the trial of this matter.

Witnesses have also informally advised that Matt Mills, who was Plaintiff's supervisor, was clearly trying to get rid of the "veteran" workers in order to replace them with a younger workforce. Upon information and belief, other employees had raised concerns that Mr. Mills was discriminating against older workers during the time period surrounding the employment decisions that are at issue. Plaintiff's counsel has been advised that at least one former worker had reviewed a file that contained evidence of complaints against Matt Mills. Interestingly, Defendant has failed to

---

[1] Counsel's signature to this pleading constitutes an affirmation that the facts contained herein are true and accurate, rendering it unnecessary to execute an affidavit to support these representations. If, however, counsel's ethical obligation is not sufficient, Counsel would be happy to present testimony under oath

produce any such evidence during the course of discovery - despite the fact that it was specifically requested. Deposing this individual is necessary not only to establish motivation and pretext, but also to demonstrate that Defendant has not been forthright in responding to discovery requests.

As indicated above, witnesses that have informally provided such information are hesitant to voluntarily execute affidavits for fear of retaliation. Although some of the witnesses are no longer employed by Bonneville, many still conduct business with Bonneville and are not willing to voluntarily formally participate in this law suit. This leaves Plaintiff in the untenable position of having no way to produce formal evidence that clearly will establish motive and pretext absent the ability to depose these individuals.

The Defendant objects to the increase based almost exclusively on an unfounded assertion that the witnesses listed by Plaintiff have cumulative or irrelevant information. This assertion is completely unsupported by Defendant's own discovery responses and is absolutely incorrect. In fact, each of the witnesses identified is expected to render testimony that is directly relevant to the Plaintiff's claims, and that is essential to establishing that the Defendant's proffered reasons for the employment decisions at issue were and are pretext for the true motivations behind the employment decisions – age discrimination.

Contrary to the assertion in Defendant's Opposition, Plaintiff never requested the opportunity to depose all of the individuals who were impacted by the Reduction in Force. (Defendant's Opposition, page 7). In fact, Plaintiff – who has limited resources as compared to Defendant, an international corporation - has carefully considered which witnesses are critical to the prosecution of this claim.

It is Defendant's position that Plaintiff should be limited to deposing the individuals it

---

regarding the information obtained informally from witnesses in this matter.

contends were the principle decision makers as well as Plaintiff's expert. As illustrated above, it is unlikely that evidence of pretext and motive will be elicited from the testimony of the decision makers themselves. However, it is necessary to take the depositions of these individuals so that the Plaintiff can fully investigate what the proffered reasons for each employment decision are, so that Plaintiff can establish through other testimony and evidence that each of the proffered reasons for each of the employment decisions was pretext. Plaintiff should not be precluded from conducting discovery into the very areas which are required by law in order to establish a claim of discrimination under the DCHRA.

Defendant's objections are unfounded, and are inconsistent with the positions that Defendant has taken during the course of discovery. Incredulously, Defendant objects to Plaintiff taking the depositions the witnesses that Defendant itself identified as playing an important role in the employment decisions at issue. In its Opposition, Bonneville takes the position that the individuals that it identified from Katz played only a minor, informal role in the employment decisions at issues, and that Plaintiff should not be permitted to depose all of the individuals that it identified in discovery responses, stating that "such opinions of third parties do not amount to direct involvement in Bonneville's hiring decisions.". (Defendant's Opposition, page 6)

However, in its Answers to Interrogatories, Bonneville attempts to deflect responsibility for the decision to hire an individual that was much younger and much less experienced than Mr. Donohoe by relying on statements made by the Katz employees that it identified. In fact, Bonneville stated that each of the individuals that Bonneville identified rendered opinions as to the qualifications of Mr. Donohoe as compared to Mr. Spacciapoli – and that Bonneville relied upon the opinion of each of these witnesses in making the employment decision at issue. (See Bonneville's Answer to Interrogatory number 9, attached as Exhibit A to Plaintiff's Motion). Defendant did not

simply state that these individuals were present at the meeting, but that these individuals each independently played a part in the employment decisions at issue.

