**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LEO DONOHOE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| **BONNEVILLE INT'L CORP.,** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

As was the case with his prior motion for leave to take additional depositions, plaintiff

Leo Donohoe has sought, by a motion to compel discovery [Dkt. # 19], to evade the appropriate

bounds of the Federal Rules of Civil Procedure through inappropriate, duplicative, and harassing

discovery requests.  Specifically, he seeks a court order compelling discovery of:

1. "Documents explaining Bonneville's 2006 'Reduction in Force,'" notwithstanding Bonneville's repeated response that it has produced all non-privileged documents responsive to his prior requests on this topic;[1]

2. "Bonneville's Sales and Financial Documents," notwithstanding Bonneville's repeated objections that discovery regarding its net worth and other financials is premature, and notwithstanding Bonneville's objections to the separate, overbroad request for sales information, and that Bonneville has produced multiple related documents, including year-end Miller Kaplan reports for 2000 through the present, as well as sales budgets and sales performance documents, and agrees to produce relevant monthly Miller Kaplan reports in its possession, in addition;

3. "Bonneville's file containing harassment claims made against Matt Mills," notwithstanding Bonneville's repeated response that no such file exists;

---

[1] Bonneville is conducting a good-faith check of its search for documents responsive to this request and if any additional documents exist, Bonneville will produce them, subject to privilege objections.

4. "All documents requested in Donohoe's Supplemental Requests for Production of Documents," notwithstanding the parties' stipulation to a limit of thirty document requests per party, let alone numerous substantive objections to the breadth, scope and manner of these "supplemental" requests;

5. The documents requested by Mr. Donohoe in his 30(b)(6) deposition notice, notwithstanding his failure to comply either with the Federal Rules of Civil Procedure or with the limitations agreed upon by the parties regarding the number of permitted document requests;[2] and

6. Documents and information relating to a Bonneville reduction in force taking place in San Francisco, California, notwithstanding abundant case law, provided to counsel by Bonneville, limiting discovery in single-plaintiff discrimination cases to the geographical limits of the relevant work unit in which the discrimination is alleged to have taken place, and notwithstanding Mr. Donohoe's lack of any showing that any such information would be remotely relevant to his age discrimination claims arising from his employment in Washington, D.C.

None of these requests are proper, and Mr. Donohoe's motion should be denied as to each. Moreover, as counsel's repeated objections have, to this point, failed to deter Mr. Donohoe from repeating his voluminous and improper discovery requests, Bonneville now seeks to protect itself from further harassment by requesting a protective order.[3] Accordingly, Mr. Donohoe should be barred from continuing to seek: (1) information regarding Bonneville's finances and net worth; (2) information regarding Bonneville operations outside of the Washington, D.C. area; and (3) any further documents in excess of the agreed-to limit of thirty (30) document requests, including any attempt to evade that limit via the circuitous route of Rule 30(b)(6).

---

[2] In any event, notwithstanding the fact that Bonneville on April 8, 2008 already produced numerous documents that are responsive to the majority of Donohoe's 30(b)(6) document requests on May 8, 2008, Bonneville produced further documents responsive to request Nos. 3, 5, 6, 7, 23 and 24 from Mr. Donohoe's 30(b)(6) notice (BIC 007679 to 007743).

[3] Pursuant to LCvR 7(m), undersigned counsel attempted to confer today with Mr. Donohoe's counsel regarding this motion, but as of the time of this filing did not receive a response.

## I.    BACKGROUND

This is a single-plaintiff age discrimination case, arising from a reduction in force in

Bonneville's Washington DC Radio Group in 2006.  At that time, Bonneville restructured its

operations and programming in the Washington area in an effort to acquire new and to bolster

existing news/talk formats and ventures.  To this end, Bonneville eliminated WWZZ, a rock

station, to make space for a new news station, Washington Post Radio.  In addition, the sales

force of WGMS, a classical station, was eliminated, and the sales forces of certain of the

remaining stations (WTOP and WFED) and the new station (Washington Post Radio) were

consolidated for purposes of efficiency.  The "RIF" resulted in the termination of fifty-one

employees, including Mr. Donohoe.[4]  Of these fifty-one employees, only ten were re-hired

shortly after the RIF.

One position open for hiring after the RIF was a newly created position:  Director of

National Sales/Sports Sales.  This position was designed to cover the four area stations, WTOP,

Washington Post Radio, WGMS and WFED.  Fifteen applicants, including Mr. Donohoe,

applied for this position.  Ultimately, Bonneville hired Michael Spacciapolli, the most qualified

candidate for the position.[5]  Among other qualifications, Mr. Spacciapolli had previous

experience managing Account Executives for sports sales, a strong relationship with the

Washington Nationals baseball team, and had been integral in Bonneville's negotiations with the

Nationals to broadcast Nationals' baseball games.  No other applicant had these qualifications.

---

[4] Contrary to Mr. Donohoe's contentions, Mot. to Compel at 2 (claiming twenty years' employment), he was employed by Bonneville starting in 1997, when Bonneville acquired WTOP, and was employed by Bonneville for less than *nine*, not twenty, years.

[5] Contrary to Mr. Donohoe's contentions, Mot. to Compel at 3, 4, Mr. Donohoe was not "replaced."  The position, which included sports sales and covered all four stations, was newly created and involved far more and greater responsibilities than the National Sales Manager position which Mr. Donohoe previously occupied, which position was eliminated.

Moreover, Mr. Spacciapolli had been employed by and was well regarded by representatives of

Katz, Bonneville's rep firm, who shared their opinions with Bonneville decisionmakers Joel

Oxley and Matt Mills that Mr. Spacciapolli was the superior candidate over Mr. Donohoe for the

newly created position, based on prior experience with both candidates; and that Mr.

Spacciapolli was better organized and more effective than Mr. Donohoe.[6]

## II.    ARGUMENT

As an initial matter, Bonneville notes that it has produced a wide range of documents,

notwithstanding numerous improprieties in the scope, number and form of Mr. Donohoe's many

requests. For example, and in addition to the three bankers boxes of documents produced on

February 13 and 25, 2008 in response to Mr. Donohoe's first set of discovery requests, which

included but was not limited to personnel files, RIF-related documents, job application files, and

data on employees RIFed and rehired, Bonneville has since produced, *inter alia*, Miller Kaplan

reports, interview notes and resumes relating to the National Sales/Sports Sales position, e-mails,

radio revenue reports, earnings information for Mr. Donohoe, written complaints filed against

Bonneville managers, and documents reflecting salary structures for Local and National Sales

positions from 2002-2007.

