IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| LEO DONOHOE, | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 07-949 (RWR) |
| BONNEVILLE INT'L CORP., | : |
| Defendant. | : |

## MOTION TO EXTEND DISCOVERY

COMES NOW THE Plaintiff, by and through counsel, and files this Motion seeking to extend the time period within which discovery may be conducted up to and including July 11, 2008. As grounds therefore, Plaintiff states as follows:

Pursuant to the current Scheduling Order of this Court, discovery in this matter must be concluded by May 16, 2008, and dispositive motions must be filed by June 18, 2008.

The parties have been actively engaged in conducting discovery, and every effort has been made to complete discovery within the specified time period. However, multiple issues have arisen during the course of discovery that have impeded the discovery process. Despite Plaintiff's good faith efforts to resolve such issues quickly and amicably, Plaintiff has been forced to file several motions with the Court regarding discovery matters. Such motions have yet to be resolved, making it impossible to complete discovery within the date specified in the Scheduling Order.

Presently before the Court are Plaintiff's Motion to Compel, Plaintiff's Objections to the April 23, 2008, Order of Magistrate Judge Deborah Robinson denying Plaintiff's Motion for Leave to take additional depositions, and Plaintiff's Motion to Re-Open the deposition of Mr. Mills (which is being filed simultaneously with this Motion).

As is set forth in much more detail in the above referenced motions, Defendant failed to provide full and complete responses to discovery requests in a timely fashion and has acted in a manner that has rendered it impossible to complete discovery within the confines of the Scheduling Order. Defendant's failure to produce relevant and responsive documentation in a timely fashion has hindered Plaintiff's ability to effectively conduct depositions, has left Plaintiff with no choice but to request the opportunity to re-open certain depositions, and has limited Plaintiff's ability to obtain additional critical information.

Furthermore, Plaintiff has requested leave to take more than the minimal number of seven depositions that are permitted under the current Scheduling Order.[1] As is noted in more detail in Plaintiff's Objections to the April 23, 2008, Order of Magistrate Judge Deborah Robinson, limiting Plaintiff to seven depositions is severely prejudicial to Plaintiff's ability to conduct discovery into matters which are clearly relevant, discoverable and non-cumulative.

The current limit of seven depositions is completely insufficient to enable Plaintiff to discover evidence regarding the multiple claims and defenses in this matter. Indeed, Plaintiff has not even been permitted to take the ten depositions that are authorized under Rule 30 of the Federal Rules of Civil Procedure. The Magistrate Judge's refusal to allow additional deposition under such circumstances constitutes an abuse of discretion, is clearly erroneous, and should be summarily reversed. Holding otherwise would undermine the very purpose of discovery, would severely limit Plaintiff's ability to obtain critical evidence that is directly relevant to Plaintiff's claims and

---

[1] It should be noted that because of scheduling reasons several depositions which were attempted to be taken before the currently scheduled close of discovery have been rescheduled for dates beyond the current deadline. The parties have consented and agreed to conduct these depositions after the close of discovery, and mutually request leave of Court to extend discovery as to these depositions, which include the depositions of experts, Ms. Lish, Mr. Hedges and Mr. Spacciapolli.

Defendant's defenses, would be grossly unfair and severely prejudicial to the Plaintiff in this matter.[2]

Additionally, Defendant withheld critical documents and only recently produced approximately 450 pages of documents that were responsive to discovery requests propounded in December, 2007. Many of these documents were produced in late April, and the last 65 pages of these documents were just produced on May 9, 2008, after numerous depositions were taken and just days before discovery was scheduled to be closed.

As is set forth in more detail in the Motion for Leave to Depose Matt Mills for an Additional Two Hours as well as in Plaintiff's Motion to Compel, from the commencement of discovery in this case, Plaintiff requested information including all documents reflecting why Mr. Donohoe was not selected to re-fill the very position from which he was terminated following the alleged reduction in force in January 2006. In response to Plaintiff's request, Defendant produced Mr. Mills' interview notes only for his interview of Mr. Donohoe. Counsel for Mr. Donohoe repeatedly requested that Bonneville produce Mr. Mills' notes from all other interviews for the National Director of Sales/Sports Sales position in January 2006. Bonneville represented that no such documents exist. *See* Letter dated from Constance Pendleton to Thomas McCally dated April 8, 2008, Exhibit 1.

