IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LEO DONOHOE,** | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| **BONNEVILLE INT'L CORP.,** | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S OBJECTIONS TO ORDER DENYING LEAVE
TO TAKE ADDITIONAL DEPOSITIONS**

Plaintiff Leo Donohoe moved for leave to take *twenty-five* depositions in this single-plaintiff age discrimination case arising from a single reduction-in-force (the "RIF") and the single decision made by two managers of Defendant Bonneville's D.C. operations to hire a superior candidate for a new position for which Mr. Donohoe applied after the RIF. When he filed his motion, he had taken no depositions and had scheduled only one. For myriad reasons, including, *inter alia*, his failure to exhaust the seven depositions allotted to him before seeking leave to take yet more depositions, his failure to show that the depositions he had taken (none, in fact) were necessary, his failure to seek alternative means of discovery, and his failure to show any (much less any particular) complexity in his case, Mr. Donohoe's request was entirely improper. Accordingly, Magistrate Judge Robinson summarily denied his motion. *See* April 23, 2008 Order (minute order denying motion for the reasons set forth in Bonneville's opposition); *see also* Pl.'s Mot. for Leave to Increase the Number of Depositions ("Mot. for Leave"). Now, after taking four depositions – two of which were of peripheral witnesses without meaningful information – and without complying with the Local Rules of this Court, he seeks, via the end-

1

around of his current filing, to evade his obligation to make these same showings anew to Magistrate Judge Robinson. Rather than filing again for leave to take additional depositions, he has styled this entirely new motion, based on evidence not presented to the Magistrate Judge, as his "objections" to the order denying his motion. In short, dissatisfied with the Magistrate Judge assigned to hear discovery disputes in this case, he seeks to present an entirely new discovery motion to the District Court directly. Moreover, his objections now, as before, seek court approval of a wide-ranging inquisition involving two dozen depositions in this single-plaintiff age discrimination case, none of which (beyond the seven already allotted) are remotely necessary. This speculative, costly and harassing effort should not be countenanced, and Mr. Donohoe's purported "objections" should be rejected.[1]

## I.   BACKGROUND

### A.   Factual Background

This is an age discrimination case, arising from a RIF in Bonneville's Washington DC Radio Group in January 2006. At that time, Bonneville restructured its operations and programming in the Washington area in an effort to acquire new and to bolster existing news/talk formats and ventures. To this end, Bonneville eliminated WWZZ, a rock station, to make space for a new news station, Washington Post Radio. WGMS, a classical station, was moved to a weaker frequency, and its sales force was eliminated. The sales forces of certain of the remaining stations (WTOP and WFED) and of the new station (Washington Post Radio) were consolidated for purposes of efficiency. (WGMS was eliminated altogether a year later.) The

---

[1] Bonneville will respond separately to the two discovery motions [Dkt. #23, #24] Mr. Donohoe filed on May 15, 2008.

"RIF" resulted in the termination of fifty-one employees, including Mr. Donohoe.[2] Of these fifty-one employees, only ten were re-hired shortly after the RIF.

One position open for hiring after the RIF was a newly created position: Director of National Sales/Sports Sales Manager. This position was designed to cover the four area stations: WTOP, Washington Post Radio, WGMS and WFED. Fifteen applicants, including Mr. Donohoe, applied for this position. Ultimately, Bonneville hired Michael Spacciapolli, the most qualified candidate for the position.[3] Among other qualifications, Mr. Spacciapolli had previous experience managing Account Executives for sports sales, had a strong relationship with the Washington Nationals baseball team and had been integral in Bonneville's negotiations with the Nationals to broadcast Nationals' baseball games. No other applicant had these qualifications. Moreover, Mr. Spacciapolli had been employed by and was well regarded by representatives of Katz, Bonneville's rep firm, who shared their opinions with Bonneville decisionmakers Joel Oxley and Matt Mills that Mr. Spacciapolli was the superior candidate over Mr. Donohoe for the

---

[2] Contrary to Mr. Donohoe's contentions, *see* Pl.'s Objections ("Objections") [Dkt. #20] at 2 (claiming nineteen years' employment); Mot. to Compel Discovery ("Mot. to Compel") [Dkt. #19] at 2 (claiming twenty years' employment), he was employed by Bonneville for less than *nine*, not twenty, years. Mr. Donohoe's employment with Bonneville started in 1997, when Bonneville acquired WTOP.

