IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEO DONOHOE,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Civil Action No.: 07-949 (RWR) |
| : | |
| **BONNEVILLE INT'L CORP.,** : | |
| : | |
| **Defendant.** : | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Plaintiff's primary response to Bonneville's motion for a protective order ("Def.'s Mot.") is to argue the merits of his case, and he has peppered his brief with baseless insinuations of "lies" and other purported wrongs by Bonneville in pursuit of that effort. Of course, notwithstanding this transparent attempt to tee up his case on the merits in advance of dispositive-motion briefing, the merits are not before the Court at this stage of the litigation. And stripped of the pages of innuendo which dominate Mr. Donohoe's opposition (not to mention the completely irrelevant contents of the undated declaration he has tossed in for good measure), that opposition falls woefully short of establishing any reason not to enter the requested order.

For all the reasons set forth by Bonneville – and not meaningfully contested by plaintiff – Mr. Donohoe should be barred from seeking: (1) information regarding Bonneville's finances and net worth; (2) information regarding Bonneville operations outside of the Washington, D.C. area; and (3) any further documents in excess of the agreed-to limit of thirty (30) document requests, including any attempt to evade that limit via the circuitous route of Rule 30(b)(6).

1

## I.     ARGUMENT

Absent from Mr. Donohoe's opposition is any recognition that Bonneville has already produced documents in response to far more than the thirty requests to which the parties originally stipulated. Absent from his opposition is any recognition that, as set forth in Bonneville's motion for a protective order, the majority of his "supplemental" requests (and the improper requests accompanying his 30(b)(6) deposition notice), are duplicative of already-produced information and serve no purpose but to harass Bonneville. Likewise absent is any effort to address – much less distinguish – the litany of case law cited by Bonneville demonstrating that Mr. Donohoe has provided no basis for expanding his single-plaintiff discrimination suit from its relevant local geographic scope across the country in a wide-ranging fishing expedition. Also absent is any recognition of this Court's settled approach to the discovery of financial information from private defendants where the only basis for attempting to discover that information is purported claims for punitive damages (as well as any response to Bonneville's offer of compromise regarding filing such information with the Court). Absent, too, in Mr. Donohoe's opposition is any recognition that sales-related documents he continues to seek are already in his possession. In short, Mr. Donohoe's purported opposition to Bonneville's motion fails to oppose much at all.[1] Accordingly, as the necessity of entering the requested

---

[1] The majority of plaintiff's reply/opposition is devoted to (1) demonstrating that he was qualified for the position he sought after the RIF (Bonneville does not contest that Mr. Donohoe met the minimum qualifications for the position), and (2) attempting to justify his broad swath of discovery based on his mischaracterization of the nature and import of a small batch of supplemental documents Bonneville produced regarding the interview process for the Director of National Sales/Sports Sales Manager position (for which Bonneville hired superior candidate Michael Spacciapolli). This batch of résumés and notes is addressed more fully in Bonneville's opposition to plaintiff's motion for additional hours of deposition, which filing is incorporated herein by reference.

protective order is fully established, not having been meaningfully contested by Mr. Donohoe, it should be entered.

### A. Washington, D.C. Is The Only Relevant Market To Donohoe's Claims Of Alleged Discrimination.

Mr. Donohoe has consistently sought to expand his D.C.-based discrimination case from a single-plaintiff matter involving a reduction-in-force and a single hiring decision to a nationwide hunt for phantom scraps of evidence that could theoretically color his baseless claims of discrimination. And, rather than giving the slightest nod to the settled approach of the federal courts to such attempts – which is to reject them – Mr. Donohoe merely persists in insisting, without any factual basis whatsoever, that he is entitled to this discovery. He is not.

The proper scope of discoverable information in cases like this is limited to the appropriate work unit within the defendant company, and a plaintiff must make a particularized showing in order to justify exceeding this scope. Cases establishing these limitations are legion.[2]

---

[2] *See Sallis v. University of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) ("Courts have also limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery."); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (per curiam); *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) (observing that plaintiff was not entitled to company-wide discovery absent particularized showing of need, and concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that "[a] vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discriminatory] motive[ ] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry"); *Heward v. Western Elec. Co.*, 35 Fair Empl. Prac. Cas. (BNA) 807, 811-12 (10th Cir. 1984) (affirming limitation of discovery to region where ADEA plaintiff worked, on grounds that case was not brought as class action or one in which company-wide allegations of discrimination were central to plaintiff's claim); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (observing that "in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination the employing unit or work unit. To move beyond that focus the plaintiff and the EEOC must show a more particularized need and relevance") (internal citation omitted); *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) (stating that "[i]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual

