IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| LEO DONOHOE, | : |
|     Plaintiff, | : |
| v. | :  Civil Action No.: 07-949 (RWR) |
| BONNEVILLE INT'L CORP., | : |
|     Defendant. | : |

### PLAINTIFF'S RENEWED MOTION FOR LEAVE TO INCREASE THE NUMBER OF DEPOSITIONS

Plaintiff, Leo Donohoe, by and through counsel, files this renewed motion respectfully requesting that the number of depositions permitted under the current Scheduling Order be increased from the current limit of seven (7) to a new limit of twenty-five (25). In support of its request, the Plaintiff respectfully refers the Court to the attached Memorandum of Points and Authorities. Furthermore, Plaintiff also respectfully refers this Court to Plaintiff's Memorandum of Points and Authorities in Support of the Plaintiff's Motion to Increase the Number of Depositions filed on March 12, 2008, and the Reply filed on April 3, 2008, incorporated by reference herein.

    Respectfully submitted,

    CARR MALONEY, P.C.

By _____
    Thomas L. McCally, Esq., Bar No. 391937
    1615 L Street, NW, Suite 500
    Washington, DC  20036
    (202) 310-5500/(202) 310-5555 (fax)
    tlm@carrmaloney.com
    Attorney for Plaintiff Leo Donohoe

**CERTIFICATE OF GOOD FAITH EFFORTS TO RESOLVE DISPUTE**

I HEREBY CERTIFY that on the 13th day of June, 2008, the office for Plaintiff's counsel had a telephone call with Defendant's counsel, Constance Pendleton, in an effort to obtain the Defendant's consent to the relief sought herein. Defendant does not consent to the relief sought herein.

_____
Thomas L. McCally

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of June, 2008, a copy of the foregoing was sent via the Court's electronic filing system and by first class U.S. mail, to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1919 Pennsylvania Avenue, NW, Suite 200 Washington, DC 20006, Attorney for Defendant.

_____
Thomas L. McCally

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
PLAINTIFF'S RENEWED MOTION TO INCREASE THE NUMBER OF DEPOSITIONS**

The Plaintiff filed this age discrimination action against his former employer, Bonneville International Corporation (Bonneville), seeking to recover damages for the wrongful and illegal employment practices and decisions that were imposed upon the Plaintiff. In this matter, Plaintiff challenges multiple employment decisions, including the manner in which Plaintiff's supervisor treated Plaintiff and older workers in general, the termination of Plaintiff's employment, the Plaintiff's improper inclusion in a Reduction in Force, and the decision not to rehire the Plaintiff for an allegedly newly created position and to instead hire a much younger, much less qualified individual. Each employment practice or decision involves different issues and different witnesses.

As of the date of the filing of the original Motion, Plaintiff had yet to have the opportunity to conduct any depositions in this matter. Plaintiff filed the Motion at that juncture in an attempt to avoid unnecessarily delaying the discovery process, and in an attempt to resolve the issue expeditiously so that all discovery could be completed within the deadlines contained in the scheduling Order. At that time it was abundantly clear that seven depositions would be woefully insufficient to enable Plaintiff to adequately conduct discovery and prepare for the trial of this matter.

Defendant opposed the Motion primarily on the grounds that Plaintiff should be required to exhaust the required number of depositions prior to the filing of the Motion. The Motion was denied on that basis. Plaintiff has objected to that ruling, and Plaintiff's objections are presently before the Court.

At this time, Plaintiff has completed or has scheduled all of the seven depositions that are allowed under the present scheduling Order. The relevance of the depositions that have been taken is described in detail in the Objections, and all arguments contained therein (as well as in the Plaintiff's Reply) are incorporated by reference. As is set forth in the Objections and the Plaintiff's Reply, information that was adduced during the course of the depositions confirms that additional depositions are necessary in order to allow Plaintiff the opportunity to fully investigate and prepare his case in this matter.

