IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**PLAINTIFF'S RULE 72.2 OBJECTIONS TO
MAGISTRATE JUDGE DEBORAH A. ROBINSON'S ORDER OF JULY 29, 2008,
DENYING PLAINTIFF'S MOTION TO COMPEL AND
GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

"**Broad and liberal discovery is one of the foundation-stones of modern Federal procedure. Nothing should be done and no ruling should be made that would detract, or in any way restrict, the salutary purpose of the Rules. Discovery should not be hampered or circumscribed by technical rulings....**" *U. S. v. Maryland and Virginia Milk Producers Ass'n*, 22 F.R.D. 300 D.D.C., 1958; *see also Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In this vein, courts must "construe the scope of discovery liberally to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial," *Moore v. Hartman,* 241 F.R.D. 59 DDC 2007 citing *Hickman*, 329 U.S. 495 at 501.

In this case, Plaintiff Leo Donohoe ("Mr. Donohoe") seeks to recover damages he sustained as the direct result of Bonneville's wrongful termination of his employment and refusal to rehire him on the basis of his age. Discovery to date has provided Mr. Donohoe with some

compelling evidence in support of his claims[1]. Nevertheless, Mr. Donohoe has only been allowed to explore narrow issues and facts. His efforts to conduct permissible discovery to gain the fullest possible knowledge of issues and facts before trial have been thwarted by technical and erroneous rulings.

On May 2, 2008, Mr. Donohoe filed an Objection to Magistrate Judge Deborah A. Robinson's April 23, 2008 Order denying Mr. Donohoe leave to take additional depositions. Magistrate Judge Robinson denied Mr. Donohoe's request for leave to take additional depositions even though: (a) this Court initially restricted the number of depositions to be taken to seven (7) - less than the minimum amount provided for under the Federal Rules of Civil Procedure; (b) at the initial scheduling conference, Mr. Donohoe specifically requested to be

---

[1] For example, Mr. O'Brien, a former management level employee who is no longer affiliated with Bonneville, testified that Mr. Mills' daily vernacular included discriminatory remarks about Mr. Donohoe based on his age. Mr. O'Brien testified in detail about Mr. Mill's routine comments, such as "you can't teach an old dog new tricks." Mr. O'Brien, who was Bonneville's management level employee at the time, has personal knowledge of complaints from older, veteran employees regarding the discriminatory manner in which Mr. Mills treated them. According to Mr. O'Brien, Bonneville's long-time employees (who had been with Bonneville for more than ten years) reasonably believed they were being forced out of Bonneville based upon their ages. Mr. O'Brien heard such complaints from veteran employees including Jean Fowler, Jody Lish and Leo Donohoe.. Mr. O'Brien also testified that Mr. Donohoe's performance was exemplary and that Mr. Donohoe always made, or exceeded, budget.

Ms. Fears, also a former management level employee at Bonneville with no interest in the outcome of this litigation, stated that many employees worked for Matt Mills complained about him - particularly the veterans. According to Ms. Fears, Bonneville's older workers used to comment that employees had to be a young with long legs for Matt Mills to pay any attention to them. According to Ms. Fears, the mature staff really believed that Mills did not treat them fairly. Ms. Fears also witnessed Matt Mills' discriminatory comments and attitude, such as "you can't teach an old dog new tricks." He made comments about Leo Donohoe doing things the "old" way. According to Ms. Fears, Matt Mills said that Leo Donohoe was "too set in his ways" and that Leo Donohoe had been doing this for "too long." Matt Mills also said that "if Leo can't get it together I am going to get rid of him, and I know people who can get it done."

Ms. Fears also testified that she was shocked that Mr. Donohoe was included in the RIF, as he was "primarily a WTOP guy," and as far as she could tell, he was the only one included in the RIF from WTOP. She further stated that it did not make any sense to include Mr. Donohoe in the group of people who were being let go, that she knew immediately that the younger workers would be rehired. Ms. Fears testified that Bonneville's using the RIF to terminate employees that it would be risky to eliminate, including those in protected statuses, was obvious. After eliminating workers through the RIF, Bonneville then rehired a much younger staff, particularly in sales.

Ms. Lish, a current Bonneville employee, testimony confirms that Bonneville, through management level employees such as Mr. Mills, treat older workers differently than younger workers, and that Bonneville was attempting to eliminate older workers such as Mr. Donohoe through the implementation of the RIF.