Plaintiff is entitled to fully explore the statements and opinion of each of these witnesses, and should not be forced to rely upon the recollection of one witness about what opinions other witnesses held and may have shared. The motivation behind the decision to hire Mr. Spacciapoli over Mr. Donohoe and the relative qualifications of each of these individuals are central issues to Mr. Donohoe's claim of age discrimination during the re-hiring process. Defendant has indicated that it will try to hide behind the opinions of six individuals from Katz as justifying the decision to hire an indisputably much younger, less experienced individual instead of the Plaintiff. (See Bonneville's Answer to Interrogatory number 9, attached as Exhibit A to Plaintiff's Motion). Defendant should not be permitted to insulate itself from liability by presenting evidence that it relied upon the opinions of the third-party witnesses, while at the same time preventing Plaintiff from deposing those same witnesses by taking the position that the witnesses were "not directly involved in the hiring decision." Notably, if Plaintiff proceeded to note the depositions of the individuals from Katz that Defendant identified as playing an important role in the decision making process, Plaintiff would have exhausted six out of the seven currently permitted depositions.

Furthermore, Plaintiff should be permitted to conduct discovery into issues related to the qualifications and reputation of Mr. Spacciapoli, as compared to Mr. Donohoe. Informal interviews with current and former employees confirm that there was "no comparison," and that Mr. Donohoe was "hands down" more experienced than Mr. Spacciapoli. Plaintiff should be permitted the opportunity to obtain the sworn testimony of such witnesses, and the Court should have the benefit of considering such testimony.

Defendant points to no legitimate reason to prevent Plaintiff from conducting full discovery

in this matter. Defendant does not cite to a single case in this jurisdiction that supports the proposition that Plaintiff should be precluded from requesting or receiving this increase. In fact, the cases that Defendant cites are from other jurisdictions, and involve the application and interpretation of other local rules that are not at issues in this matter. These cases are irrelevant, and have no bearing on this case, which involves an age discrimination claim filed under the DCHRA.

The number of witnesses that Plaintiff has requested to depose is not unreasonable given the complexity of the issues, the number of employment decisions involved, and the number of witnesses that have been identified as having participated in or as having relevant information regarding those decisions. Contrary to Defendant's assertion, Plaintiff has not requested a threefold increase from fourteen to fifty depositions (Defendant Opposition, page 9) and Plaintiff has not requested the opportunity to depose all of the individuals that were involved in the Reduction in Force (Defendant's Opposition, pp. 7 and 9). Plaintiff has focused on those witnesses that Plaintiff believes, in good faith, have knowledge that is directly relevant to the critical issues of this case. The number of depositions that Plaintiff should be permitted to take in this matter should be increased to twenty-five (25). Anything less would severely impede the Plaintiff's ability to prosecute this case, would unduly prejudice the Plaintiff in this matter, and would prevent the Court from having the benefit of considering testimony from critical witnesses.

Local Rule 16.4 of this Court permits the court to modify the scheduling order at any time upon a showing of good cause. In this matter, good cause has been shown to increase the number of depositions allowed from seven (7) to twenty-five (25).

WHEREFORE, Plaintiff Leo Donohoe respectfully requests the Court modify the provisions of the October 26, 2007, Scheduling Order by increasing the number of depositions that Plaintiff is allowed to take from seven (7) to twenty-two (25).

Respectfully submitted,

CARR MALONEY, P.C.

By: _____
Thomas L. McCally, Esquire
1615 L Street, NW
Suite 500
Washington, D.C.  20036
(202) 310-5500 - phone
(202) 310-5555 - fax


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of April, 2008, a copy of the foregoing was sent via electronic filing to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1500 K Street, NW, Suite 450, Washington, DC  20005, Attorney for Defendant.

_____
Thomas L. McCally