None of Mr. Donohoe's allegations of impropriety on the part of Bonneville in its

responses to his haphazard and overbroad discovery requests have merit. And while Bonneville

addresses each of these requests in turn below, Bonneville notes in the first instance that the vast

---

[6] Bonneville also notes that Mr. Spacciapolli was not later "removed" from his position as Director of National Sales/Sports Sales, as Mr. Donohoe contends in yet another transparent effort to mislead the court. Mot. to Compel at 4. In point of fact, he was *promoted* from the position of Director of National Sales/Sports Sales to Local Sales Manager for WTOP in the summer of 2006 – a position with a larger budget and more responsibility and a position that Mr. Spacciapolli actively sought to obtain. There was no transfer, demotion, or removal.

majority of the information Mr. Donohoe now seeks either has been provided, does not exist at all, or is not relevant in any way to this single-plaintiff discrimination lawsuit.

A.    **Washington, D.C. Is The Only Relevant Market To Donohoe's Claims Of Alleged Discrimination.**

First, the Court should enter a protective order barring Mr. Donohoe from any further inquiry into any matters outside of Bonneville's Washington, D.C. radio group, as such matters lie far outside the scope of this case. As Bonneville has repeatedly reminded Mr. Donohoe, this is a single-plaintiff age discrimination case. The only information relevant to the reduction in force by which Mr. Donohoe lost his job, and the decision not to hire him for the new Director of National Sales/Sports Sales position, is information confined to the Washington, D.C. RIF and the isolated decision to hire Mr. Spacciapolli over Mr. Donohoe and thirteen other applicants as the Director of National Sales/Sports Sales.

A long line of case law confines the proper limit of discoverable information in such cases to the appropriate work unit within the defendant company. *See Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) (plaintiff not entitled to company-wide discovery absent particularized showing of need, and concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that "[a] vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discriminatory] motive does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry"); *Heward v. Western Elec. Co.*, 35 Fair Empl. Prac. Cas. (BNA) 807, 811-812 (10th Cir. 1984) (affirming limitation of discovery to region where ADEA plaintiff worked, on grounds that case was not brought as class action or one in which company-wide allegations of discrimination were central to plaintiff's

claim); *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978)

(stating that "[i]n the context of an investigation of an individual complaint, it might well be

most natural to focus on that employing unit or work unit from which came the decision of

which the individual complainant complains"); *McBride v. Medicalodges, Inc.*, No. 06-2535-

JWL-GLR, 2008 WL 1744772 (D. Kan. Apr. 11, 2008) (observing that "[i]n non-class action

employment discrimination cases, the standard for determining the geographic scope of

discovery focuses on" the work unit); *Byers v. Illinois State Police*, No. 99-C-8105, 2002 WL

1264004, at *6, 53 Fed. R. Serv. 3d 740 (N.D. Ill. June 3, 2002) (observing that "[a]t a minimum,

the requested discovery must relate to the particular claims of the case" and collecting cases);

*Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (limiting

discovery to work unit); *Hinton v. Entex Inc.*, 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (holding

that scope of discovery should be limited to facility at which plaintiff is employed when

"[p]laintiff has not made any specific factual allegations of discrimination that pertain to any

facility of [defendant] other than the one [at which she physically worked]").

     Undaunted, Mr. Donohoe's only contention is his bare allegation, without any basis

whatsoever, that he "has reason to believe that the result of the San Francisco RIF was the same

as the alleged RIF in DC – intentional termination of the older workers." Mot. to Compel at 16.

But having a naked and unsupported "reason to believe" that there is a pattern or practice of

discrimination falls well short of the "particularized showing" standard courts have imposed

upon plaintiffs before allowing such discovery. *See Carman*, 114 F.3d at 792 (requiring a

particularized showing); *Hinton*, 93 F.R.D. at 337-38 (requiring "specific factual allegations of

discrimination" in other facilities in order for discovery outside of the facility where plaintiff

worked to be permitted); *McBride*, 2008 WL 1744772, at *3 (same, where plaintiff has shown

that the "requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information," and collecting cases) (internal citations omitted). Here, Mr. Donohoe has no basis whatsoever for his claim of pattern-or-practice discrimination. His effort to expand his case 3,000 miles across the country is nothing short of an attempt to harass the defendant and drive up its litigation costs. It should not be countenanced by this Court, and Bonneville respectfully requests a protective order to prevent such harassment.

**B.    Documents Regarding 2006 Reduction In Force**

These documents have been produced. Bonneville is even double-checking its search for relevant documents and will be produce any additional responsive, non-privileged documents. Mr. Donohoe's argument to the contrary is, essentially, a naked allegation of "I don't believe you." *See* Mot. to Compel at 10-11. This position is absurd. Bonneville stands on its prior – and repeated – responses that it has produced all non-privileged documents responsive to Mr. Donohoe's requests which Bonneville has been able to find via a thorough search. In point of fact, counsel have queried the Bonneville officers and employees who might have documents relating to the RIF. And any such documents, so long as not privileged or otherwise protected, have been or will be produced.

**C.    Bonneville's Sales And Financial Documents**

Though Mr. Donohoe seeks to combine his various requests regarding sales data and Bonneville's finances in his motion, his category of "Sales and Financial Documents" is, in fact, a set of separate requests, each faulty in its own right.

**1.    Sales**

The request for "Sales" documents arises from a series of requests for documents related to sales, income, and other financial information for all Bonneville markets dating back eight

years. Mot. to Compel at 11 (citing First Requests Nos. 15, 16, 21; Suppl. Requests Nos. 5, 12;

30(b)(6) Notice Attach. A Request No. 19). As an initial matter, Bonneville has produced

documents responsive to these broad requests, including year-end Miller Kaplan reports for 2000

through 2007, as well as budgets and actual sales for 2002 through 2007. BIC 007012-7034 and

7719-7743. Without admitting as much, Mr. Donohoe appears to abandon his prior assertions

that he is entitled to *all* such information, in *all* markets, for *all* years dating back to 2000, in

favor of the more narrow assertion that he is entitled to sales data regarding Mr. Donohoe and

Mr. Spacciapolli, who was hired for the position for which Mr. Donohoe applied after the 2006

RIF. *See* Mot. to Compel at 11-12. To the extent his motion is not so limited, it is entirely

improper. Sales data from all sales personnel in all markets, to say nothing of other financial

data, has no bearing on the relative merits (or demerits) of Mr. Donohoe as compared to Mr.

Spacciapolli, and, as Mr. Donohoe must necessarily admit, the original RIF had nothing to do

with any specific sales employee's performance. In any event, Bonneville has produced

responsive information. BIC 007012-7024, 7719-7743.

The only comparative data of any arguable relevance to this action regarding sales data is

that regarding Mr. Donohoe and Mr. Spacciapolli. And until very recently, Mr. Donohoe had not

requested such specific information, opting instead to demand, through various discovery

requests, a broad swath of financial information from all Bonneville markets across the country.

*See* Mot. to Compel at 11 (citing First Requests Nos. 15, 16, 21; Suppl. Requests Nos. 5, 12;

30(b)(6) Notice Attach. A Request No. 19). While Bonneville may not have any theoretical

objection to a properly drawn, narrow request of this variety, that question is not present here, for

multiple reasons: First, Mr. Donohoe had not made such a request prior to filing his motion.