Then, in deposition, Mr. Mills personally testified that if Bonneville did not produce notes from all interviews, he must not have taken any. *See* Deposition of Mills, Exhibit 2, at p. 338-339. Three (3) business days after Mr. Mills' deposition, on April 23, 2008, Bonneville produced several hundred pages of documents, including interview notes taken by Mr. Mills for other applicants of the National Sales Director/Sports Sales position in January 2006.

---

[2] Had Plaintiff's Motion been granted from the outset, all additional depositions could feasibly have been completed during the specified time period.

Similarly, counsel for Mr. Donohoe made repeated requests that Bonneville produce Miller Kaplan reports which are, by Mr. Mills' own testimony, the only resource for determining how a radio station performs in sales in the market on a local and national level on a monthly and yearly basis. Before Mr. Mills' deposition, Bonneville refused to produce those reports. *See e.g.* April 10, 2008, letter from Constance Pendleton to Thomas McCally, attached as Exhibit 3. On April 23, 2008, again three (3) business days following Mr. Mills' deposition, however, Bonneville provided the critical information in the Miller Kaplan reports. Bonneville then supplemented this production with more information and additional documentation on April 28, 2008, including documents authored by Mr. Mills that related to compensation.

Bonneville's failure to timely produce the relevant and discoverable information discussed herein in a timely fashion denied Mr. Donohoe's counsel the opportunity to conduct additional discovery and elicit deposition testimony regarding matters that are directly relevant to the claims and defenses in this matter.. It is grossly unfair for Defendants to withhold such documents until such time as discovery is almost complete, produce the documents immediately before such deadline, and then prohibit Plaintiff from inquiring into and/or conducting additional discovery into matters relevant to the recently produced documentation.

These issues, as well as the number of discovery matters that have yet to be resolved, and the extent of information that is currently being withheld until discovery issues are resolved, make it necessary to request this minimal extension of time to complete discovery.

Under the applicable Rules of this Court, a request for enlargement of the time period for performing an act, required or allowed to be done within a specified time, is properly granted by the Court before the expiration of the period, with or without motion or notice, at any time for cause shown. Fed. Rules Civ. Proc., Rule 6(b)(2). Courts have given a liberal interpretation to Rule 6(b)

in order to work substantial justice. Rule 6(b) must be liberally construed in order that litigants be given an opportunity to be heard and given their day in Court so that justice may be served. *Anderson v. Stanco Sports Library, Inc.*, 52 F.R.D. 108, 109-110 (D.S.C. 1971). A discretionary extension should be liberally granted absent a showing of bad faith on the part of the movant or undue prejudice to the other parties. *United States v. Miller Brothers Constr. Co.*, 505 F.2d 1031, 1035 (10th Cir. 1974); *Tatterson v. Coppers Co., Inc.*, 104 F.R.D. 19, 20 (W.D.Pa. 1984).

WHEREFORE, the above premise considered, Plaintiff respectfully requests that the Scheduling Order be amended, that discovery be extended through July 11, 2008 and that the date for the filing of dispositive motions be extended to August 11, 2008.

Respectfully submitted,

CARR MALONEY P.C.

_____
Thomas L. McCally, Esquire, #391937
Tina M. Maiolo, Esquire #454987
1615 L Street, NW, Suite 500
Washington, DC 20036
(202) 310-5500/(202)310-5555 (fax)
Attorneys for Plaintiff

## RULE 37(a)(2) CERTIFICATE

Attorneys for Plaintiff Leo Donohoe conferred with counsel for the Defendant in a good faith attempt to resolve the present discovery dispute without the necessity of court intervention. The parties were not able to reach a complete agreement on extending discovery. As noted in footnote number 1, the parties have, however, agreed to the re-scheduling of certain depositions after the close of discovery, May 16, 2008.

_____
Thomas L. McCally

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of May, 2008, a copy of the foregoing was sent via the Court's electronic filing system and via e-mail to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1919 Pennsylvania Avenue, NW, Suite 200, Washington, DC 20006, Attorney for Defendant.