Moreover, while Mr. Donohoe attempts to characterize his job responsibilities as being primarily for WTOP, Objections at 2-3; *see also* Mot. to Compel at 3, as his paychecks reflect, his job included substantial sales responsibility for WGMS (one-third of his time was devoted to WGMS – not ten percent, as he has suggested – and national sales made up a significantly greater portion of sales at WGMS than at WTOP, so Mr. Donohoe was far more central to WGMS's sales efforts than to WTOP's). As a WGMS National Sales Manager, he was naturally included in the RIF of all WGMS's sales staff.

[3] Contrary to Mr. Donohoe's prior contentions, Mot. to Compel at 3, 4, Mr. Donohoe was not "replaced." The position, which included sports sales and covered all four stations, was newly created and involved far more and greater responsibilities than the National Sales Manager position that Mr. Donohoe had previously occupied, which position was eliminated.

newly created position, based on prior experience with both candidates, and that Mr. Spacciapolli was better organized and more effective than Mr. Donohoe. Mr. Spacciapolli was subsequently promoted from the position of Director of National Sales/Sports Sales Manager to Local Sales Manager for WTOP – a position with a larger budget and more responsibility and a position that Mr. Spacciapolli actively sought to obtain.

### B. Procedural Background

In the spirit of cooperation, Bonneville agreed at the October 26, 2007 Scheduling Conference to increase the Court's recommended number of depositions for standard cases such as this from five to seven each. Bonneville sees no reason why seven depositions are not sufficient. Mr. Donohoe knew at that time that over fifty employees in Bonneville's Washington DC Radio Group had been RIFed on January 4, 2006, and that a small group of Bonneville corporate/HR employees and managers assisted with implementing the RIF and were "involved with the employment decisions at issue." Mot. to Compel at 3. However, in an effort to resolve Mr. Donohoe's motion for leave to take more than seven depositions – filed before Mr. Donohoe took any depositions – without Court intervention, Bonneville offered Mr. Donohoe a compromise of twelve depositions each, including experts. Mr. Donohoe counter-offered with eighteen depositions each. The parties did not reach agreement, and Bonneville filed its opposition. As the Court recognized when it entered its scheduling order, seven depositions (let alone twelve) is more than sufficient for a simple age discrimination case such as this. Magistrate Judge Robinson denied Mr. Donohoe's motion on April 23, 2008.

### II. STANDARD OF REVIEW

Fed. R. Civ. P. 72(a) and LCvR 72.2(b) provide limited means for a party to seek reconsideration of a magistrate judge's decision on a nondispositive manner. "On review, the magistrate judge's decision is entitled to great deference unless it is clearly erroneous or contrary

to law, that is, if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Page v. Pension Benefit Guar. Corp.*, 498 F. Supp. 2d 223, 225 (D.D.C. 2007) (Roberts, J.) (quoting *Pulliam v. Continental Cas. Co.*, Civil Action No. 02-370 (RWO), 2006 WL 3003977, at *2 (D.D.C. Oct. 20, 2006)).

### III. ARGUMENT

No error was committed here. It is well settled that a party is not entitled to take the deposition of each and every individual who may possess relevant information in a case. "The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *Dixon v. CertainTeed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996). Accordingly, it is generally held that a party seeking to exceed the limits on depositions contemplated by the Rules must satisfy certain requirements, all notably absent here:

1. The party must show that *each* additional deposition will reveal new information that has not already been revealed in the previously allowed depositions;

2. The party must show that the depositions already taken were themselves necessary and not duplicative or otherwise unjustified;

3. The party must exhaust his already-allowed depositions before moving for the additional depositions;

4. The party must have exhausted less expensive and burdensome means of discovery before resorting to a request for relief; and

5. The party must demonstrate a factual basis, such as the case's particular complexity, justifying the need for the additional depositions.

Not only does Mr. Donohoe fail to satisfy any of these requirements, but he also fails to satisfy the requirements for filing objections to a magistrate judge's order in the first instance. By so doing, he concedes that the order denying his prior motion was justified, and he dooms his objections to failure.