Ignoring his obligation to provide a "particularized showing" of his entitlement to discovery beyond his work unit, *Carman*, 114 F.3d at 792 (requiring a particularized showing); *Hinton*, 93 F.R.D. at 337-38 (requiring "specific factual allegations of discrimination" in other facilities in order for discovery outside of the facility where plaintiff worked to be permitted); *McBride*, 2008 WL 1744772, at *3 (same, where plaintiff has shown that the "requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information," and collecting cases) (internal citations omitted); *Onwuka*, 178 F.R.D. at 517 (particularized showing required), Mr. Donohoe merely repeats his prior bare allegation of a purported "pattern or practice" of age discrimination involving high-level Bonneville officials, Pl.'s Opp'n at 10-11; *see also* Mot. to Compel at 16.[3]

---

complainant complains"); *McBride v. Medicalodges, Inc.*, No. 06-2535-JWL-GLR, 2008 WL 1744772 (D. Kan. Apr. 11, 2008) (observing that "[i]n non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on" the work unit); *Byers v. Illinois State Police*, No. 99-C-8105, 2002 WL 1264004, at *6, 53 Fed. R. Serv. 3d 740 (N.D. Ill. June 3, 2002) ("Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery unless she shows that the requested information is relevant and that she has a particular need for it."); *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) ("Likewise, Courts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery."); *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (limiting discovery to work unit); *Hinton v. Entex Inc.*, 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (holding that scope of discovery should be limited to facility at which plaintiff is employed when "[p]laintiff has not made any specific factual allegations of discrimination that pertain to any facility of [defendant] other than the one [at which she physically worked]").

[3] Rather than address this settled case law, Mr. Donohoe relies on three cases regarding the availability of punitive damages against employers, none of which speak to the proper scope of discovery in cases brought pursuant to state or federal age discrimination statutes. *See Lake Shore & Mich. So. v. Prentice*, 147 U.S. 101 (1893) (pre-ADEA Supreme Court decision regarding employer liability for punitive damages for employees' acts); *Franklin Inv. Co. v. Smith*, 383 A.2d 355, 359 (D.C. App. 1978) (decision regarding same concepts of vicarious liability for punitive damages); *Wardman-Justice Motors, Inc. v. Petrie*, 39 F.2d 512, 515 (D.C. Cir. 1930) (same). And these decisions merely reinforce Bonneville's point, given the paucity of any inkling, let alone a "particularized showing" of either actions warranting punitive damages

Such a naked allegation is plainly insufficient. *Carman*, 114 F.3d at 792; *Hinton*, 93 F.R.D. at 337-38; *McBride*, 2008 WL 1744772, at *3; *Onwuka*, 178 F.R.D. at 517.

This is particularly the case where, as here, the plaintiff has already taken a Fed. R. Civ. P. 30(b)(6) deposition (and has unsurprisingly come up empty-handed as to his efforts to allege discrimination of any kind, let alone discrimination involving high-level Bonneville officials) and has already obtained the entire universe of documents relevant to the RIF in question. As a matter of fact, and as Joel Oxley (the 30(b)(6) deponent) has explained under oath, the role of Bonneville headquarters in the RIF was limited to the decision regarding which stations would carry which frequencies after the station reorganization, and headquarters had no involvement in individual decisions regarding who would be included in the RIF. Oxley Dep. at 34-36; 47-58, 152, 156-58, 164-66, 209-13. Hence, even if Mr. Donohoe had any colorable claim of discrimination regarding the RIF – which he does not – he has fallen well short of providing any basis for indulging his inquisitory fantasies regarding San Francisco. His continued efforts to nationalize his case are nothing short of harassment and should be stopped.

### B. Bonneville's Sales Documents Have Been Produced And Financial Documents Are Beyond The Proper Scope Of Discovery.

Mr. Donohoe's unabated attempts to obtain sales and financial information are likewise fantastic and warrant this Court's protection of Bonneville from further harassing discovery tactics.