Having now scheduled and/or taken the number of depositions that are allowed, Plaintiff has confirmed (and established in his Objections and Reply) that additional depositions are necessary. Plaintiff again comes before this Court to present its Renewed Motion for Leave to Increase the Number of Depositions based on recently obtained information that was not previously available and therefore not included in Plaintiff's Motion for Leave. This new information bears significantly on the claims and defenses being presented in this lawsuit and deserves consideration by this Court. In addition to the information contained in Plaintiff's Objection and Reply, Plaintiff relies on the June 4, 2008 deposition testimony of one of Defendant's executives, Jody Lish. At that deposition, Plaintiff first learned about Cecil, a former employee of Defendant's company, and a conversation between Plaintiff's direct supervisor (Matt Mills) and a management level employee of Defendant's company (Joel Oxley) regarding a plan to eliminate all Bonneville employees over the age of forty. Given that Plaintiff, who was over forty at the time of his termination, claims that the decisions to

terminate him from employment and the failure to rehire him were motivated by age discrimination., the relevance of this testimony and the need to further investigate the information is crystal clear.

As a result, Plaintiff renews it request for this Court to grant leave to take more than the seven depositions that are permitted under the current Scheduling Order of this Court. In support of his request, Plaintiff incorporates the arguments and exhibits presented in Plaintiff's Memorandum of Points and Authorities in Support of the Plaintiff's Motion to Increase the Number of Depositions filed on March 12, 2008, and the Reply filed on April 3, 2008. As for the additional and newly obtained evidence that supports Plaintiff's Renewed Motion for Leave, Plaintiff submits the following grounds.

## I.     Procedural Background

On October 26, 2007, this Honorable Court entered a Scheduling Order under which each party was limited to taking a maximum of seven (7) depositions. Shortly thereafter, and in accordance with the Scheduling Order of the Court, the parties each filed their Initial Disclosures in which a combined number of thirty-nine (39) witnesses were identified. Bonneville itself identified sixteen (16) witnesses, not including the experts. Apart from these named witnesses, several other witnesses have also been identified during the course of discovery.

On March 12, 2008, Plaintiff filed a Motion for Leave to Increase the Number of Depositions ("Plaintiff's Motion for Leave") from the limit of seven placed by the October 2007 Scheduling Order to a new limit of twenty five. In that Motion, incorporated by reference herein, Plaintiff demonstrates that the complexity of the issues, the number of employment decisions involved, the number of witnesses that have been identified as having participated in or as having relevant information regarding those decisions, render it impossible to effectively conduct and

complete discovery within the current confines of the Scheduling Order, Defendant's unwillingness to allow Plaintiff to obtain information from fact witnesses without the necessity of deposition, justifies a modification of the Scheduling Order so as to allow additional depositions. On March 26, 2008, Defendant filed its Opposition. On April 3, 2008, Plaintiff issued its Reply, incorporated by reference herein.

On April 23, 2008, Magistrate Judge Deborah Robinson entered an Order denying Plaintiff's Motion for Leave to take more than the seven depositions that are permitted under the current Scheduling Order of this Court. The Magistrate Judge's Order does not set forth any specific grounds for the denial, other than to refer to the arguments raised by Defendant. Accordingly, on May 2, 2008, Plaintiff filed its Objection to the April 23, 2008 Order pursuant to Local Rule 72.2.[1]

Plaintiff now comes before the Court on its Renewed Motion and offers this Court new information that was not previously submitted because it was unavailable to Plaintiff at the time he filed the February 2008 Motion for Leave or at the time of raising the March 2008 Objections. These new grounds justify Plaintiff's request for this Court to consider Plaintiff's Renewed Motion for Leave to Increase the Number of Depositions.

## II.   Argument

As will be discussed in this renewed motion, the witnesses identified by the parties possess crucial information regarding Defendant's discriminatory motivation for firing him and their testimony will have a significant impact regarding the claims and defenses at issue in this litigation. Plaintiff's need to obtain this vital information, and the impossibility of obtaining such information

---

[1] Plaintiff has raised these same issues in Plaintiff's Objections to Magistrate Judge Deborah A. Robinson's Order of 4/23/08 Denying Plaintiff's Motion for Leave to Take Additional Depositions filed with this Court on June 4, 2008.

by any other means, justifies his request for this Court to increase the number of depositions from the current limit of seven to a new limit of twenty five.