Mr. Spacciapolli testified that he was clearly informed several months in advance that there would be a RIF, and that Bonneville would be hiring someone to fill the National Sales Director/Sports Sales position. Mr. Donohoe was never provided the same information as his younger counterpart.

permitted to take at least the minimum of ten (10) depositions permitted under the Federal Rules of Civil Procedure; (c) this Court informed the parties at the initial scheduling conference that if more than seven depositions were needed, either party could seek leave to take additional depositions; (d) initial disclosures identified thirty-nine (39) non-expert witnesses; and (e) Mr. Donohoe demonstrated good cause for leave to take the additional depositions based upon documents, testimony and admissions provided by Defendant throughout discovery.

On July 31, 2008, Mr. Donohoe was unduly prejudiced by another of Magistrate Judge Robinson's orders regarding discovery in this case. This time, Magistrate Judge Robinson issued an Order summarily denying Plaintiff's Motion to Compel [Dkt#19] and Granting Defendant Bonneville International Corporation's ("Bonneville") Motion for a Protective Order [Dkt#21]. In Mr. Donohoe's motion to compel, Mr. Donohoe sought, among other things, (a) Bonneville's file containing harassment claims made against Mr. Donohoe's direct supervisor Matt Mills; (b) all documents requested in Donohoe's Supplemental Requests for Production of Documents and 30(b)(6) Notice of Deposition; and (c) all documents and information (including a 30(b)(6) deposition) relating to Bonneville's similar RIF in San Francisco, California, including documents properly requested of Bonneville's corporate representative pursuant to Donohoe's Notice of 30(b)(6) Deposition.

All of the information requested by Mr. Donohoe is relevant and reasonably calculated to the discovery of admissible evidence. The Court's refusal to allow him reasonable access to this information unfairly and prejudicially prevents him from properly prosecuting his claims. Moreover, the Court's granting Bonneville's Protective Order bestows upon Bonneville unfettered control over discovery and, therefore, the evidence in this case. This allows

Bonneville, and not the Rules of this Court, to determine the boundaries of permissible discovery. For these reasons, Mr. Donohoe objects to Magistrate Judge Robinson's July 31, 2008 Order summarily denying Plaintiff's Motion to Compel [Dkt#19] and Granting Defendant Bonneville International Corporation's ("Bonneville") Motion for a Protective Order [Dkt#21].

### FACTUAL BACKGROUND

Plaintiff filed this action seeking to recover damages he sustained as the direct result of the Defendant's wrongful termination of, and refusal to rehire, Donohoe on the basis of his age. On January 4, 2006, Bonneville terminated Donohoe's employment after nearly twenty years (20). At the time of his termination, Mr. Donohoe's direct supervisor (and one of the individuals responsible or Mr. Donohoe's termination) was Mr. Matt Mills. According to Mr. Mark O'Brien, a former Bonneville Vice President and General Manager (WWZZ) and one of Mills' former supervisors, "you can't teach an old dog new tricks," was part of Mr. Matt Mills' vernacular. *See* Deposition Transcript of Mark O'Brien, Exhibit 13 p. 43:13-46:4; 47:8-12; 49:21-51:3; 91:12-92:6). Mr. O'Brien also testified that Mr. Mills told Mr. Donohoe that Donohoe was old and would never change. *Id*. at p. 47:13-48:17.

At the time of his termination, Mr. Donohoe worked primarily for WTOP in the role of National Sales Director. As part of his job, he also undertook sales of WGMS and WFED. National Sales for WTOP, however, constituted ninety percent (90%) of Mr. Donohoe's job. *Id*. at p. 55:16-56:20.

In an obvious effort to eliminate Mr. Donohoe as National Sales Director and replace him with a much younger and less qualified worker, Michael Spacciapolli, Bonneville contrived a "reduction in force" of the WGMS station. Mr. Donohoe was the only WTOP employee permanently terminated as a result of the alleged RIF. In fact, by Bonneville's own statements,

all individuals who worked primarily for WTOP were specifically exempted from the RIF – that is except Mr. Donohoe.

As a result of the alleged RIF in January 4, 2006, ten (10) WGMS sales employees were terminated. Of the ten (10) WGMS employees RIF'd, five (5) were over-40 and five (5) were under-40. Only twelve (12) days after the alleged RIF, Bonneville rehired five (5) sales employees to work for WGMS. All but one of the individuals rehired were under-40; the only under-40 employee not rehired, Ms. Tiffani Gates, was not rehired only because she did not reapply. Therefore, all of the under-40 employees who reapplied for employment following the January 4, 2008, RIF were rehired.