Second, he has already exceeded his allotment of allowed requests. *See* II.E, *infra.* Third,

Bonneville is entitled to object when faced with outlandishly overbroad requests of this sort, and is under no obligation to craft appropriately tailored requests on Mr. Donohoe's behalf. Fourth, Mr. Donohoe made a request (a week after filing his motion) for monthly Miller Kaplan reports, which Bonneville is in the process of collecting and producing. Accordingly, the prior request in his motion is moot.

## 2.    Financial Information

Mr. Donohoe's separate argument that he is entitled to any documents regarding Bonneville's net worth, let alone *all* information regarding "Bonneville's financial condition," Mot. to Compel at 11, is unavailing. Most glaringly, there is nothing in this case even hinting at the possibility of punitive damages. Even if Mr. Donohoe's most optimistic theory of the case held any water, his allegations would at best entitle him to compensatory damages. *See Rogers v. Ingersoll-Rand Co.*, 971 F. Supp. 4, 12 (D.D.C. 1997) ("Punitive damages are properly awarded where the act of the defendant is accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury."), *aff'd*, 144 F.3d 841 (D.C. Cir. 1998); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 372 (D.C. 1993) (observing that a "showing of evil motive or actual malice is ... required."). This was a substantial business reorganization of Bonneville's DC Radio Group undertaken for the strict business purpose of efficiency – a type of reorganization that happens all the time in the volatile radio industry. Fifty-one employees, including Mr. Donohoe, were let go. Not a single termination was based on discrimination. Mr. Donohoe could not possibly show that that was the case. Indeed, his half-hearted allegations of discriminatory animus as to both the RIF and the decision not to hire him for the new sales

position are simply false (and are based on incorrect assertions of fact).[7]  In any event, there is not even the slightest hint, anywhere in the record, that any Bonneville official acted with any willfulness or recklessness, let alone enough to support a claim for punitive damages.

Moreover, Mr. Donohoe ignores multiple decisions in which this Court has declined to allow premature discovery of financial information. *See D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986); *Skinner v. Aetna Life Ins. Co.*, No. 83-cv-0679, 1984 U.S. Dist. LEXIS 19817, at *3 (D.D.C. Feb. 2, 1984).  While Mr. Donohoe cagily suggests that the Court has not "definitively" answered the question, this Court has consistently declined to require defendants to produce information regarding their net worth, particularly where that information, as here, is only relevant to punitive damages and is only to be submitted for jury consideration, if at all, by the *defendants. See Hutchinson v. Stuckey*, 952 F.2d 1418, 1423 n.4 (D.C. Cir. 1992).  Magistrate Judge Facciola recently explained in *D'Onofrio* that "a defendant may never put its financial condition at issue, or it may not do so until the Court concludes, as a matter of law, that plaintiff has made a sufficient showing to permit the jury to consider such damages." *D'Onofrio*, 247 F.R.D. at 53.  Accordingly, this Court has repeatedly deferred requiring (and, indeed, has recognized that it should not *require* in any mandatory sense, until a defendant places net worth at issue) discovery of financial information "until necessary to prove up punitive damages."

---

[7] For example, while Mr. Donohoe attempts to characterize his job responsibilities as being primarily for WTOP, Mot. to Compel at 3, as his paychecks reflect, his job included substantial sales responsibility for WGMS (one third of his time was devoted to WGMS – not ten percent, as Plaintiff suggests, and national sales made up a significantly greater portion of sales at WGMS than at WTOP, so Mr. Donohoe was far more central to WGMS's sales efforts than to WTOP's).  As a WGMS National Sales Manager, he was naturally included in the RIF of all WGMS's sales staff.  Moreover, his assistant, Daniel Kliener, was re-hired after re-applying for a new position.  It is not clear what Mr. Donohoe means to suggest by raising the fact of Mr. Kliener's re-hire, except to falsely imply that Mr. Donohoe was "singled out" for termination. To the extent this is the case, the contention is simply untrue.

*Yogi*, 110 F.R.D. at 633; *D'Onofrio*, 247 F.R.D. at 52-53 (declining to require production to plaintiff until defendants place the question at issue); *Skinner*, 1984 U.S. Dist. LEXIS 19817, at *2-3 (financials should not be disclosed until a *prima facie* showing has been made warranting such disclosure). Mr. Donohoe's contention that this approach is only relevant to evidence submitted at trial, and not to discovery, is a red herring. *D'Onofrio*, 247 F.R.D. at 52-53 (denying a motion to compel discovery of financial net worth information). Bonneville may never place its financial status at issue for purposes of defending Mr. Donohoe's alleged claim for punitive damages, and there is no reason whatsoever in this case to deviate from the Court's settled practice. The dangers arising from disclosure of Bonneville's financial information are particularly acute in light of Bonneville's status as a privately held corporation, whose confidential financial information is essentially a trade secret.

All these reasons for protecting Bonneville's confidential financial information notwithstanding, in the event the court views the information as potentially discoverable at all, Bonneville is willing to utilize the procedure used in *D'Onofrio* for handling a similar discovery dispute. *D'Onofrio*, 247 F.R.D. at 52-53. Bonneville would consent to filing under seal and *ex parte* with the Court a certified net worth statement at the appropriate time  Pursuant to this process, the statement would be readily available to the plaintiff in the unlikely event it ever became relevant to trial on the merits.

### D.    Mills Complaint File

Bonneville cannot produce a file that does not exist. Bonneville has searched its employment records, and queried all relevant personnel and has repeatedly informed plaintiff's counsel that there is no file containing complaints about Matt Mills, *see* Pl.'s Ex. 8, at 2 (stating that there is no such file and that "no formal or written complaints were ever filed" against Mills); Pl.'s Ex. 5 at 9 (stating, over objections and in response to request for documents

regarding Mills, that his personnel file was already produced).  Mr. Donohoe insists, however, based upon the faulty memory of a former employee, Mark O'Brien, who has not been employed by Bonneville in 5 years and who admits he is relying purely on hearsay from 4-5 years ago, that such a file does exist.  It does not.  Any written complaints about Matt Mills – if they existed – would be contained in his personnel file.  This file was produced.  Indeed, when Bonneville conducted a search of written complaints about employees in its DC Radio Group, only three complaints were found:  two of the three concerned complaints about Leo Donohoe and *none* related to Mr. Mills.[8]  The say-so of a former employee without any actual knowledge, custodial or otherwise, of Defendant's records-management policies and systems, does not a file make.[9]

### E.    Number of Document Requests

#### 1.    The Thirty-Request Limit is Binding

A stipulation entered into by the parties regarding the scope of discovery is binding. *See* LCvR 26.2(b); Fed. R. Civ. P. 29; *see also Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D. Tex. 2005) (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order).  Here, the parties stipulated to an initial limit of thirty document requests and thirty interrogatories.  Pl.'s Ex. 12 at 9.  Without even the slightest nod to this contemplated limit, Mr. Donohoe has sought, unilaterally, to propound *forty-nine* (thirty-two initial requests and seventeen "supplemental" requests) document requests – and this number does not include the twenty-five additional document requests he seeks to sneak through the back door via his 30(b)(6) notice (nor his attempt to repeat his requests in other deposition notices).