_____
Thomas L. McCally

# EXHIBIT 1

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

CONSTANCE M. PENDLETON
Direct (202) 973-4229
conniependleton@dwt.com

SUITE 200
1919 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20006-3402

TEL (202) 973-4200
FAX (202) 973-4499
www.dwt.com

April 8, 2008

**Via Email**

Thomas L. McCally, Esq.
Carr Maloney P.C.
1615 L Street, NW
Suite 500
Washington, D.C. 20036

Re:   *Leo Donohoe v. Bonneville International Corp.*,
U.S. District Court for D.C., CA No. 07-949 (RWR)

Dear Tom:

We have reviewed your letter and email concerning Bonneville's alleged discovery deficiencies.

As to Requests for Production Nos. 1-3, 7-11, 14, 22-31, and Interrogatory 1 and others to which you object based upon the use of "boilerplate objections," Bonneville repeats and reasserts its general objections in its specific objections to preserve those objections, as is standard practice. Upon information and belief, all responsive documents have been produced. No other responsive documents exist. A motion to compel based on these objections would only serve to waste the time of the parties and the Court.

As to Request for Production No. 3 and Interrogatory Nos. 4, 5, 17 and 18, in addition to reasserting Bonneville's general objections, all documents relating to the RIF have been provided. If you find no documents in the three bankers boxes that were produced, including the RIF documents, indicating that Plaintiff was "targeted" for the RIF it is simply because he was not targeted. He was one of over 50 employees included in the RIF. There are no such documents or other explanations. Bonneville implemented a major restructuring of frequencies and sales forces in the DC Radio Group. Both National Sales Managers – Jeff Kessler and Leo

Thomas L. McCally, Esq.
April 8, 2008
Page 2



Donohoe -- were RIF'ed. A new position, Director of National Sales Sports Sales, was created that required selling four radio stations, sports sales experience, experience with the Nationals baseball team, and experience managing others. Mr. Spacciapolli was the superior candidate among the eleven candidates for the job; Mr. Donohoe was not. Mr. Donohoe had limited experience managing others, and had proven unprofessional at times, his supervisors and others questioned his interest or ability to work for four stations at once. Indeed, Mr. Donohoe himself even expressed doubt about his interest in selling that many stations. He had no experience with the Nationals. Further, notwithstanding the fact that your requests do not ask for documents comparing how Mr. Donohoe or other National Sales Managers perform as compared to other National Sales professionals locally, regionally or nationally, Bonneville does not maintain such files. Accordingly, there are no documents responsive to that request beyond those included in Mr. Donohoe's personnel file.

As to Request for Production No. 4 and Interrogatory 8, there is no file of documents relating to complaints about Mr. Mills. As disclosed, no formal or written complaints were ever filed. To the extent any employees complained about Mr. Mills, the complaints were oral. Only a few people made oral complaints, not uncommon of supervisors like Matt Mills who hold employees and themselves to high standards. As Mr. Oxley recalls, the substance of those complaints, in addition to those already disclosed, is as follows: Jean Fowler complained that it was easier at the office when Mr. Mills was on vacation, that it would be great if Mr. Mills lightened up and that he was too intense. She also complained that that she didn't feel she was treated fairly on certain accounts because the accounts were removed from her responsibilities, in response to which Mr. Oxley pointed out that other sales employees also had accounts pulled for business reasons, a decision supported both by Mr. Mills and Mr. Oxley. Ms. Lish complained to Mr. Oxley about Mr. Mills, but her complaints were more indirect. Mr. Donohoe complained to Mr. Oxley about Mr. Mills at greater length than did any other employee. For example, Mr. Donohoe complained that Mr. Mills asked him to prepare for calls and sales meetings.