### A. Plaintiff's Motion Is An Improper New Motion, Not A Set Of Objections To The Magistrate Judge's Order

Mr. Donohoe does not contest his obligation to show that each additional deposition will reveal new information not previously revealed in prior depositions. *See Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482-83 (N.D. Tex. 2001). Nor does he overtly contest – although he does seek to evade – his obligation to exhaust his already-allowed depositions *before* moving for additional depositions. *See Finazzo v. Hawaiian Airlines*, No. 05-524, 2007 U.S. Dist. LEXIS 34606 (D. Haw. May 10, 2007). Nor, for that matter, does he contest (indeed, he appears to embrace) either his obligation to exhaust less expensive and burdensome means of discovery before moving for additional depositions or his obligation to demonstrate his case's particular complexity justifying the need for additional depositions. *See Lloyd v. Valley Forge Life Ins. Co.*, No. 06-5325, 2007 U.S. Dist. LEXIS 40526, at *5 (W.D. Wash. Mar. 23, 2007) (obligation to exhaust less expensive avenues); *Campo v. American Corrective Counseling Servs.*, No. 01-21151, 2007 U.S. Dist. LEXIS 87150, at *15-18 (N.D. Cal. Nov. 6, 2007) (particular complexity).

His first motion utterly failed to carry his burden on each of these points, and each was sufficient to justify the Magistrate Judge's order. And yet, ignoring these issues entirely, and without any citations to any authority, Mr. Donohoe now claims to have "objections" to that order. And he does so without pointing to a *single* error of fact or law arising from the Magistrate Judge's actual decision. Instead, he points to testimony from the four depositions he has taken *since* the filing of his motion for leave (Mr. O'Brien, Mr. Mills, Mr. Oxley (as Fed. R. Civ. P. 30(b)(6) deponent) and Ms. Fowler), *see Finazzo*, 2007 U.S. Dist. LEXIS 34606, at *9, and to his baseless suspicions and conjectures regarding the supposed necessity of the twenty-one other depositions he seeks. This new set of arguments and facts, not presented to the

Magistrate Judge and accruing after the filing of Mr. Donohoe's motion, is a far cry from the necessary showing of clear error contrary to law. Indeed, given their after-the-fact vintage, they are insufficient by definition. For this reason alone, Mr. Donohoe's objections should be overruled.

**B.   Donohoe's Objections Are Premature And Without Merit**

Even setting aside the impropriety of Mr. Donohoe's objections, they are, for the same reasons his first motion was meritless, still without merit. First, Mr. Donohoe has taken *four* depositions – including one of a former Bonneville employee and friend of Mr. Donohoe's, who at the time of the RIF had not been employed by Bonneville for over two years, and another of a WTOP account executive who played no part in the RIF. But it is the uniform view of the federal courts that, in order to demonstrate his entitlement to additional depositions, he must first take *all* the depositions allotted to him by the Court. *See Mazur v. Lampert*, No. 04-61159, 2007 U.S. Dist. LEXIS 13934, at *5 (S.D. Fla. Feb. 28, 2007) (denying motion for extra depositions where plaintiff had only taken five depositions; the party must justify all the previously taken ten depositions in order to get more, and a particularized showing is necessary). As the *Finazzo* court observed, "[c]ourts . . . do not grant leave to take additional depositions until the moving party has exhausted the ten depositions permitted as of right" because the Rule "clearly contemplates that a party has already taken ten depositions before a motion is filed" for leave to exceed the limit. *Finazzo*, 2007 U.S. Dist. LEXIS 34606, at *9 (quoting *Lloyd*, 2007 U.S. Dist. LEXIS 40526, at *5); *see also Mazur*, 2007 U.S. Dist. LEXIS 13934, at *5 (denying motion for extra depositions where plaintiff had only taken five depositions) (citing *Barrow*, 202 F.R.D. at 482-83); *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, No. 3:06-CV-232, 2006 WL 1525970, at *2 (D. Conn. May 25, 2006) (observing that "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of

right"); *Whittingham v. Amherst Coll.*, 163 F.R.D. 170, 171 (D. Mass. 1995) (explaining similar local rule by noting that the rule "requires a party to exhaust available discovery before seeking leave for additional discovery events"). Mr. Donohoe has not done so. Nor has he shown that the three additional depositions he has yet to take (particularly, Mr. Spacciopolli, the superior candidate hired for the position Mr. Donohoe sought, and Mr. Oxley (individually), who was directly involved in both personnel decisions at issue in this action) will not provide the information that plaintiff claims he can only obtain through deposing his twenty-five deposition targets. His objections (like his prior motion) are both premature and baseless.