First, Mr. Donohoe's persistence in demanding a court order requiring disclosure of "sales" related information (he actually does not specify what, precisely, he is asking for) flies in the face of the fact that, notwithstanding numerous procedural and substantive problems with his shape-shifting requests, Bonneville has provided him the documents he has requested. In this

---

or of any discrimination in San Francisco (let alone any that would be relevant to this case). *See* Def.'s Mot. at 9-11.

regard, the odd contention that Bonneville has refused to provide comparative documents regarding Mr. Donohoe and Mr. Spacciapolli, Pl.'s Opp'n at 7, is factually inaccurate, both in relation to Bonneville's motion and to the facts. What Bonneville set forth in its motion was simply that Mr. Donohoe had not previously requested the specific category of comparative documents discussed in his motion to compel and that such a request would be improper, for multiple reasons. Def.'s Mot. at 8-9. In any event, notwithstanding Mr. Donohoe's erroneous opposition to the contrary, Bonneville has provided both the year-end Miller Kaplan and Hungerford reports (which he requested just prior to his motion to compel after he had already exceeded his thirty document requests) *and* the comparative Spacciapolli/Donohoe information requested in his motion – and Bonneville did so before Mr. Donohoe filed his inaccurate opposition contending otherwise. BIC 007035-7275, 7638-7678; BIC 007012-7029, 7030-7034, 7719-7743. This issue is moot, and Bonneville should be protected from further harassing requests of this nature.

Second, Mr. Donohoe's insistence on his entitlement to nationwide gross financial income information regarding Bonneville continues to ignore reality. As set forth in Bonneville's motion for a protective order, this Court has consistently declined to allow plaintiffs to discover financial information when the basis for such discovery is solely rooted in claims for punitive damages. *See D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008); *John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986) (deferring "until necessary to prove up punitive damages"); *Skinner v. Aetna Life Ins. Co.*, No. 83-cv-0679, 1984 U.S. Dist. LEXIS 19817, at *3 (D.D.C. Feb. 2, 1984) (financials should not be disclosed until a *prima facie* showing has been made warranting such disclosure). And, since Mr. Donohoe fails to address this Court's approach at all – he persists instead in characterizing the issue as not being

"definitively" resolved, Pl.'s Opp'n at 8 – it follows that he fails to address one of the reasons for the approach – the fact that Bonneville may never place its net worth at issue. *See D'Onofrio*, 247 F.R.D. at 53 (observing that "a defendant may never put its financial condition at issue, or it may not do so until the Court concludes, as a matter of law, that plaintiff has made a sufficient showing to permit the jury to consider such damages"); *Hutchinson v. Stuckey*, 952 F.2d 1418, 1423 n.4 (D.C. Cir. 1992).[4] Finally, it should not surprise the Court that Mr. Donohoe has also failed to address – and therefore concedes the propriety of – Bonneville's offer to provide a net worth statement to the Court under seal and *ex parte* at the appropriate time, should that time ever occur.

### C. Mr. Donohoe Should Not Be Allowed To Make Any More Document Requests.

#### 1. The Thirty-Request Limit Is Binding.

Mr. Donohoe's only response to the parties' stipulation is to repeat the makeweight assertion that the stipulation was not binding. Pl.'s Opp'n at 9-10. That is not true. Pl.'s Ex. 12 at 9; *see also* LCvR 26.2(b); Fed. R. Civ. P. 29; *Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D. Tex. 2005) (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order). In any event, he has provided no substantive basis for his purported need to propound a total of *seventy-four* (thirty-two initial requests, seventeen "supplemental" requests, and twenty-five requests through the back door of Fed. R. Civ. P. 30(b)(6)) unilateral document requests.[5] He certainly has made no effort at compromise, no

---

[4] Mr. Donohoe's repeated contention that this approach is only relevant to evidence submitted at trial, and not to discovery, is, as Bonneville observed previously, a red herring. *D'Onofrio*, 247 F.R.D. at 52-53 (denying a motion to compel discovery of financial net worth information).

[5] Mr. Donohoe also propounded a set of nine improper documents requests in conjunction with the individual deposition of Joel Oxley. These demands were *entirely* duplicative of prior

7

effort to narrow his requests, nor any effort to recognize that many of these surplus requests were fully responded to by prior document productions and discovery responses. *See, e.g.*, Pl.'s Ex. 5 (Def.'s Responses to Request Nos. 6, 8, 9, 10, 15 and 16).

Moreover, Mr. Donohoe ignores Bonneville's numerous other objections to these requests, opting instead to make the strange contention – in a footnote – that the Court's response to the motion to compel will magically determine their validity, notwithstanding his failure to raise argument regarding most of these objections in any of his filings. *See* Fed. R. Civ. P. 34(b) (2007) (allowing a party to "move for an order under Rule 37(a) with respect to *any objection to* or other failure to respond to the request") (emphasis added); Fed. R. Civ. P. 34 (2008) (rule revised for stylistic purposes only); *see also* Pl.'s Mot. to Compel Ex. 5 (Bonneville responses and objections to supplemental discovery requests, objecting, *inter alia*, on grounds of overbreadth, duplication, irrelevance, excessive geographic scope, nondiscoverability of financial information). Indeed, Mr. Donohoe's various demands in his motion to compel for other information (*e.g.*, information regarding national Bonneville businesses, financial information, *etc.*) which he specifically sought in his supplemental requests, belie any notion that he should be entitled, separately, to the entirety of documents covered by those requests.[6] For all these reasons, any arguments he theoretically may have against Bonneville's numerous *substantive* objections, except for those expressly raised in his motion (all of which arguments are without basis), have been waived and are not before the Court.