On June 4, 2008, Plaintiff's counsel took the deposition of Ms. Jody Lish. At that deposition, Plaintiff's counsel asked Ms. Lish if she was aware of any concerns from other employees regarding Defendant's treatment of older workers at the D.C. Radio Group. In response, Ms. Lish spoke of a conversation she had with Ms. Jean Fowler, a current employee of Defendant, regarding a conversation between Mr. Mills and Mr. Oxley. The following exchange taken from her deposition recalls this event:

> Q. Has (Ms. Fowler) ever expressed to you a belief that accounts were being removed from her and given to the younger, newer workers in an effort to force her out?
> A. She has.
> Q. Have you described all of those discussions for me?
> A. I have.
> Q. Did Ms. Fowler ever tell you about something she had overheard regarding Mr. Mills and intentions to get rid of employees, the older workers or employees over forty or words to that effect?
> A. She did.
> Q. What did she tell you?
> A. She told me that there was a former employee who had told her that she had -- that he had overheard a conversation between Mr. Mills and Mr. Oxley about eliminating those over forty, and that was the gist of that conversation.
> Q. When did she tell you that?
> A. Several years ago. I don't recall. Before the RIF.
> Q. It was before the RIF?
> A. It was before the RIF, but I can't tell you the year.
> Q. Who was the employee, the former employee who told her that?
> A. He was a guy in the IT department.
> Q. What was his name?
> A. Cecil.
> Q. That's his first name?
> A. That's his first name. I have no idea what his last name is.

June 4, 2008 Deposition of Jody Lish at pp. 77:20 to 79:13, attached hereto as Exhibit 1. This newly obtained testimony is a good example of the type of comments indicative of age discrimination that were made by senior level employees at or about the time that the decision was

made to include Mr. Donohoe in the Reduction in Force. Moreover, as the clear language of the testimony reveals, there are other potential witnesses known by Defendant who possess relevant information regarding the decision to hire a much younger, less experienced individual instead of Mr. Donohoe after the implementation of the Reduction in Force. Unless this Court increases the current limit of seven depositions to twenty five depositions, or at a minimum allows Plaintiff leave to take the deposition of Cecil, Plaintiff will be unable to effectively conduct discovery and prepare his case for trial. Anything less would severely impede the Plaintiff's ability to prosecute this case and would unduly prejudice the Plaintiff in this matter. By contrast, the Defendant will not be prejudiced by the granting of this motion, and the granting of this Motion will not delay any further proceedings in this matter.

Plaintiff's request is further justified by the fact that this information could not have been obtained prior to the noticing of the deposition of Ms. Lish. Information regarding Cecil was never produced during discovery or revealed in Defendant's Initial Disclosures to this Court. This also comports with Defendant's conduct which has prevented Plaintiff from informally gathering information from many of the critical fact witnesses that are still employed by Defendant. Although many of the witnesses indicated a willingness to provide information to the Plaintiff, Defendant has instructed Plaintiff's counsel to refrain from further contact with any potential fact witnesses. It is apparent that Defendant has also instructed its employees not to cooperate informally with Plaintiff. Accordingly, Plaintiff has no choice but to seek leave of this Court to depose these critical fact witnesses.

### III. Conclusion

Local Rule 16.4 of this Court permits the court to modify the scheduling order at any time upon a showing of good cause. In this matter, where the parties have identified over thirty-nine

(39) lay witnesses from multiple corporate entities in addition to expert witnesses, good cause has been shown to increase the number of depositions allowed from seven to twenty-five. Furthermore, the newly obtained evidence from Ms. Lish's deposition serves to underscore Plaintiff's need to take additional deposition in this litigation.

      WHEREFORE, Plaintiff Leo Donohoe respectfully requests the Court modify the provisions of the October 26, 2007, Scheduling Order by increasing the number of depositions that Plaintiff is allowed to take from seven (7) to twenty-five (25).

                              Respectfully submitted,

                              CARR MALONEY, P.C.

By: _____
    Thomas L. McCally, Esquire
    1615 L Street, NW, Suite 500
    Washington, D.C. 20036
    (202) 310-5500/(202) 310-5555 (Fax)
    tlm@carrmaloney.com
    Attorney for Plaintiff Leo Donohoe

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| LEO DONOHOE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  Civil Action No.: 07-949 (RWR) |
| | : |
| BONNEVILLE INT'L CORP., | : |
| | : |
| Defendant. | : |

### **ORDER**

UPON CONSIDERATION of the Plaintiff's Renewed Motion for Leave to Increase the Number of Depositions that may be taken, and Opposition thereto, and it appearing to the Court that the requested increase will not result in any delay of the other Court imposed deadlines, it is this ___ day of _____ 2008;

ORDERED that said Motion be, and the same is hereby GRANTED and;

ORDERED that the number of depositions that the Plaintiff may take is hereby increased from seven (7) to twenty-five (25).