The over-40 employees, on the other hand, did not fare as well as the under-40 employees following the January 2006 RIF. Although all of the under-40 employees who reapplied for employment were rehired, only one such employee over-40 was rehired. As for that only over-40 employee rehired, Ms. Patricia Cochran, she was not even rehired into the position from which she was RIF'd. Instead, she was demoted from the Sales Manager position to the non-management level position of account executive. All other over-40 employees applied, but were denied rehire.

With regard to Mr. Donohoe's position, which Bonneville claims was a different position (although the position still required national sales of WTOP, WGMS, WFED), Bonneville replaced Mr. Donohoe with a much younger individual, Michael Spacciapolli, who had never sold any of these stations on a national level. In fact, Mr. Spacciapolli had never even sold news radio, which according to Mr. O'Brien is a much different sell than music. *See* Exhibit 13 at p. 13:8-14:12. Mr. Spacciapolli was removed from that position less than six (6) months later.

Clearly, the evidence thus far unequivocally demonstrates that Mr. Donohoe's termination, and Bonneville's refusal to rehire him, were improperly motivated by age discrimination. Mr. Donohoe strongly believes, however, that the limited information provided by Bonneville represents only the surface of the evidence of discriminatory animus and pretext, and that Bonneville is stonewalling the discovery process to avoid providing Mr. Donohoe with even more incriminating evidence.

## PROCEDURAL BACKGROUND

On or about April 25, 2008, Mr. Donohoe filed a Motion to Compel Discovery [Dkt#19] seeking an order compelling Bonneville to produce properly requested documents, testimony and information that Bonneville had refused to provide, and of which it has exclusive possession. Absent an order compelling discovery, Donohoe has no other means by which to retrieve this necessary information and will be prejudiced in his ability to prove his case to a jury. Specifically, Mr. Donohoe sought an order compelling Bonneville to provide, among other things: (a) Bonneville's file containing harassment claims made against Mr. Donohoe's direct supervisor Matt Mills; (b) all documents requested in Donohoe's Supplemental Requests for Production of Documents and pursuant to its 30(b)(6) Notice of Deposition; and (c) all documents and information (including a 30(b)(6) deposition) relating to Bonneville's similar RIF in San Francisco, California, including documents properly requested of Bonneville's corporate representative pursuant to Donohoe's Notice of 30(b)(6) Deposition.[2]

---

[2] Mr. Donohoe raises objections to Magistrate Judge Robinson's rulings on all issues argued in Donohoe's Motion except for Bonneville's financial materials (Donohoe's Suppl. Req. No. 5) and Bonneville's program logs (Donohoe's Suppl. Req. No. 7).

On July 31, 2008, Magistrate Judge Robinson issued an order reflecting her ruling of July 29, 2008, summarily denying Mr. Donohoe's Motion to Compel and granting Bonneville's Motion for a Protective Order.

**RULE 72.2 OBJECTIONS TO MAGISTRATE JUDGE ROBINSON'S JULY 31, 2008, ORDER DENYING MR. DONOHOE'S MOTION TO COMPEL AND GRANTING BONNEVILLE'S MOTION FOR PROTECTIVE ORDER**

This Court's July 31, 2008, Order hampers and circumscribes Mr. Donohoe's ability to engage in proper discovery to obtain the fullest possible knowledge of the issues and facts before trial. It denies Mr. Donohoe the opportunity to obtain documents, information and testimony reasonably calculated to lead to the discovery of admissible evidence. Mr. Donohoe will be irreparably harmed and prejudiced by this Court's ruling, which has detracted and restricted the very purpose of this Court's discovery rules.

### A.   Donohoe's Supplemental Request for Documents and Request for Documents pursuant to 30(b)(6) Notice of Deposition

As explained in Mr. Donohoe's motion to compel, Bonneville refuses to provide responses to any more than thirty (30) requests for production of documents including all of Mr. Donohoe's March 21, 2008, supplemental document requests, all documents requested pursuant to Donohoe's Rule 30(b)(6) notice of deposition and others. In refusing to provide any responsive documents, Bonneville argues that the parties "stipulated" in their Rule 16.3 Statement that thirty (30) requests per side would be sufficient. Without explanation, the Court accepted Bonneville's argument, even though (as Mr. Donohoe effectively explained in oral argument) Bonneville misrepresented the record.

First, the parties did not make any such "stipulation." Instead, in their Rule 16.3 Statement, the parties indicated that, at the time they prepared the statement they "anticipated"

that thirty (30) requests per side would suffice. An "anticipation" is simply not equivalent to a "stipulation."