---

[8] The search for complaints relating to WWZZ personnel is ongoing.

[9] Plaintiffs also refer to a small batch of recently discovered documents, in an effort to suggest impropriety on Bonneville's part.  These documents – a small set of interview notes and resumes – were discovered by Mr. Mills after he had, in good faith, conducted a search and thought he had found all responsive documents.  The documents were produced immediately upon discovery.

*See* II.E.2, *infra*; Def.'s Ex. A (Oxley Dep. Notice Attachment A) (requiring deponent to bring to his deposition various categories of documents previously requested and responded to by Bonneville); Def's Ex. B.  He sought no consent from Bonneville, he made no offer to narrow the scope or number of these "supplemental" requests, and made no effort to comply with the limits to which he originally agreed.

Mr. Donohoe's effort to characterize the 30-request limit as some sort of soft "prediction" is a smokescreen.  As an initial matter, the parties used functionally identical language in the joint 16.3 report regarding document requests as they did regarding the other discovery limitations.  Pl.'s Ex. 12 at 9.  And Mr. Donohoe provides no authority, apart from his own self-serving say-so, allowing him to skirt his own agreed-to discovery limitation by claiming, after the fact, that he didn't really mean it when he said thirty requests would be sufficient, even if that limit was not incorporated into the Court's initial scheduling order.  LCvR 26.2(b); Fed. R. Civ. P. 29; *Riley*, 233 F.R.D. at 500 (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order).

Moreover, Mr. Donohoe does not address the substance of Bonneville's other objections to these requests, and presumably capitulates to them, if only for the moment.  Bonneville observes, however, that the vast majority of them (1) were fully responded to by prior document productions and discovery responses, *see generally* Pl.'s Ex. 5 (Def.'s  Resp. & Objections to Suppl. Req. Nos. 6, 8, 9, 13, 15, 16); (2) are designed to discover information outside of the only relevant geographical market (Washington, D.C.), *see generally id.* (regarding Suppl. Req. Nos. 1,[10] 2,[11] 3,[12] 4,[13] 6,[14] 8,[15] 15,[16] and 16[17]); *see also* II.A, *supra*; (3) are defective for other reasons

---

[10] Demanding "reorganization" documents regarding all "Bonneville stations including but not limited to stations in Washington, DC, California and Utah."

set forth in this memorandum, *see* II.D, *supra* (Suppl. Req. No. 10 alleged Mills complaint file));

II.C.2, *supra* (Suppl. Req. No. 5 (financial information)); and/or (4) are unrelated to age

discrimination, *id.* (regarding Suppl. Req. No. 17 (demanding all documents regarding any and

all employment-related complaints or concerns in the Washington/Baltimore metropolitan

region)).[18] Accordingly, Mr. Donohoe's motion to compel, even if it had any merit as to the

number of allowed discovery requests, would not survive Bonneville's substantive objections to

those requests.

---

[11] Demanding "[a]ll documents that contain, refer or relate [sic] information concerning individuals who were terminated, hired, and/or re-hired in the reorganization of Bonneville's radio stations including but not limited to stations in Washington, DC, California and Utah."

[12] Demanding "all personnel files of individuals who were terminated as a result of the reorganization of Bonneville radio stations from January 1, 2003 through present."

[13] Demanding "[a]ll documents that contain, refer or relate to the individuals who were terminated, re-hired or replaced employees that were affected by the organization of Bonneville's radio stations including but not limited to stations in Washington, DC, California and Utah from January 1, 2003 – present."

[14] Demanding all documents related to the involvement of various entities (Katz, Christal, and Eastmond groups) in Bonneville employment decisions from 2003 to the present, including the "reorganization of its radio stations including but not limited to stations in Washington, DC, California and Utah."

[15] Demanding "[a]ll documents which refer or relate to the hiring of individuals for any position with Bonneville after the 'Reduction in Force'" in 2006.

[16] Demanding documents relating to "any individual who has applied for or been considered for any position with Bonneville" since October 2005 in both Washington, D.C., and San Francisco (as to Washington, D.C., such documents were previously produced).

[17] Demanding all documents related to any and all age discrimination complaints, and noting that "[t]his request is not limited to any geographical region."

[18] The only remaining requests (Suppl. Req. Nos. 7, 11, 12, and 14) are defective for the reasons set forth in Bonneville's Objections and Responses. *See* Pl.'s Ex. 5.

## 2.    Donohoe May Not Evade Discovery Limits Via His Rule 30(b)(6) Notice

Mr. Donohoe attempted to use his Rule 30(b)(6) notice as a functional *subpoena duces tecum* in a transparent effort to evade his agreed-to limit of thirty document requests. Pl.'s Ex. 10. After a proper challenge to this effort by Bonneville, *see* Def.'s Ex. C, he now seeks leave of the Court to exceed that limitation "to avoid undue prejudice and irreparable harm to him resulting from the arbitrary constraints placed on his ability to seek evidence" from Bonneville. Mot. to Compel at 15. Of course, for the reasons set forth above, these constraints were self-imposed and are hardly arbitrary. *See* Pl.'s Ex. 12 at 9; LCvR 26.2(b); Fed. R. Civ. P. 29. Moreover, Mr. Donohoe fails to identify with any specificity what is the "irreparable" harm he claims to suffer – which harm arises not from Defendant's actions, but from his own failure to manage his case within the boundaries contemplated by the Rules of Civil Procedure. And, as Mr. Donohoe now admits by implication by seeking leave to make additional requests, requests for documents from party-opponents are to be propounded via Rule 34, and not via the circuitous route of Rule 30(b)(6). Mr. Donohoe has failed to make such a request. Fed. R. Civ. P. 30(b)(2); *see also* Pl.'s Ex. 10 (deposition notice citing the now-abrogated Rule 30(b)(5) but failing to comply with Fed. R. Civ. P. 34, as required).

In any event, his requests are duplicative, overbroad, and excessively burdensome.[19] Many of the requests cover Bonneville operations outside of Washington, D.C., which, for the reasons set forth above, are outside the scope of relevant information for this lawsuit. II.A, *supra*; Def.'s Ex. D ¶¶ 1, 6, 7, 9, 10, 11, 17, 21, & 25 (Amended Attachment A to Fed. R. Civ. P. 30(b)(6) Notice). One is for the phantom written complaints against Mr. Mills. *Id.* ¶ 8. Others,

---

[19] As an example of Plaintiff's harassing style of litigation, he has noticed the deposition of Joel Oxley, Def.'s Ex. A, and in that notice, he requests nine sets of documents productions, *all* of which seek documents Bonneville had already produced, *see* Def.'s Ex. B.

while possibly proper subjects of questioning at a 30(b)(6) deposition, seek documents

Bonneville has already provided, do not exist, or are privileged.[20]  And yet others are overbroad

requests for financial information, which are improper for the reasons set forth above.  *See*

II.C.2, *supra*; Def.'s Ex. D ¶¶ 19, 21.