As to Request for Production No. 6 and paragraph 2 page 5 of your March 12 letter, discovery into all complaints of discrimination against Bonneville during the period that Plaintiff was employed to the present, irrespective of the type of claim or geographic scope, is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in scope. This is a single plaintiff, single market age discrimination claim, not a class action. Mr. Donohoe alleged discrimination on the basis of age alone – not race, gender or national origin. Discovery outside those parameters is wholly unwarranted. *See Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) (plaintiff not entitled to company-wide discovery absent particularized showing of need, and concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (limiting discovery to work unit); *Byers v. Illinois State Police*, 2002 WL 1264004, at *6, 53 Fed. R. Serv. 3d 740 (N.D. Ill. June 3, 2002) (observing that "[a]t a minimum, the requested discovery must relate to the particular claims of the case" and collecting cases); *EEOC v.*

Thomas L. McCally, Esq.
April 8, 2008
Page 3



*Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) (stating that "[i]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains"); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that "a vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discriminatory] motive does not show the particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry"); *Heward v. Western Elec. Co.*, 35 Fair Empl. Prac. Cas. (BNA) 807, 811-812 (10th Cir. 1984) (affirming limitation of discovery to region where ADEA plaintiff worked, on grounds that case was not brought as class action or one in which company-wide allegations of discrimination were central to plaintiff's claim); *Hinton v. Entex Inc.*, 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (holding that scope of discovery should be limited to facility at which plaintiff is employed when "plaintiff has not made any specific factual allegations of discrimination that pertain to any facility of [defendant] other than the one [at which she physically worked]"). For the same reason, discovery relating to RIFs or layoffs in jurisdictions other than Washington DC will not lead to discoverable evidence.

As to Request for Production No. 7, we are confirming, but upon information and belief, all responsive documents have been produced.

As to Request for Production No. 18, there are no other responsive documents. Mr. Mills did not take notes at the majority of the interviews for the Director of National Sales/Sports Sales position, in part because most applicants, other than Mr. Donohoe and Mr. Spacciapolli, were interviewed outside of the office. Mr. Spacciapolli, unlike Mr. Donohoe, provided an impressive multi page Power Point presentation at his interview which answered most of Mr. Mills' questions. Mr Spacciapolli's Power Point has already been produced. Mr. Mills took a few notes during Mr. Donohoe's interview but wrote down the majority of his notes relating to Mr. Donohoe's interview after he learned that Mr. Donohoe was threatening to file suit. All such notes have been produced.

In addition, to the extent you seek documents responsive to an inquiry made by Mary Kay LeMay to Scarlett Pate, *see* para. 10 of your March 12 letter, your maximum document requests as agreed to by the parties in our October 19, 2007 Joint Report, have been exceeded. Furthermore, your objection to redaction of the attorney-client privileged material BIC 000282 is unwarranted. The redacted material in BIC 000282 reflects internal attorney-client communications and advice of counsel. In this vein, we still await a response from you to our February 28, 2008 email regarding why you have not produced any of Mr. Donohoe's calendars dating after January 4, 2006 or a privilege log. Your assertion of attorney-client privilege as to those documents is misguided. Please produce the remaining calendar and diary pages within seven days to avoid a motion to compel.

Thomas L. McCally, Esq.
April 8, 2008
Page 4



As to Interrogatory Nos. 10 and 23, Katz has been previously involved in Bonneville's employment decisions. Katz's opinion about applicants for National Sales positions and the Director of National Sales Sports Sales position matters because the NSMs and the Director of National Sales Sports Sales work directly with Katz. Bonneville has consulted Katz on a case by case basis. For example, Mr. O'Brien and Mr. Renzi asked Mr. Spacciapolli to present or "pitch" himself to Katz for the job of Z104's NSM when he applied for that position with Bonneville.

As to Interrogatory No. 21, Mr. Spacciapolli was extremely interested in the position of Local Sales Manager for WTOP in July 2006 and actively and enthusiastically pitched himself for the job. Because Mr. Spacciapolli was a superior performer and well suited for the position, it was awarded to him and Bonneville therefore did not need to advertise the position outside of the company. Mr. Spacciapolli has continued to perform in a superior manner and was since left Bonneville to become General Sales Manager at CBS Radio in Pittsburg, where he has already been promoted to Director of Sales, the equivalent position held by Mr. Donohoe's current supervisor.

As to Interrogatory No. 13, any investigation into plaintiff's allegations of age discrimination was conducted by counsel and the substance of that investigation is attorney-client privileged and attorney work product.

The response to Interrogatory Nos. 12 will be supplemented under separate cover. In addition, we will produce some further responsive documents that have come to our attention or upon which we intend to rely in this case.