Second, Mr. Donohoe must demonstrate the need not only for the additional depositions but also for the depositions he has already taken. *Barrow,* 202 F.R.D. at 482-83. Absent such a rule, "a party could circumvent the cap by taking ten depositions of questionable relevance first and leave the most crucial depositions for the end, confident in the belief that leave of the court shall not be denied." *Id.* at 483. *Newell v. State Teamsters Joint Council No. 39*, No. 05-C-552, 2007 U.S. Dist. LEXIS 82253, at *3-4 (E.D. Wis. Oct. 25, 2007); *see also Lewis v. Mt. Morris Twp.*, No. 06-cv-15428, 2007 U.S. Dist. LEXIS 72489, at *1-2 (E.D. Mich. Sept. 28, 2007) (citing *Barrow* for the proposition that "[c]ourts ordinarily require a particularized showing of necessity for each additional deposition" over the 10-deposition limit); *Baker County Med. Servs. v. Summit Smith, LLC*, No. 05-cv-541, 2007 U.S. Dist. LEXIS 1967, at *4-5 (M.D. Fla. Jan. 9, 2007) (particularized showing is required); *In re At Home Corp.*, No. 04-0931, 2005 U.S. Dist. LEXIS 43437, at *3 (N.D. Cal. Feb. 4, 2005) (same). This he cannot do. Most glaring in this regard is Mr. Donohoe's decision to depose Jean Fowler, a current WTOP account executive who was not involved either in the RIF or the decision to include Mr. Donohoe in it or in the decision to hire Mr. Spacciapolli, and Mark O'Brien, a former Bonneville employee who

likewise lacked reliable information about anything related to the RIF or to the decision to hire Mr. Spacciapolli, since he has not been employed by Bonneville since 2003. Mr. Donohoe has simply failed to manage his case judiciously and now seeks to be rescued by the Court from his own mismanagement in the final hours of discovery.[4]

Third, Mr. Donohoe has failed to make a particularized showing as to the need for his numerous contemplated depositions. Most glaringly, Mr. Donohoe continues to seek to depose Bonneville's CEO and COO, Bruce Reese and Bob Johnson. *See* Mot. for Leave at 6 (making same request to Magistrate Judge Robinson). Requests to depose corporate executives "serve as a potent tool for harassment in litigation." *Wertheim Schroeder & Co. v. Avon Products, Inc.*, No. 91 CIV. 2287, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995) (denying deposition of corporate officers when information they could offer would be duplicative); *see also Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. 1997) (citations omitted) (observing that, "[w]hen the discovery to be obtained is through the deposition of a senior executive, a court must remain mindful that permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation," and placing strict restrictions upon continued deposition of Columbia Pictures' Senior Vice President).

Thus, where – as here – a party can obtain relevant information through other means, courts commonly view deposing a corporate litigant's president or CEO as vexatious and harassing. A party who can obtain necessary information from a less burdensome and expensive source, such as subordinates, has no justification for deposing a corporation through its president

---

[4] Discovery is scheduled to close today, but due to scheduling conflicts the parties have agreed that Mr. Donohoe may take the depositions of Ms. Lish, Mr. Spacciapolli and Mr. Oxley (individually), and that Bonneville may take the depositions of Mr. Donohoe's damages expert and Jeff Hedges after the discovery deadline.

or CEO "other than to afford an opportunity to vex and harass an opposing litigant." *New Sanitary Towel Supply, Inc. v. Consol. Laundries Corp.*, 24 F.R.D. 186, 189 (S.D.N.Y. 1959). This is particularly true where the executives (such as Mr. Reese and Mr. Johnson) do not have personal knowledge about the specific inclusion of Mr. Donohoe in the RIF or about the decision not to hire him for the new position. *See Harris v. Computer Assocs. Int'l Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (observing that "[d]epositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute"); *see also Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 333-35 (M.D. Ala. 1991) (denying plaintiff's request to depose corporate vice president who lacked unique personal knowledge of the issues). Moreover, Mr. Donohoe has taken his Fed. R. Civ. P. 30(b)(6) deposition and has received through discovery over three banker's boxes of documents related to the RIF and to his failed application to become the new Director of National Sales/Sports Sales Manager. There is simply no reason – and, as in his first motion, Mr. Donohoe has offered none beyond mere conjecture – to require these high-level Bonneville officials to sit for deposition in this Washington, D.C.-based single-plaintiff age discrimination matter. Mr. Donohoe's efforts to the contrary constitute unadulterated and transparent harassment.