---

requests, *see* Def.'s Mot. for Protect. Order Ex. B, and after having this fact pointed out to him by counsel, he has now abandoned these requests.

[6] In point of fact, Mr. Donohoe only requested "leave from this court to *request* the supplemental documents" – and not for the Court to compel their discovery. Pl.'s Mot. to Compel at 15 (emphasis added). Accordingly, the only relief he has sought is for the opportunity to proffer the requests and not for any court-ordered obligation on Bonneville's part to produce any specific documents.

### 2. Donohoe May Not Evade Discovery Limits Via His Rule 30(b)(6) Notice.

Finally, Mr. Donohoe's effort to use his Rule 30(b)(6) notice as a functional *subpoena duces tecum* as a back-door route for exceeding the thirty requests to which he stipulated has now been relegated to a single sentence parroting, again without any support, his prior allegation of "undue prejudice and irreparable harm" if he cannot be permitted to use this novel mechanism. Pl.'s Opp'n at 10; *cf.* Pl.'s Mot. to Compel at 15. As is his wont, Mr. Donohoe opts not to address, in any way, numerous problems with this request. He fails to address his role in selecting a (perfectly sensible) thirty-request limit in this straightforward case. He ignores the fact that requests for documents from party-opponents are to be propounded via Rule 34, and not via the circuitous route of Rule 30(b)(6) – and the fact that he never made such a request (though he does concede this point by implication by seeking leave of the Court to do so). Fed. R. Civ. P. 30(b)(2); *see also* Pl.'s Ex. 10 (deposition notice citing the now-abrogated Rule 30(b)(5) but failing to comply with Fed. R. Civ. P. 34, as required). And, predictably, Mr. Donohoe fails to address Bonneville's ample showing that his requests are duplicative, overbroad and excessively burdensome. *See generally* Def.'s Mot. at 15-16 (summarizing duplicative nature of plaintiff's requests);[7] *see also* Def.'s Mot. at 13-14; Def.'s Exs. A, B (notice of Joel Oxley deposition requesting additional documents, *all* of which had been previously produced). Even if he had a procedural argument for an entitlement to yet more document requests – let alone the seventy-four total requests he continues to seek (plus his nine duplicative and now-abandoned Oxley

---

[7] As set forth in Bonneville's motion for a protective order, those requests to which Bonneville has not already responded by producing documents include numerous requests which are improper because, *inter alia*, they exceed the geographic scope of this case, seek financial information, and/or simply do not exist. Def.'s Mot. at 4-12. Moreover, although Mr. Donohoe fails to mention this fact, Bonneville voluntarily provided documents responsive to other requests in the 30(b)(6) notice, including request numbers 3, 5, 6, 7, 23 and 24 (BIC 007679 to 007743). Any disputes over these requests are moot.

requests) – he has provided no *substantive* basis justifying allowance of the "supplemental" discovery he seeks to impose on Bonneville. His silence on this point – like so many others – speaks volumes.

## II.   CONCLUSION

For all of these reasons, Bonneville should be shielded from further harassment by the entry of a protective order barring: (1) any document requests beyond the thirty to which the parties stipulated (and considering the numerous additional documents Bonneville has produced in response to requests in excess of that limit); and (2) any inquiry, by document request or in deposition questioning of Bonneville employees, regarding (a) Bonneville's financial information and/or net worth, or (b) Bonneville operations and employment practice outside of Washington, D.C.

Respectfully submitted this 30th day of May, 2008,

DAVIS WRIGHT TREMAINE LLP

/s/  Constance M. Pendleton
Richard L. Cys (D.C. Bar No. 087536)
Constance M. Pendleton (D.C. Bar No. 456919)
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006-3402
(202) 973-4200
(202) 973-4499 facsimile
richardcys@dwt.com
conniependleton@dwt.com

Counsel for Defendant Bonneville International Corporation

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of May, 2008, a true and correct copy of the foregoing reply in support of Bonneville's motion for a protective order was served by first class mail, postage prepaid, ECF, and electronic mail upon:

>Thomas L. McCally, Esq.
>Carr Maloney P.C.
>1615 L Street, NW
>Suite 500
>Washington, D.C. 20036

>/s/ Constance M. Pendleton
>Constance M. Pendleton