_____
Judge

cc:   Thomas L. McCally, Esq.
      1615 L Street, NW, Suite 500
      Washington, DC 20036
      Attorney for Plaintiff

      Richard Cys, Esq.
      Davis, Wright, Tremaine, LLP,
      1919 Pennsylvania Avenue, NW, Suite 200
      Washington, DC  20006
      Attorney for Defendant

# EXHIBIT 1

Page 1

1              In the U.S. District Court
            For the District of Columbia
2

    ------------------------------x
3                                  :
    :Leo Donohoe
4                                  :
                    v.             : NO. 07-949
5                                  :
    :Bonneville International Corp.
6                                  :
    ------------------------------x
7

                June 4, 2008
8

THE VIDEO DEPOSITION OF:
9

                Jody Lisch,
10

a witness, called by counsel pursuant to notice,
11  commencing at 10:00 a.m. which was taken at Carr
    Maloney, 1615 L Street, NW, Washington, DC
12
13
14
15
16
17
18
19
20
21

1   Q. Did she have any response?

2   A. Not really.

3   Q. Why would you tell her to put the blinders
4   on and just keep going rather than complaining more?

5   A. Because I think sometimes you complain so
6   much that you're perceived as nothing but a
7   complainer and I know she likes doing what she does.
8   I know she likes working for WTOP. I know she's
9   good at what she does. And I told her just put your
10  head down, do your job, and, you know, just try to
11  calm down.

12  Q. Do you believe her complaints were fair
13  and valid?

14  A. To the extent that I knew of the
15  circumstances, yes.

16  Q. Do you recall any other discussions with
17  Ms. Fowler where she raised these or similar
18  complaints?

19  A. Not specifically.

20  Q. Has she ever expressed to you a belief
21  that accounts were being removed from her and given

```
 1   to the younger, newer workers in an effort to force
 2   her out?
 3        A.    She has.
 4        Q.    Have you described all of those
 5   discussions for me?
 6        A.    I have.
 7        Q.    Did Ms. Fowler ever tell you about
 8   something she had overheard regarding Mr. Mills and
 9   intentions to get rid of employees, the older
10   workers or employees over forty or words to that
11   effect?
12        A.    She did.
13              MS. PENDLETON:    Objection.
14   BY MR McCALLY:
15        Q.    What did she tell you?
16        A.    She told me that there was a former
17   employee who had told her that she had -- that he
18   had overheard a conversation between Mr. Mills and
19   Mr. Oxley about eliminating those over forty, and
20   that was the gist of that conversation.
21        Q.    When did she tell you that?
```

1   A.   Several years ago.  I don't recall.
2   Before the RIF.
3   Q.   It was before the RIF?
4   A.   It was before the RIF, but I can't tell
5   you the year.
6   Q.   Who was the employee, the former employee
7   who told her that?
8   A.   He was a guy in the IT department.
9   Q.   What was his name?
10  A.   Cecil.
11  Q.   That's his first name?
12  A.   That's his first name.  I have no idea
13  what his last name is.
14  Q.   What's he look like?
15  A.   He's an African-American guy.  It's been
16  many years.  I don't even know if I would know him
17  walking down the hall.
18  Q.   Approximate age?
19  A.   Thirty something, mid-thirties perhaps.
20  Q.   And how did he overhear this conversation?
21  A.   I don't know.

Page 80

1     Q.   Do you know when he left Bonneville?
2     A.   He left shortly after the situation with
3  an overheard conversation came about.
4     Q.   So you're saying shortly after Ms. Fowler
5  told you about this?
6     A.   Yes.
7     Q.   What he had told her he left Bonneville?
8     A.   Yes, he was terminated I believe.
9     Q.   He was?  Who terminated him?
10    A.   I don't know.
11    Q.   Do you know why he was terminated?
12    A.   I do not.
13    Q.   Do you know if he told anybody else what
14  he overheard between Mr. Mills and Mr. Oxley?
15    A.   I do not know that.
16    Q.   So his first name is Cecil and he worked
17  in the IT department at WTOP?
18    A.   He did.
19    Q.   What were his responsibilities?
20    A.   To make sure everyone's computers were up
21  to date, everybody needed what they needed on a