More importantly, on October 26, 2007, this Court issued a Scheduling Order in this matter. *See* Exhibit 2. While the Court limited each side to seven (7) depositions and thirty (30) interrogatories, **it did not set a limit on the number of Requests for Production of Documents**. Neither this Court's order nor the Rules of this Court restrict Mr. Donohoe's ability to obtain the documentary evidence relevant to this case. Bonneville should not be allowed to unilaterally impose such restriction; instead, Bonneville should be compelled to provide all responsive documents. The Court's July 31, 2008 Order should be reversed.[3]

 B. **Documents and information relating to Bonneville's similar "Reduction in Force" conducted in San Francisco, California.**

As explained to Judge Robinson in Mr. Donohoe's Motion to Compel and in oral argument on July 29, 2008, in close temporal proximity to the alleged reduction in force that caused many older workers to suffer lost employment by Bonneville in the District of Columbia, Bonneville implemented a similar RIF in San Francisco. Mr. Donohoe has reason to believe that the result of the San Francisco RIF was the same as the alleged RIF in DC – intentional termination of the older workers. In fact, Mr. Donohoe has a statement from a former Bonneville employee whose employment was terminated during the San Francisco RIF who asserts that her termination was the result of age-based discrimination.

As also explained to Judge Robinson, the information surrounding the ages of individuals whose employment was terminated in San Francisco is directly relevant to Mr. Donohoe's claims arising out of the District of Columbia. In support of his claim for punitive damages, as well as liability, Mr. Donohoe has the right to prove that the wrongful acts by the DC management was

---

[3] Alternatively, Donohoe sought leave from the court to request the supplemental documents and documents pursuant to the 30(b)(6) Notice of Deposition to avoid undue prejudice and irreparable harm to him resulting from the arbitrary constraints placed on his ability to seek evidence and the truth as to why Bonneville terminated his employment in 2006. The court failed to address this request in its summary denial of Mr. Donohoe's motion. Mr. Donohoe objects to this denial, as well.

authorized and ratified by the corporation, not merely perpetrated by certain employees. *Lake Shore & Michigan Southern Railway v. Prentice,* 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1883); *Franklin Investment Co., Inc. v. Smith, D.C.App.*, 383 A.2d 355, 359 (1978); *Wardman-Justice Motors, Inc. v. Petrie*, 59 App.D.C. 262, 265, 39 F.2d 512, 515 (1930). One way to prove that the corporation was involved is to show that an executive officer of high rank participated in the misconduct or that Bonneville maintained a pattern and practice of terminating older workers and maintaining only the younger employees. *Wardman-Justice Motors, Inc. v. Petrie*, supra. .

In open court on July 29, 2008, the Court announced its ruling that Mr. Donohoe's motion to compel documents, information and testimony regarding Bonneville's San Francisco RIF was denied. *See* Hearing Transcript at p. 45, 50. Upon further argument, the Court then conceded that further briefing would be necessary to determine whether Bonneville's corporate level employees were involved in the D.C. and San Francisco RIFs.[4] The court instructed the parties to provide evidence of Bonneville's corporate headquarters involvement in a joint supplemental brief by August 8, 2008.[5]

The parties filed a joint supplemental brief on August 8, 2008, that demonstrated without question that corporate headquarters was involved in both RIFs. Based upon the recent United States Supreme Court ruling in *Sprint/United Management Co. v. Mendelsohn*, 522 U.S. ____ (2008). the trial court must now engage in a proper analysis of the probative value of the

---

[4] If the supplemental briefs demonstrate that corporate level employees were directly involved, the Court invited Mr. Donohoe to "seek reconsideration" of the Court's ruling. *Id.* at p. 50. Notwithstanding, the Court's written order does not reflect this invitation to seek reconsideration. As such, Mr. Donohoe has no option but to file this objection.

5 As explained by counsel for Donohoe during oral argument on 7/29/08, the Court's directive to Mr. Donohoe to produce testimony or evidence that Corporate Headquarters was involved in the San Francisco RIF placed Mr. Donohoe in a tenuous position. The Court's directive requires Mr. Donohoe to prove Corporate Headquarters involvement without allowing Mr. Donohoe access to the information or testimony he would need to offer that proof. Notwithstanding, and in spite of Bonneville's refusal to answer any direct questions about the San Francisco RIF, Mr. Donohoe demonstrated in a supplemental brief filed on August 8, 2008, that not only was Corporate Headquarters involved in each RIF, they were directly involved in the decision to terminate Mr. Donohoe's employment.

evidence of the San Francisco RIF pursuant to Federal Rule of Civil Procedures 401 and 403 to determine if the facts surrounding that RIF provides sufficient probative and material evidence to be admissible as to Bonneville's discriminatory animus against Mr. Donohoe. This analysis, the Supreme Court explained, is fact-intensive and context-specific.