### III.    CONCLUSION

For all of these reasons, Mr. Donohoe's motion to compel and in the alternative for leave

to make additional document requests of Bonneville should be denied, and Bonneville should be

shielded from further harassment by the entry of a protective order barring (1) any document

requests beyond the thirty to which the parties stipulated (and considering the numerous

additional documents Bonneville has produced in response to requests in excess of that limit); (2)

any inquiry, by document request or in deposition questioning of Bonneville employees,

regarding (a) Bonneville's financial information and/or net worth, or (b) Bonneville operations

and employment practice outside of Washington, D.C.  Bonneville respectfully requests that

such an order be entered prior to the 30(b)(6) deposition noticed for May 9, 2008.  To the extent

that is not possible, Bonneville will instruct its 30(b)(6) witness not to answer inquiries regarding

such topics, and will, should the Court not grant the requested relief, make the 30(b)(6) witness

available for further questioning after the entry of the Court's order regarding the parties' present

---

[20] The following Bates ranges correspond to documents already produced which are responsive to these requests (request numbers are in parentheses):  BIC 000272-413 (Req. No. 1); BIC 000272-365, 6786-96 (Req. No. 2); BIC 000272-365, 6786-96 (Req. No. 4); BIC 007681-83 (Req. No. 9); BIC 000648-655 (Req. No.10); BIC 000588-719 (Req. No. 12); BIC 000001-165, 6257-6424 (Req. No. 13); BIC 000001-165, 414-587, 588-719, 6257-6424 (Req. No. 14); BIC 000415, 423-24, 6290-91, 6789 (Req. No. 15); BIC 000588-719 (Req. No. 16); BIC 000588-719 (Req. No. 20); BIC 007023-27, 7733-36 (Req. No. 21); *see also* Def.'s Ex. E (producing documents responsive to request Nos. 3, 5, 6, 7, 23 & 24).  To the extent these requests cover Bonneville operations outside of Washington, D.C., Bonneville has objected to such discovery and has not produced such information.  *Cf.* II.A, *supra*.

motions. Bonneville has already made numerous accommodations to Mr. Donohoe's repeated and improper requests and should not be required to make any more accommodations.

Respectfully submitted this 8th day of May, 2008,

DAVIS WRIGHT TREMAINE LLP

_____/s/  Constance M. Pendleton_____
Richard L. Cys (D.C. Bar No. 087536)
Constance M. Pendleton (D.C. Bar No. 456919)
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006-3402
(202) 973-4200
(202) 973-4499 facsimile
richardcys@dwt.com
conniependleton@dwt.com

Counsel for Defendant Bonneville International
    Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of May, 2008, true and correct copies of the

foregoing Consolidated Motion for Protective Order and Memorandum of Points and Authorities

in Opposition to Plaintiff's Motion to Compel Discovery and Declaration of Constance M.

Pendleton were served by first class mail, postage prepaid, and electronic mail upon:

> Thomas L. McCally, Esq.
> Carr Maloney P.C.
> 1615 L Street, NW
> Suite 500
> Washington, D.C. 20036

>                       /s/ Constance M. Pendleton
>                     Constance M. Pendleton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                          :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :        Civil Action No.: 07-949 (RWR)
                                      :
BONNEVILLE INT'L CORP.,               :
                                      :
        Defendant.                    :


**DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**


# EXHIBIT A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

LEO DONOHOE, Plaintiff

V.

BONNEVILLE INT'L CORP., Defendant

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-949 (RWR)

TO:  Joel Oxley
    WTOP
    3400 Idaho Avenue, NW
    Washington, DC 20016

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Carr Maloney P.C.<br>1615 L Street, NW, Washington, DC 20036 | DATE AND TIME<br>5/6/2008 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 5/21/08 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Thomas L. McCally, Esq.
Carr Maloney P.C., 1615 L Street, NW, Suite 500, Washingotn, DC 20036  202-310-5506

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on |  |  |  |
|---|---|---|---|
|  | DATE |  | SIGNATURE OF SERVER |
|  |  |  | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

LEO DONOHOE,                                :
                                            :
        Plaintiff,                          :
                                            :
v.                                          :      Civil Action No.: 07-949 (RWR)
                                            :
BONNEVILLE INT'L CORP.,                     :
                                            :
        Defendant.                          :

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that counsel for Plaintiff, Leo Donohoe, will take the deposition of the following individual on the date and time specified at the law offices of Carr Maloney P.C., 1615 L Street, NW, Suite 500, Washington, DC 20036, upon oral examination, for purposes of discovery and/or use as evidence in the above captioned case, before a notary public or anyone authorized to administer oath and due form of law. The deposition may be recorded by videotape and/or audiotape. The deposition will continue from day to day until completed.

| NAME | DATE | TIME |
|------|------|------|
| Joel Oxley | Tuesday, May 6, 2008 | 10:00 a.m. |
| c/o WTOP | | |
| 3400 Idaho Avenue, NW | | |
| Washington, DC 20016 | | |

Deponent is hereby notified to personally appear at the time and place specified, and pursuant to Rules 30 and 34 the Federal Rules of Civil Procedure the Deponent is requested to bring the following documents:

SEE ATTACHMENT A

Respectfully submitted,

CARR MALONEY P.C.

By: _____
    Thomas L. McCally, #391937
    1615 L Street, NW, Suite 500
    Washington, DC 20036
    Attorney for Plaintiff
    (202)310-5506/(202)310-5555 (FAX)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2008, a copy of the foregoing was sent via first class mail, postage prepaid and via e-mail to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1919 Pennsylvania Avenue, NW, Suite 200, Washington, DC  20006 Attorney for Defendant.

Thomas L. McCally

## ATTACHMENT A

1.    Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Matt Mills' work performance, evaluations, treatment of/working relationships with others, complaints or concerns about Matt Mills from co-workers or customers during the time of his employment by Bonneville.

2.    Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Mike Spacciapolli's work performance, evaluations, treatment of/working relationships with others, complaints or concerns about Mike Spacciapolli from co-workers or customers or agents during the time of his employment by Bonneville.

3.    Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Leo Donohoe's work performance, evaluations, treatment of/working relationships with others, complaints or concerns about Leo Donohoe from co-workers, customers or agents during the time of his employment by Bonneville.

4.    All documents in your possession, control or custody that refer or relate in any way to the "Reduction in Force" that was implemented by Bonneville in 2006.

5.    All documents in your possession, control or custody that refer or relate in any way to the inclusion of Leo Donohoe in the "Reduction in Force" that was implemented by Bonneville in 2006.

6.    All documents in your possession, control or custody that relate or refer in any way to the involvement of Katz Radio Group, Inc. in any employment decisions made by

Bonneville from January 1, 2003, through the present time, including but not limited to employment decisions made regarding the 2006 RIF referred to in your Answer to paragraph 18 of the Complaint and the selection of individuals to fill open positions after the implementation of the RIF.