Sincerely,

*Constance Pendleton/jea*

Constance M. Pendleton

**EXHIBIT 2**

Case 1:07-cv-00949-RWR-DAR   Document 23-2   Filed 05/15/2008   Page 6 of 11

```
 1      A    I didn't take notes on many of these
 2   interviews.
 3      Q    Who did you take notes on?
 4      A    I took notes on Mr. Donohoe's interview.
 5      Q    Anyone else?
 6      A    Mr. Spacciapolli I didn't.  He provided me
 7   a very extensive proposal that covered all the notes
 8   I would have taken.  All these interviews, the only
 9   reason I do, I don't take notes on.
10      Q    Did you take notes on anyone other than
11   Leo Donohoe?
12      A    If I did they would have been included in
13   the documents we provided you.
14      Q    We haven't received any?
15      A    Then I didn't take notes.  We had an
16   application in front of me and I was referencing
17   that obviously.
18      Q    Why did you take notes on Mr. Donohoe's
19   interview?
20      A    Most of these interviews were held with an
21   application and/or resume in front of me and I was
22   referencing that in a lot of the questions I was
```

1  asking.  For Mr. Donohoe we got talking about some
2  things and I jotted a couple things down that I
3  thought were relevant on a piece of paper I had in
4  my stack of papers.  I think you have it here as an
5  outline I was using for the account executives that
6  I was interviewing for the sales department.
7     Q    Why did you only take notes on
8  Mr. Donohoe?
9     A    He didn't bring a presentation or anything
10 else that he outlined on the questions I had like
11 Mr. Spacciapolli, so I wrote a couple things down.
12    Q    Did anybody else bring a PowerPoint
13 presentation?
14    A    I don't remember if anybody else brought a
15 PowerPoint presentation.
16    Q    Why did Mr. Spacciapolli bring a
17 PowerPoint presentation?
18    A    You have to ask him that question.
19    Q    You don't know?
20    A    No.
21    Q    You had no involvement with that?
22    A    No.

# EXHIBIT 3

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE   BELLEVUE   LOS ANGELES   NEW YORK   PORTLAND   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

| CONNIE M. PENDLETON | SUITE 200 | TEL (202) 973-4200 |
| DIRECT (202) 973-7229 | 1919 PENNSYLVANIA AVE NW | FAX (202) 973-4499 |
| conniependleton@dwt.com | WASHINGTON, DC 20006 | www.dwt.com |

April 10, 2008

Thomas L. McCally, Esq.
Carr Maloney P.C.
1615 L Street, NW
Suite 500
Washington, DC 20036

    Re:    *Donohoe v. Bonneville International Corp.*, CA No. 07-949 (RWR)

Dear Tom:

I write in response to your supplemental document requests served on March 11, 2008. These requests are impermissible, and we suggest that you withdraw them. The parties stipulated on October 19, 2007 in the Rule 16.3 Joint Report that a total of thirty document requests would be adequate. This stipulation is binding upon the parties by rule. *See* LCvR 26.2(b); Fed. R. Civ. P. 29; *see also Riley v. Walgreen Co.*, No. H-04-2189, slip op. at 6-7 (S.D. Tex. Jan. 31, 2005) (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order). In order to exceed this limitation, you must either seek our consent to raising the limit or move the court to do so. You have done neither. This letter also serves as notice that you already exceeded the thirty request limit by two in your first set of document requests and we do not consent to any further increase in the number of requests, let alone the increase of seventeen that you have sought to impose unilaterally upon our client.

Apart from these problems with your supplemental document requests, many of your requests appear duplicative and have already been responded to. Moreover, we object to the substance of the requests and plan to file formal objections to the extent the requests seek documents outside the scope, geographic or otherwise, of Bonneville's DC Radio Group at the time of the January 2006 RIF, and to the extent the requests are not reasonably calculated to lead to the discovery of admissible evidence, are overbroad, unduly burdensome or are protected by the attorney-client or

April 10, 2008
Page 2

other privilege. We also object to your requests for financials on the basis that such requests are premature as no *prima facie* case has been made that plaintiff is entitled to punitive damages.

Sincerely yours,

*Constance M. Pendleton*

Constance M. Pendleton