      The other depositions Mr. Donohoe asserts he must take to litigate his case are similarly unnecessary. Seven of the individuals Mr. Donohoe seeks to depose (Mr. Hesano, Ms. Travaligni, Mr. Kluft, Mr. Porretti, Mr. Clowers, Mr. Grey and Ms. Fruitbine) are employed by third parties and, apart from offering their objective outside opinions regarding the relative merits of Mr. Spacciapolli and Mr. Donohoe in brief conversation with Mr. Oxley and Mr. Mills, had *no* involvement in the hiring of Mr. Spacciapolli. And they had absolutely no involvement

in the RIF. Another (Mr. Kliener) is a current employee of Bonneville – Mr. Donohoe's former assistant – who Mr. Donohoe merely speculates may have information regarding Mr. Donohoe's own experience (about which he is perfectly capable of collecting information) and, merely upon information and belief, information regarding Mr. Mills (with whom Mr. Donohoe is immensely familiar, and who, in any event, has been deposed). Another (Mr. Renzi) could not possibly have new or valuable information relevant to the decisionmakers' subjectively-held views and information regarding Mr. Spacciapolli's "experience, qualifications and reputation," since he was not involved in the decision to hire Mr. Spacciapolli and since far more relevant information is available from and has been provided by the actual decisionmakers, both via deposition and the production of documents. *See* Objections at 12. Another (Mr. Quast) is asserted to have knowledge regarding the promotion Mr. Spacciapolli received to WTOP's Local Sales Manager shortly after his hire as Director of National Sales/Sports Sales Manager. Of course, Bonneville has provided, via both Mr. Mills and Mr. Oxley in deposition, via the production of numerous documents,[5] and in response to interrogatories, abundant evidence regarding both of these decisions regarding Mr. Spacciapolli, and Mr. Oxley could presumably provide more such information in his not-yet-taken individual deposition.[6] Mr. Donohoe's requests to depose Mr.

---

[5] As stated to Mr. Donohoe in Bonneville's Responses and Objections to his first discovery requests and elsewhere, the documents produced regarding the original hire and July 2006 promotion of Mr. Spacciapolli include BIC 00484-719 and BIC 07277-7610.

[6] Mr. Donohoe's contention that he will not be able to elicit information about alleged discriminatory pretext and motive by deposing the decisionmakers themselves proves too much. *See* Objections at 17. First, the only true reason he will be unable to elicit such information is if his claims are weak. He already has stacks and stacks of documents and has deposed numerous non-decisionmakers on the theory that they would have information he could use to cobble together a showing of pretext. That they did not provide such information is inconsequential to his alleged need for yet more depositions. In any event, this purported obstacle to collecting information does not distinguish Mr. Donohoe from any another discrimination plaintiff, and he cites no authority for the strange notion that such an alleged obstacle creates a special carve-out

Quast and Mr. Renzi are nothing short of (premature) double dipping. Another allegedly necessary deponent (Mr. Steiber) is a former Bonneville employee who Mr. Donohoe merely speculates on information and belief has "certain information" regarding Mr. Donohoe's complaints. Objections at 11-12.[7] And, of course, there are the three bonus depositions Mr. Donohoe seeks to tack on in addition, based solely on his unsubstantiated conjecture that these unidentified deponents may have useful information. Mr. Donohoe's proof falls well short as to each possible extra deponent. *See Barrow*, 202 F.R.D. at 482-83.

Fourth, Mr. Donohoe is obligated, separately, to show that his case is particularly complex, and so much so that deviation from the limits contemplated by the Federal Rules of Civil Procedure and this Court's order is justified. *See, e.g., Campo v. American Corrective Counseling Servs.*, No. 01-21151, 2007 U.S. Dist. LEXIS 87150, at *15-18 (N.D. Cal. Nov. 6, 2007) (additional depositions allowed in Fair Debt Collection Practices Act class action, seeking to certify a statewide class covering a span of many years (where five plaintiffs were already named and eleven defendants remained in suit), where "the complexity clearly warrant[ed] more than ten depositions" – but allowing less (twenty-three, including the eleven defendants) than the requested thirty depositions). On this point, he falls woefully short. This is a single-plaintiff age discrimination case and is hardly a candidate for any departure – let alone the radical departure Mr. Donohoe contemplates – from the presumptive limits provided by the Court's order. And Mr. Donohoe has made no showing to the contrary.

---

from the presumptive deposition limits for discrimination plaintiffs, let alone any other category of plaintiffs.

[7] To the extent Ms. Pate is arguably a proper deponent, Mr. Donohoe has squandered his opportunity to depose her by wasting his allotted depositions on other tangential deponents, such as Mr. O'Brien, Ms. Fowler and Ms. Lish (scheduled to be deposed on May 19). *See* discussion, *supra* at 8-9.