This court simply cannot conduct a proper analysis under Federal Rules of Civil Procedures 401 and 403 if it does not have any evidence (obtained through discovery) to analyze. Instead, to conduct the proper analysis the highest Court of this land requires the trial court must allow the parties to gather necessary facts and information. The only way the parties can accomplish this task is through proper discovery.

In this case, through his motion to compel, Leo Donohoe is simply asking permission to conduct reasonable and appropriate discovery to gather necessary facts and information for this court to determine if evidence of discrimination arising out of Bonneville's San Francisco Reduction in Force (RIF) is admissible in this case. Mr. Donohoe seeks responses to its request for production of documents surrounding the San Francisco RIF; documents requested pursuant to its 30(b)(6) Notice of Deposition pertaining to the San Francisco RIF; and, a 30(b)(6) deposition to discuss the San Francisco RIF.

Denial of Mr. Donohoe's motion to compel discovery as to the San Francisco RIF would amount to nothing less than a ruling by this court that evidence of other employees' age-based discrimination by supervisors other than the ones involved in this case is *per se* inadmissible – the exact result the Supreme Court has prohibited and found to be reversible error.

    C.    **Bonneville's file containing harassment claims made against Matt Mills or a verification of a diligent search for the same.**

In the Motion to Compel, and at the July 29, 2008 hearing, Mr. Donohoe asked the court to order Bonneville to produce a file containing harassment claims made against Matt Mills, a

Bonneville manager.[6] (Suppl. Reqs. Nos. 10, 16)  Mr. Donohoe based his request on the fact that Mr. Mark O'Brien, Bonneville's former General Manager, testified that Bonneville maintains a file containing harassment complaints filed by employees against Mills.[7] Notwithstanding the admission of its former General Manager that the file does, in fact, exist, Bonneville conveniently alleges it does not.[8]  In light of Bonneville's insistence that the file does not exist, Mr. Donohoe requested that in the absence of providing the requested file, Bonneville provide a verification of the search conducted to ensure the file no longer exists.  Magistrate Judge Robinson denied, without explanation, each of Mr. Donohoe's requests.

Mr. Donohoe is entitled to ensure that reasonable, good faith efforts were made to locate the file that its former General Manager swore, under oath, exists.  Otherwise, Bonneville (and other litigants in the future) will be able to improperly evade discovery by denying the existence of the evidence requested.  Surely this is the intent of neither this court nor the Rules of Civil Procedure.  Accordingly, Bonneville should be compelled to provide Mr. Donohoe will the file or a verification of all efforts made to locate it.

## CONCLUSION

Magistrate Judge Robinson's July 31, 2008, Order denying Mr. Donohoe's Motion to Compel constitutes an abuse of discretion, is clearly erroneous, and is severely prejudicial to the Mr. Donohoe.  It prohibits Mr. Donohoe from obtaining evidence that is critical to establishing the essential elements of his claim, as well as discriminatory animus and pretext.  Accordingly,

---

[6] *See* Transcript of July 29, 2008 hearing at p.15, attached hereto as Appendix.
[7] *See* Depo. Transcript of O'Brien, Exhibit 1, at p. 31:13-32:20; 39:6-7; 83:8-86:3; 92:7-18.
[8] Notably, in the same correspondence, counsel for Bonneville also asserted that Mr. Mills had no written notes from interviews he conducted for Mr. Donohoe's National Director of Sales position following the January 2006 RIF.  During his deposition, Mr. Mills perpetuated this misrepresentation.  On April 24, 2008, however, Bonneville supplemented its discovery responses to provide the written interview notes that both counsel and Mr. Mills insisted did not exist. *See* Donohoe's Motion at Exhibit 8.

the Magistrate's ruling should be overturned, and the Mr. Donohoe's motion to compel should be granted.

WHEREFORE, Plaintiff Leo Donohoe respectfully requests the Court to reverse the Order of the Magistrate Judge, and compel the discovery requested in Donohoe's Motion to Compel.

>
> Respectfully submitted,
>
> CARR MALONEY, P.C.
>
> By:_____
> Thomas L. McCally, Esquire
> DC Bar No.: 391937
> 1615 L Street, NW, Suite 500
> Washington, DC 20036
> (202) 310-5500/(202) 310-5555 (FAX)
> tlm@carrmaloney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2008, a copy of the foregoing was sent via the Court's electronic filing system to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1919 Pennsylvania Avenue, NW, Suite 200, Washington, DC 20006, Attorney for Defendant.

_____
Thomas L. McCally