7.    All in your possession, control or custody documents that concern or relate in any way to the decision or decisions not to select Leo Donohoe for any or all the positions for which he applied in 2006.

8.    All documents in your possession, control or custody that refer or relate to the selection of Mike Spacciapolli to fill the position of Director of National Sales/Sports Sales Manager for Bonneville radio stations WTOP, Washington Post Radio, WGMS and WFED.

9.    All documents, including but not limited to all letters, notes, diaries, memoranda, summaries, telephone logs or other formal or informal documents in your possession, control or custody that relate to or refer to Leo Donohoe's employment or termination by Bonneville.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                         :
                                     :
          Plaintiff,                 :
                                     :
v.                                   :          Civil Action No.: 07-949 (RWR)
                                     :
BONNEVILLE INT'L CORP.,              :
                                     :
          Defendant.                 :


**DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**


# EXHIBIT B

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CONSTANCE M. PENDLETON          SUITE 200                          TEL (202) 973-4200
Direct (202) 973-4229           1919 PENNSYLVANIA AVENUE, N.W. FAX (202) 973-4499
conniependleton@dwt.com         WASHINGTON, D.C. 20006-3402    www.dwt.com

May 8, 2008

## VIA E-MAIL AND FIRST CLASS MAIL

Thomas L. McCally, Esq.
Carr Maloney P.C.
1615 L Street, NW
Suite 500
Washington, D.C. 20036

Re:   *Leo Donohoe v. Bonneville International Corp.,*
      *U.S. District Court for D.C., CA No. 07-949 (RWR)*

Dear Tom:

I write in reference to the notice of individual deposition of Joel Oxley. Bonneville objects to your request that Mr. Oxley bring with him to his deposition – if he is deposed in his individual capacity – various documents specified in Attachment A to the deposition notice.

These requests are defective for a number of reasons. First, they fail to comply with Fed. R. Civ. P. 30(b)(2), which contemplates that deposition notices directed at a party deponent be made pursuant to Rule 34. These requests do not comply with that rule. And, as we have repeatedly reminded you, you have already exceeded the stipulated number of thirty document requests which the parties memorialized in their LCvR 16.3 Report, which stipulation is binding. In any event, these requests ask for documents all of which Bonneville has previously provided to you in response to your first set of document requests Nos. 8-13. The following ranges of bates-numbered documents are responsive thereto, and Bonneville's production of these documents will not be duplicated yet again by Mr. Oxley at his deposition, should his individual deposition take place:

1. (Original Request No. 12) Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Matt Mills' work performance, evaluations, treatment of/working



Thomas L. McCally, Esq.
May 8, 2008
Page 2

relationships with others, complaints or concerns about Matt Mills from co-workers or customers during the time of his employment by Bonneville. BIC 1056-1194.

2. (Original Request No. 11) Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Mike Spacciapolli's work performance, evaluations, treatment of/working relationships with others, complaints or concerns about Mike Spacciapolli from co-workers or customers or agents during the time of his employment by Bonneville. BIC 720-885.

3. Any and all records, files, recordings, memoranda, emails or other documents, whether hard copy or electronic, in your possession, control or custody that pertain to or reflect Leo Donohoe's work performance, evaluations, treatment of/working relationships with others, complaints or concerns about Leo Donohoe from co-workers, customers or agents during the time of his employment by Bonneville. BIC 1-165, 166-247, 2797-6800, 6258-6424.

4. (Original Request Nos. 7, 9) All documents in your possession, control or custody that refer or relate in any way to the "Reduction in Force" that was implemented by Bonneville in 2006. BIC 249-257, 254-257, 272-365, 366-415, 6782-6785, 6786-6796.

5. (Original Request No. 8) All documents in your possession, control or custody that refer or relate in any way to the inclusion of Leo Donohoe in the "Reduction in Force" that was implemented by Bonneville in 2006. BIC 245-256, 272-365, 366-415.

6. (Original Request No. 10) All documents in your possession, control or custody that relate or refer in any way to the involvement of Katz Radio Group, Inc. in any employment decisions made by Bonneville from January 1, 2003, through the present time, including but not limited to employment decisions made regarding the 2006 RIF referred to in your Answer to paragraph 18 of the Complaint and the selection of individuals to fill open positions after the implementation of the RIF. BIC 180, 186-189, 172-174, 206, 208-209, 211, 215, 222, 224, 227-228, 711, 713-715, 649, 651-653.

7. (Original Request No. 13) All documents in your possession, control or custody documents that concern or relate in any way to the decision or decisions not to select Leo Donohoe for any or all the positions for which he applied in 2006. BIC 1-165, 166-247, 6258-6424, 6797-6800.

8. All documents in your possession, control or custody that refer or relate to the selection of Mike Spacciapolli to fill the position of Director of National Sales/Sports Sales



Thomas L. McCally, Esq.
May 8, 2008
Page 3

      Manager for Bonneville radio stations WTOP, Washington Post Radio, WGMS and
      WFED.  BIC 720-885; 416-556, 557-719, 886-1055.

9.   All documents, including but not limited to all letters, notes, diaries, memoranda,
      summaries, telephone logs or other formal or informal documents in your possession,
      control or custody that relate to or refer to Leo Donohoe's employment or termination by
      Bonneville.  BIC 1-165, 168-271, 272-413, 6249-6800, 7012-7034, 7277-78, 7679-80,
      7682-83, 7702-04, 7707, 7709-10, 7719-43.

In addition, I repeat Bonneville's numerous objections to these requests, which were provided to
you in Bonneville's original responses and objections to your first set of document requests.  Our
objections include, *inter alia*, (1) that the requests are not limited to any specific or relevant span
of time; (2) that some of the requests (including Nos. 4 and 6) are not limited to the only relevant
geographic area in suit, Washington, D.C.; (3) that the requests seek privileged information; and
(4) that the requests are overbroad, not reasonably calculated to the discovery of admissible
evidence, and unduly burdensome.

Please contact me if you have questions regarding this letter.

Sincerely yours,

*Constance M. Pendleton*

Constance M. Pendleton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                          :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :        Civil Action No.: 07-949 (RWR)
                                      :
BONNEVILLE INT'L CORP.,               :
                                      :
        Defendant.                    :

DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY

# EXHIBIT C

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

CONSTANCE M. PENDLETON          SUITE 200                    TEL (202) 973-4200
DIRECT (202) 973-7229           1919 PENNSYLVANIA AVE NW     FAX (202) 973-4499
conniependleton@dwt.com         WASHINGTON, DC 20006         www.dwt.com

April 21, 2008

**VIA E-MAIL AND FIRST CLASS MAIL**

Thomas L. McCally, Esq.
Carr Maloney P.C.
1615 L Street, NW
Suite 500
Washington, DC 20036

Re:   *Donohoe v. Bonneville International Corp.*, CA No. 07-949 (RWR)

Dear Tom:

I write in response to the notice of 30(b)(6) deposition you sent us on March 21, 2008.  As we have informed you, Scarlett Pate, Vice President of Human Resources at Bonneville, will be available on May 5, 2008, for this deposition.  Thank you for accommodating this request.  Ms. Pate will be available as agreed at 10 a.m. that morning.