12

Finally, Mr. Donohoe's requested depositions would be merely cumulative of evidence that he either has already collected or will collect in pending depositions. There is no reason that he must depose dozens of individuals when the information they have will merely gild the lilies produced by other witness testimony and in the reams of documents Bonneville has already served on Mr. Donohoe in response to his discovery requests. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (allowing court to limit discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see generally* Mot. for Protective Order (reviewing information already produced and cataloguing Mr. Donohoe's repeatedly duplicative discovery requests). Most obvious in this regard is Mr. Donohoe's insistence on deposing all seven Katz employees who attended a meeting with Mr. Oxley and Mr. Mills at which there was a brief discussion about candidates for the new Director of National Sales/Sports Sales Manager position. Such opinions of third parties do not amount to "direct involvement" in Bonneville's hiring decisions. *See* Mot. for Leave at 3. Moreover, they are irrelevant to Bonneville's motives, and, in any event, Mr. Donohoe has elicited – and will be able to elicit yet more – testimony regarding the meeting from Mr. Mills and Mr. Oxley (whose individual deposition is pending). The other proposed depositions are similarly duplicative and harassing. *See generally* discussion, *supra* (observing that depositions of high-level Bonneville executives will only produce information already produced in produced documents and in the Fed. R. Civ. P. 30(b)(6) deposition; that depositions of other individuals seek information already in Mr. Donohoe's possession (*e.g.*, Mr. Spacciapolli's experience, information about Mr. Mills' management practices); and that other allegedly necessary depositions are purely speculative).

For all these reasons, Mr. Donohoe's objections to the Magistrate Judge's order are baseless. By no stretch has he demonstrated a clear error of law. And it is Bonneville – not Mr. Donohoe – that would be seriously prejudiced by the more than threefold increase Mr. Donohoe seeks in the number of depositions in this action. Mr. Donohoe demands what could amount to over one hundred hours spent in depositions, plus innumerable hours of preparation and travel time for lawyers and witnesses alike, all to scare up evidence to support Mr. Donohoe's baseless conspiracy theory in which no additional deponent is even alleged to have been involved. Such wasteful extravagance, in the pursuit of Mr. Donohoe's wide-ranging flights of fancy, merely would drive up costs and would undermine the interests of justice. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard A. Marcus, *Federal Practice and Procedure* § 2008.1, at 120 (1994) ("[W]here the sole object is to recover money, the cost of discovery is something the court should have in mind when contemplating limitations on the amount of discovery activity that is appropriate.").

## IV.   CONCLUSION

WHEREFORE, Bonneville respectfully requests that the Court reject Mr. Donohoe's objections to the Magistrate Judge's order denying leave to take the twenty-five depositions Mr. Donohoe seeks.

Dated: May 16, 2008

DAVIS WRIGHT TREMAINE LLP

  /s/  Constance M. Pendleton
Richard L. Cys (D.C. Bar No. 087536)
Constance M. Pendleton (D.C. Bar No. 456919)
Brigham J. Bowen (D.D.C. Bar No. D00301)
1919 Pennsylvania Avenue, N.W., Suite 200

Washington, DC 20006-3402
(202) 973-4200
(202) 973-4499 facsimile
richardcys@dwt.com
conniependleton@dwt.com
brighambowen@dwt.com

Counsel for Defendant Bonneville International
   Corporation

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of May, 2008, true and correct copies of the foregoing Memorandum of Points and Authorities in Opposition to Plaintiff's Objections to Order Denying Leave to Take Additional Depositions in support were served via ECF, as well as by first class mail, postage prepaid, and electronic mail upon:

    Thomas L. McCally, Esq.
    Carr Maloney P.C.
    1615 L Street, NW
    Suite 500
    Washington, D.C. 20036

                                            /s/ Constance M. Pendleton
                                            Constance M. Pendleton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEO DONOHOE,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No.: 07-949 (RWR) |
| | : |
| **BONNEVILLE INT'L CORP.,** | : |
| | : |
| Defendant. | : |

**ORDER**

Before the Court are Plaintiff's objections [Dkt. #20] to Magistrate Judge Robinson's Order, issued April 23, 2008, denying his motion for leave to take additional depositions. Upon consideration of the motion and the opposition thereto filed by Defendant, and for the reasons set forth in Defendant's opposition, it is this __ day of May, 2008, hereby

**ORDERED** that Plaintiff's objections are **OVERRULED**.

_____
Hon. Richard W. Roberts
United States District Judge