Regarding the substance of the matters to be covered at the deposition, you have requested that the corporate designee deponent "shall be required to bring with him the originals of all documents specified in Attachment A."  This request is improper.  As we have informed you in our April 10, 2008 letter and our objectives to your supplemental document requests, your client has already exceeded the permissible number of document requests to which the parties stipulated, and our client does not consent to additional requests through the end-around of Rule 30 and Rule 34.  *See* Apr. 10 letter (citing *See* LCvR 26.2(b); Fed. R. Civ. P. 29; *see also Riley v. Walgreen Co.*, No. H-04-2189, slip op. at 6-7 (S.D. Tex. Jan. 31, 2005) (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order).  Ms. Pate will bring no documents.  On this point, please notify us within one week in advance of May 5 of any documents we have produced regarding which you intend to pose questions to Ms. Pate.

Your additional request that the deponent be prepared to testify to the matters specified in Attachment A to your deposition notice is likewise improper, because many of the matters specified far exceed the bounds of discoverable information in this lawsuit.  Most notably, Mr.

Thomas L. McCally, Esq.
April 21, 2008
Page 2



Donohoe has no basis to assert that any employment actions outside of Washington, D.C., are likely to lead to the discovery of evidence relevant to the present action. Your requests for information outside the geographic scope of the DC Radio Group are overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in scope.

As I previously wrote in my letter of April 8, this is a single-plaintiff, single-market age discrimination claim, not a class action. Discovery outside of Washington, D.C., is, therefore, wholly unwarranted. *See Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) (plaintiff not entitled to company-wide discovery absent particularized showing of need, and concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (limiting discovery to work unit); *Byers v. Illinois State Police*, 2002 WL 1264004, at *6, 53 Fed. R. Serv. 3d 740 (N.D. Ill. June 3, 2002) (observing that "[a]t a minimum, the requested discovery must relate to the particular claims of the case" and collecting cases); *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) (stating that "[i]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains"); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that "a vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discriminatory] motive does not show the particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry"); *Heward v. Western Elec. Co.*, 35 Fair Empl. Prac. Cas. (BNA) 807, 811-812 (10th Cir. 1984) (affirming limitation of discovery to region where ADEA plaintiff worked, on grounds that case was not brought as class action or one in which company-wide allegations of discrimination were central to plaintiff's claim); *Hinton v. Entex Inc.*, 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (holding that scope of discovery should be limited to facility at which plaintiff is employed when "plaintiff has not made any specific factual allegations of discrimination that pertain to any facility of [defendant] other than the one [at which she physically worked]"). Accordingly, any testimony by Ms. Pate on Requests 1, 6, 7, 9, 10, 11 and 17 in Attachment A will be limited to the Washington, DC Radio Group.

Additionally, as stated in our responses to your first set of document requests, discovery regarding our client's net worth is premature at this stage of the litigation process. *Skinner v. Aetna Life Ins. Co.*, No. 83-cv-679, 1984 U.S. Dist. LEXIS 19817, at *3 (D.D.C. Feb. 2, 1984) (discovery of a party's financial status should not be turned over until necessary to prove punitive damages – *i.e.*, until a *prima facie* case has been established); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986) (discovery of financial status deferred until "necessary" to prove punitive damages); *see also Thibodeau Gen'l Contractors, Inc. v. Brault, Graham, Scott & Brault*, No. 90-cv-533, 1991 WL 255950 (D.D.C. Nov. 15, 1991) (in a trial likely to be bifurcated, discovery of financial information deemed to be "premature" prior to completion of compensatory damages phase). We therefore repeat our objection to such discovery. For all

Thomas L. McCally, Esq.
April 21, 2008
Page 3



these reasons, Ms. Pate will be prepared to testify to the subject matter enumerated in
Attachment A, subject to the limitations and objections I have set forth in this letter.

Very truly yours,

Constance M. Pendleton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                          :
                                      :
            Plaintiff,                :
                                      :
v.                                    :        Civil Action No.: 07-949 (RWR)
                                      :
BONNEVILLE INT'L CORP.,               :
                                      :
            Defendant.                :

DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

LEO DONOHOE,                          :
                                      :
     Plaintiff,                  :
                                      :
v.                                    :    Civil Action No.: 07-949 (RWR)
                                      :
BONNEVILLE INT'L CORP.,               :
                                      :
     Defendant.                  :

### AMENDED NOTICE OF 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE that on the 5th day of May, 2008, at 10:00 a.m., pursuant to Rule

30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff, Leo Donohoe, by counsel, will take

the deposition of the Defendant, Bonneville Int'l Corp., through one or more of its designated

officers, directors, partners, managing agents, or other persons who consent to testify on its behalf,

by oral examination, before a Notary Public or anyone authorized to administer oath and due form

of law, in the law offices of CARR MALONEY P.C., 1615 L Street, NW, Suite 500, Washington,

DC 20036.

Defendant Bonneville Int'l Corp., is required to designate one or more of its officers,

directors, partners, managing agents, or other persons who consent to testify on its behalf, in

each of the following areas:

### SEE AMENDED ATTACHMENT A

PLEASE TAKE FURTHER NOTICE, pursuant to Rule 30(b)(5) of the Federal Rules of

Civil Procedure, that each corporate designee or designees shall be required to bring with him the

originals of all documents specified in Amended Attachment A herein, to be inspected and copied

by counsel for Plaintiff, Leo Donohoe.  The deposition will be taken for the purpose of discovery

or as evidence in the captioned cause, or both, and shall continue from day to day until complete.

The deposition may be recorded by videotape and/or audiotape.

Respectfully submitted,

CARR MALONEY P.C.

By:_____
    Thomas L. McCally, #391937
    1615 L Street, NW, Suite 500
    Washington, DC 20036
    Attorney for Plaintiff
    (202) 310-5506/(202) 310-5500 (FAX)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of  April, 2008, a copy of the foregoing was sent via e-mail to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1919 Pennsylvania Avenue, NW, Suite 200, Washington, DC  20006 Attorney for Defendant.

_____
Thomas L. McCally

## AMENDED ATTACHMENT A

1.    Reasons for which Bonneville decided to implement a Reduction in Force, both locally and nationally in 2006.

2.    How Bonneville determined who would be affected by the Reduction in Force, and who would be exempted from the Reduction in Force, in Washington, DC, in 2006.

3.    The names of individuals affected by the Reduction in Force in Washington, DC, in 2006 and their ages.

4.    The reasons for which WGMS employees were affected by the Reduction in Force when WGMS continued to broadcast after the 2006 Reduction in Force.

5.    The names, ages and salary of all individuals who worked for WTOP who were included in the Reduction of Force in January 2006 and why they were included.

6.    The names, ages and salary of all individuals whose employment was terminated as a result of the Reduction in Force, both locally and nationally, in 2006.

7.    The names, ages and salary at the time of rehire, of all individuals whose employment was terminated as a result of the Reduction in Force, both locally and nationally, in 2006, but who were ultimately rehired by Bonneville.

8.    All complaints made against Matt Mills, whether formal or informal, alleging unlawful business practices.

9.    All complaints made against Bonneville Int'l Ltd. and/or any of its management level employees for unlawful employment practices.

10.    Katz Radio Group and/or its employees' roles in Bonneville's decisions who to hire/rehire following the Reduction in Force in 2006.

11.    Katz Radio Groups and/or its employees' roles in all other employment decisions made by Bonneville Int'l Ltd.

12.    Mike Spacciapolli's work performance prior and subsequent to the Reduction in Force in 2006.

13.    Leo Donohoe's work performance prior and subsequent to the Reduction in Force in 2006.

14.    The decision to rehire Mike Spacciapolli over Leo Donohoe subsequent to the Reduction in Force in 2006.

15.    The changes and similarities between the National Sales Director position prior and subsequent to the Reduction in Force in 2006.

16.    The decision to transfer Mike Spacciapolli from National Sales Director/Sports Sales to Local Sales Manager in July 2006.

17.    Any and all complaints of discrimination received following the January 2006 Reduction in Force.

18.    The investigation into Mr. Donohoe's complaints of discrimination.

19.    Bonneville's total net financial worth for the years 2003 through the present.

20.    Michael Spacciapoli's involvement with the negotiation and finalization of the terms and conditions of Bonneville's contract with the Nationals baseball team.

21.    All budget information for Bonneville's sale of sports from 1997 through 2007, including who was responsible for selling, how such sales were made, whether those individuals made their budgets, what the budgets were and how this number was determined.

22.    The identity of the author of BIC 006786-6796 produced by Bonneville in response to Plaintiff's request for production of documents, the meaning of each paragraph of the document, the source of the information based upon which the document was created; the identities of persons referred to in the provision referring to employees who worked predominantly for WTOP and the meaning of that provision.

23.    The salary structure of the Local Sales Manager position from 2002–2007.

24.    The salary structure of the National Sales Manager position from 2002-2007.

25.    The budgets for all sales between 2002 and 2007, including budgets for National Sales, Local Sales and Sports Sales, and whether individuals responsible for such sales made their budgets.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                              :
                                          :
          Plaintiff,                      :
                                          :
v.                                        :          Civil Action No.: 07-949 (RWR)
                                          :
BONNEVILLE INT'L CORP.,                   :
                                          :
          Defendant.                      :


DEFENDANT'S CONSOLIDATED MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY


# EXHIBIT E

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE    BELLEVUE    LOS ANGELES    NEW YORK    PORTLAND    SAN FRANCISCO    SEATTLE    SHANGHAI    WASHINGTON, D.C.

CONSTANCE M. PENDLETON        SUITE 200                        TEL (202) 973-4200
Direct (202) 973-4229          1919 PENNSYLVANIA AVENUE, N.W.  FAX (202) 973-4499
conniependleton@dwt.com        WASHINGTON, D.C. 20006-3402     www.dwt.com

May 7, 2008

**By Email and Hand**

Thomas L. McCally, Esq.
Carr Maloney P.C.
1615 L Street, NW
Suite 500
Washington, D.C. 20036

Re:    *Leo Donohoe v. Bonneville International Corp.,*
       **U.S. District Court for D.C., CA No. 07-949 (RWR)**

Dear Tom:

Without waiving our prior objections, to facilitate Friday's 30(b)(6) deposition, we produce the following documents, which are designated confidential and produced subject to the protective order in this case:

(1) A summary reflecting the information requested in Request Nos. 3, 5, 6 and 7 of the Amended Attachment A to the Amended Notice of 30(b)(6) Deposition (BIC 007679); (2) Leo Donohoe's earnings split for WTOP, WGMS and WFED for 2003-2005 (BIC 007680); (3) written complaints filed against managers at Bonneville's DC Radio Group (any such complaints from Z104, if they exist, will be supplemented) (BIC 007681-7683); and (4) documents reflecting the salary structure for the Local and National Sales positions from 2002-2007 (BIC 007684-7718).

Thomas L. McCally, Esq.
May 7, 2008
Page 2



Although we have already produced the majority of the Report Generations reflecting sales budgets and actuals, we produce in one piece Report Generations for 2002 to 2007 (BIC 007719-7743) (Request Nos. 21 and 25).

Sincerely yours,

Constance M. Pendleton

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEO DONOHOE,                    :
                               :
            Plaintiff,         :
                               :
v.                             :        Civil Action No.: 07-949 (RWR)
                               :
BONNEVILLE INT'L CORP.,        :
                               :
            Defendant.         :


**DECLARATION OF CONSTANCE M. PENDLETON**

I, Constance M. Pendleton, declare under penalty of perjury as follows:

1.      I am a partner at Davis Wright Tremaine LLP and represent defendant Bonneville International Corporation in this action.

2.      I make this declaration in support of Bonneville's opposition to the motion to compel discovery filed by plaintiff Donohoe and in support of Bonneville's cross-motion for a protective order.

3.      Attached hereto as Exhibit A is a true and correct copy of the deposition notice for Joel Oxley issued by Donohoe in this action and dated March 21, 2008.

4.      Attached hereto as Exhibit B is a true and correct copy of a letter I sent to counsel for Donohoe on May 8, 2008 regarding Mr. Oxley's deposition notice.

5.      Attached hereto as Exhibit C is a true and correct copy of a letter I sent to counsel for Donohoe on April 21, 2008 regarding Donohoe's Fed. R. Civ. P. 30(b)(6) notice.

6.      Attached hereto as Exhibit D is a true and correct copy of an Amended 30(b)(6) notice issued by counsel for Donohoe on April 24, 2008.

7.    Attached hereto as Exhibit E is a true and correct copy of a letter I sent to counsel for Donohoe on May 7, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 8, 2008

_Constance M. Pendleton_
Constance M. Pendleton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No.: 07-949 (RWR)** |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

Before the Court is Plaintiff's motion to compel discovery and Defendant's motion for a protective order. Upon consideration of both motions, it is this __ day of May, 2008, hereby

**ORDERED** that Plaintiff's motion is **DENIED**; and it is hereby

**ORDERED** that Defendant's motion is **GRANTED**. Plaintiff may make no more document requests than his initial thirty (30) requests in this action, and Plaintiff is ordered to abstain from inquiring into matters outside of the Washington, D.C. radio market. It is further ordered that Defendant shall not be required to produce in discovery any information regarding its net worth or financial status until such time as the Court may require it.

**SO ORDERED.**

_____
Hon. Deborah A. Robinson
United States Magistrate Judge