IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF LEO DONOHOE'S MOTION FOR LEAVE
TO FILE PLAINTIFF'S SUPPLEMENT TO THE AUGUST 8, 2008
<u>JOINT SUPPLEMENTAL MEMORANDUM</u>**

Plaintiff Leo Donohoe, by counsel, respectfully requests that the Court grant him leave to file Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum, which is being filed concurrently, and further requests that the Court accept Plaintiff's Supplement as timely.

        Respectfully submitted,

        CARR MALONEY P.C.

        By:_____
         Thomas L. McCally, Esq., #391937
         Tina M. Maiolo, Esq., #454987
         1615 L Street, NW, Suite 500
         Washington, DC 20036
         (202) 310-5500/(202) 310-5555
         Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of August, 2008, a copy of the foregoing *Plaintiff Leo Donohoe's Motion for Leave to File Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum* was served electronically to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1500 K Street, NW, Suite 450, Washington, DC  20005, Attorney for Defendant.

_____
Thomas L. McCally

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

## STATEMENT PURSUANT TO LCVR 7(m)

Undersigned counsel for Plaintiff Leo Donohoe represents that counsel for Defendant Bonneville International Corporation was contacted regarding this motion. Counsel for Bonneville refused to consent and opposes Plaintiff's request to file Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum.

Respectfully submitted,

CARR MALONEY P.C.

By:_____

    Thomas L. McCally, Esq., #391937
    Tina M. Miaolo, Esq. #454987
    1615 L Street, NW, Suite 500
    Washington, DC 20036
    (202) 310-5500/(202) 310-5555
    *Attorney for Plaintiff Leo M. Donohoe*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF LEO DONOHOE'S MEMORANDUM
IN SUPPORT OF MOTION FOR LEAVE TO FILE PLAINTIFF'S
SUPPLEMENT TO THE AUGUST 8, 2008
<u>JOINT SUPPLEMENTAL MEMORANDUM</u>**

Plaintiff Leo M. Donohoe ("Mr. Donohoe"), by counsel, respectfully requests that the Court grant him leave, in accordance with Federal Rule of Civil Procedure 7 and Local Civil Rules of this Court LcvR 7, to file Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum, attached hereto as Exhibit A. Mr. Donohoe seeks leave to file his Supplement to the August 8, 2008 Joint Supplemental Memorandum to provide the Court with additional evidence that Bonneville's corporate headquarters had direct involvement in the Washington DC 2006 Reduction in Force. Specifically, the additional information Mr. Donohoe requests the Court to consider includes direct communications between the Washington DC office and the corporate management offices in Salt Lake City regarding the Washington RIF. The matters discussed in the Supplement respond *directly* to this Court's July 29, 2008 inquiry regarding Bonneville's corporate level involvement in the RIF and should be included as part of the Court's review of the matters presented in the Joint Supplemental Memorandum.

On July 29, 2008, following a hearing on Plaintiff Leo Donohoe's Motion to Compel Discovery [#19] and Defendant Bonneville's Motion For A Protective Order [#21], Magistrate Robinson granted Defendant's motion and denied Plaintiff's motion, "except with respect to Plaintiff's request for discovery regarding the role, if any of Defendant's headquarters in the DC RIF." July 31, 2008 Minute Order. The Court ruled that "as to that issue, the parties shall jointly file a supplemental hearing memorandum with the relevant portions of the transcript of the deposition in which counsel inquired about this issue . . . said memorandum shall be filed no later than (August 8, 2008)." *Id*. The parties filed their Joint Supplemental Memorandum on that date and provided the Court with the requested information. Mr. Donohoe now wishes to provide this Court with important supplemental information that is directly relevant to the Court's inquiry.

Under Federal Rule of Civil Procedure 7(b), Mr. Donohoe must obtain leave of court if, without the stipulation of parties, he seeks to amend the August 8, 2008 Joint Supplemental Memorandum. *See* Authors' Commentary on Fed. R. Civ. P. 7(b)("A party may seek leave to amend a motion."). The Commentary provides that leave is "generally granted if the amendment is sought . . . before the court has entertained oral argument, and before a ruling has been issued." *Id.* As of the writing of this Motion, this Court has still not issued a ruling or order regarding the matters put forth in the Joint Supplemental Memorandum.

Mr. Donohoe asserts that leave is necessary and should be granted to allow him to provide crucial information that will shed additional light on the relevance of the materials requested in the Motion to Compel and responds directly to Magistrate Judge Robinson's questions. Specifically, the Plaintiff's Supplement to the August 8, 2008 will provide this Court

with documents and deposition testimony that clearly demonstrate how Bonneville's corporate level management was involved in the Washington, DC RIF.

Neither party will suffer prejudice if this Court grants Mr. Donohoe leave to file Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum. To the contrary, Plaintiff's Supplement will serve to promote judicial economy and the interest of each of the parties. Furthermore, Mr. Donohoe is not precluded from arguing this exact issue at a later date, and therefore, Mr. Donohoe would respectfully request that the Court allow him to file the Plaintiff's Supplement, and have the Court review and consider his arguments and exhibits in the Supplement before it issues a ruling on the August 8, 2008 Joint Supplemental Memorandum.

WHEREFORE, Plaintiff Leo Donohoe respectfully requests that this Court grant leave for him to file Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum.

>Respectfully submitted,
>
>CARR MALONEY P.C.
>
>By:_____
>   Thomas L. McCally, Esq., #391937
>   Tina M. Maiolo, Esq., #454987
>   1615 L Street, NW, Suite 500
>   Washington, DC 20036
>   (202) 310-5500/(202) 310-5555
>   ***Attorney for Plaintiff Leo M. Donohoe***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF LEO DONOHOE'S SUPPLEMENT TO
THE AUGUST 8, 2008 JOINT SUPPLEMENTAL MEMORANDUM**

Plaintiff Leo Donohoe supplements his portion of the August 8, 2008 Joint Supplemental Memorandum, ordered by Magistrate Judge Deborah Robinson on July 29, 2008[1] as follows:

On August 8, 2008, per this Court's request on July 29, 2008, the parties filed a Joint Supplemental Memorandum providing evidence as to whether Bonneville's Corporate management was involved in the Washington DC and San Francisco Reductions in Force. Through that filing, Mr. Donohoe demonstrated that Bonneville's corporate level management was, in fact, intricately involved in those personnel decisions. Mr. Donohoe also presented arguments demonstrating his special need for discovery regarding Bonneville's corporate level management involvement in the San Francisco Reduction in Force.

In further support of Mr. Donohoe's position that Bonneville's corporate level management was involved in the Washington, DC RIF, and his need for discovery regarding the San Francisco Reduction in Force, Mr. Donohoe now provides this Court with an email labeled

---

[1] This Supplement is concurrently being filed with Plaintiff Leo M. Donohoe's Motion for Leave to File Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum.

BIC 010421. Exhibit 1. This document, an email from Joel Oxley (Senior Regional Vice President at Bonneville) to Bob Johnson (Bonneville's Chief Operating Officer) and Bruce Reece (Bonneville's Chief Executive Officer), records the discussion between the Washington DC office and the corporate management offices in Salt Lake City regarding the Washington RIF. The email shows that the officers in Bonneville's Salt Lake City (corporate management offices) were asking for information and scenarios regarding Bonneville's available options in shutting down certain offices, the costs to Bonneville of budgeting for the various severance packages, and concludes with Mr. Oxley asking for directions as to what course they should take with the Washington DC RIF.

There can be no serious argument that this email, from the Senior Regional Vice President at Bonneville, to the two Chief Executive Officers in Salt Lake City, Utah, shows the high level of involvement from Bonneville's corporate management offices. As has been explained in the Joint Supplemental Memorandum, Mr. Oxley testified that he notified his supervisor, Bob Johnson, of the options for the Washington DC RIF, and Mr. Johnson, in turn, involved Mr. Bruce Reece, Bonneville's CEO. There is sufficient evidence already on the record that demonstrates that the Washington DC RIF could not have taken effect without the prior approval of corporate management offices.

The email that Mr. Donohoe now offers underscores the involvement of corporate management offices by offering specific examples of the level of involvement by Bonneville's head corporate officers. For example, the email discusses "severances costs" of the Washington DC RIF GMS sales department, including Mr. Donohoe. Mr. Oxley's request for guidance from

Mr. Reece and Mr. Johnson regarding management decisions and the costs associated with severance packages to terminated employees is an explicit example of the control exercised by Bonneville's corporate management office.

The email also shows that Mr. Oxley was responding to requests coming from corporate management asking him to create other "scenarios" that take into account the closing of different offices and the effect on the budget. These scenarios and the severance costs calculated by Mr. Oxley are undoubtedly used by Bonneville's corporate management officers to make decisions about which employees from what offices will be terminated. The costs associated with severance packages played a crucial role in decisions made regarding terminations or personnel. It is clear from the references in this email that Mr. Oxley is looking "to the west" for guidance from Bonneville's corporate officers.

It is also important to note that the manner by which the email was produced, and the deposition testimony given about locating it, exemplifies the persistent non-responsive and inattentive attitude adopted by Bonneville throughout discovery. In the past, Bonneville has provided responsive discovery materials under circumstances that are advantageous to Bonneville and disadvantageous to Mr. Donohoe.[2] This Court has already been apprised of Bonneville's previous assertions that certain documents requested by Mr. Donohoe have not been produced because they "do not exist." These protests later gave way to Bonneville's change of position and subsequent production of the relevant, requested materials. Yet again, this

---

[2] For example, as Plaintiff explained in his Motion to Compel [Dkt#19] Mr. Mark O'Brien, former General Manager of various Bonneville stations testified at length that he was informed by Mr. Mill's direct supervisor, Joel Oxley, on numerous occasions that Bonneville maintains a file containing harassment complaints filed by employees against Mills. Notwithstanding this binding testimony, counsel for Bonneville has insisted that no such file exists. Several weeks later, however, Bonneville supplemented its discovery responses to provide the written interview notes that both counsel and Mr. Mills insisted did not exist.

practice of providing documents late, or not at all, rears its head with this email and its missing attachment. Despite the fact that the email was created on October 27, 2005, and should have been provided as responsive to requests propounded by Mr. Donohoe on December 20, 2007, the document was not provided until the July 3, 2008 deposition of Mr. Joel Oxley. As Mr. Oxley's July 3, 2008 deposition testimony states:

> "Q. [By Mr. McCally]:Your attorney has produced a document this morning at this deposition, Bates stamped BIC010421. We are going to mark this as Exhibit 132. For the record, I just received this. (Deposition Exhibit Number 132 marked for purposes of identification.) I'm going to reserve my right to ask further questions on this beyond today's deposition, since I was just given it today, if that becomes necessary?
>
> A. [By Mr. Cys]: We can take that up at the time.
>
> Q. [By Mr. McCally]: I handed you an email Exhibit No. 132, which is from you to Bob Johnson, Bruce Reese, sent October 27, 2005. According to your attorney this morning, this was just found; is that correct?
>
> A. Correct.
>
> Q. What is this?
>
> A. An update on the scenarios of the changes that we are thinking about.
>
> Q. And there's an attachment to this document, correct?
>
> A. Correct.
>
> Q. What you provided me is not the complete email, because you haven't provided the attachment, correct?
>
> A. The attachment no longer exists.
>
> Q. How do you know that?
>
> A. I was told that by our IT guy.
>
> Q. Who is your IT person?

>  A.  John Spalding.  He consulted with corporate to see if it was housed out there as well. When we switched from Novelle to Microsoft, text (sic) were kept but attachments were not.
>  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
>
>  Q.  When did you switch from Novelle to Microsoft?
>
>  A.  I believe it was in the middle of '06.
>
>  MR. McCALLY:  Counsel, we submitted a litigation hold notice to Bonneville at the beginning of this matter.  That required any and all documents to be preserved. And that was submitted well before the middle of '06."

Exhibit 2, July 3, 2008 Deposition Transcript of Joel Oxley at pp. 205-207.

To date, the attachment has not been provided to counsel for Mr. Donohoe.  Similarly, the original document which was scanned as the attachment has never been provided to counsel. Counsel for Bonneville has not provided any reason to justify, excuse, or explain where the email attachment is, why the original document that was scanned as an attachment is, or why the attachment was destroyed despite the litigation hold notice that was given to Bonneville's counsel in 2006. Rather, all this seems to be part of Bonneville's calculated pattern of withholding discovery or denying its existence that has been pervasive throughout the entire discovery phase of this litigation.

There can be no serious argument that this email demonstrates the intricate level of involvement between Bonneville's corporate management offices and its Washington DC offices.  One can only speculate what information is revealed in the destroyed document that would shed light on the involvement of Bonneville's corporate management offices with the Washington DC RIF.  Bonneville enjoys the advantage it receives in this litigation by not being made to answer these questions.  Bonneville can no longer continue to disregard Mr. Donohoe's requests for responsive discovery or to assert groundless objections to his needs.

Bonneville should be required to provide Mr. Donohoe with the information requested in written discovery requests and in depositions regarding the involvement of Bonneville corporate management offices in the 2006 Washington DC RIF and the 2005 San Francisco RIF. Bonneville should be required to produce all information/documents Mr. Donohoe sought regarding that San Francisco Reduction in Force requested in his previous discovery requests and deposition notice.

                                        Respectfully submitted,

                                        CARR MALONEY P.C.

By:_____
    Thomas L. McCally, Esq., #391937
    Tina M. Maiolo, Esq., #454987
    1615 L Street, NW, Suite 500
    Washington, DC 20036
    (202) 310-5500/(202) 310-5555
    Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 19th day of August, 2008, a copy of the foregoing ***Plaintiff Leo Donohoe's Supplement to the August 8, 2008 Joint Supplemental Memorandum*** was served electronically to Richard Cys, Esq., Davis, Wright, Tremaine, LLP, 1500 K Street, NW, Suite 450, Washington, DC 20005, Attorney for Defendant.

_____
Thomas L. McCally

# EXHIBIT 1

Case 1:07-cv-00949-RWR-DAR   Document 46-3   Filed 08/19/2008   Page 2 of 4

Joel Oxley  
Beta Court Reporters  
Wednesday, July 2, 2008  
Leo Donohoe v. Bonneville, Inc.

Page 1

1       In The United States District Court
         For The District of Columbia
2              Civil Division
3   ----------------------------------x
    Leo Donohoe,                      :
4                                     :
           Plaintiff                  :
5                                     :
              v.                      :   NO. 07-949 (RWR)
6                                     :
    Bonneville International          :
7   Corp.,                            :
                                      :
8          Defendant                  :
    ----------------------------------x
9
10                        Wednesday, July 2, 2008
11  VIDEOTAPED DEPOSITION OF:
12                  Joel Oxley,
13  a witness, called by counsel pursuant to notice,
14  commencing at 10:04 a.m., which was taken at Carr
15  Maloney P.C., 1615 L Street, N.W., Suite 500,
16  Washington, D.C. 20036.
17
18
19
20
21

Case 1:07-cv-00949-RWR-DAR   Document 46-3   Filed 08/19/2008   Page 3 of 4

Joel Oxley
Beta Court Reporters
Wednesday, July 2, 2008
Leo Donohoe v. Bonneville, Inc.

Page 202

1 question.
2  MR. McCALLY: I asked him what the numbers
3 were. I want to know what the numbers are. Let's
4 look at them.
5  MR. CYS: Document speaks for itself.
6 BY MR. McCALLY:
7  Q. The market was up 2.5 percent. His
8 increase change was 15.4. How much did he beat the
9 market by?
10  A. The document speaks for itself.
11 BY MR. McCALLY:
12  Q. Sir, answer my question.
13  A. The document speaks for itself.
14  MR. McCALLY: Certify the question. I
15 will seek sanctions to get you to answer this.
16  A. What question is it you want?
17  Q. Is it 12.9 percent? Is that all he beat
18 it by?
19  A. He beat it by 12.9 percent.
20  Q. Thank you, sir. This was an up market,
21 correct?

Page 203

1  A. Yes.
2  Q. Compared to the 2005 market in which Mr.
3 Donohoe was selling that was down by 6.7 percent,
4 correct?
5  A. That is so weak, but correct.
6  Q. I'm happy you think it's weak. You can
7 save your commentary for your attorney to ask you
8 questions?
9  A. As can you.
10  Q. Now, how do you consider this year for,
11 this 8 months for Mr. Spacciapoli?
12  A. Excellent. He moved the rank from 4 to 2.
13 Moved up a full percentage point market share with
14 lower ratings. Ratings were higher the previous
15 year than they were this year.
16  Q. How do you explain that?
17  A. The transition between the signals. A lot
18 of people didn't realize, we had to do a big
19 marketing campaign to get people to switch the
20 signals. Not all of them switched right away. We
21 had less audience than initially.

Page 204

1  Q. It's your testimony that your ratings were
2 only down due to the change of the signal; is that
3 correct?
4  A. That was one of the factors.
5  Q. What are the other factors?
6  A. The amount of marketing you do, what kind
7 of new cycle it is. There's always changes that --
8 you can never determine exactly what is going to
9 happen with Arbitron.
10  Q. Did you do decrease marketing in '06?
11  A. We increased the marketing in '06.
12  Q. Yet you didn't see as much improvement has
13 you had in '05, correct, in terms of percentage
14 change or sales as to market?
15  A. Saw improvement in rank, saw improvement
16 in market share, but we did not see quite the
17 improvement in the actual percentage by, I guess,
18 2 percent that we did in percentages.
19  Q. Mr. Spacciapoli quit his position, as of
20 August '06, correct?
21  A. He was promoted in August of '06.

Page 205

1  Q. He applied for another job or did you just
2 promote him?
3  A. He sought another job, when the person who
4 was in that job left.
5  Q. So he left his position as director of
6 national sales/sports sales to take another job?
7  A. Yeah, he was promoted.
8  Q. And he quit his position as director of
9 national sales?
10  A. He was promoted, yes.
11  Q. Your attorney has produced a document this
12 morning at this deposition, Bates stamped BIC010421.
13 We are going to mark this as Exhibit 132. For the
14 record, I just received this.
15  (Deposition Exhibit Number 132 marked for
16  purposes of identification.)
17  I'm going to reserve my right to ask
18 further questions on this beyond today's deposition,
19 since I was just given it today, if that becomes
20 necessary?
21  MR. CYS: We can take that up at the time.

Case 1:07-cv-00949-RWR-DAR    Document 46-3    Filed 08/19/2008    Page 4 of 4

Joel Oxley  
Beta Court Reporters  
Wednesday, July 2, 2008  
Leo Donohoe v. Bonneville, Inc.

Page 206

1   MR. McCALLY: We certainly can.
2   BY MR. McCALLY:
3   Q. I handed you an e.mail Exhibit No. 132,
4   which is from you to Bob Johnson, Bruce Reese, sent
5   October 27, 2005. According to your attorney this
6   morning, this was just found; is that correct?
7   A. Correct.
8   Q. What is this?
9   A. An update on the scenarios of the changes
10  that we are thinking about.
11  Q. And there's an attachment to this
12  document, correct?
13  A. Correct.
14  Q. What you provided me is not the complete
15  e.mail, because you haven't provided the attachment,
16  correct?
17  A. The attachment no longer exists.
18  Q. How do you know that?
19  A. I was told that by our IT guy.
20  Q. Who is your IT person?
21  A. John Spalding. He consulted with

Page 207

1   corporate to see if it was housed out there as well.
2   When we switched from Novelle to Microsoft, text
3   were kept but attachments were not.
4   Q. Who is Mr. Bob Johnson?
5   A. COO.
6   Q. Bruce Reese?
7   A. CEO.
8   Q. Did you check with them to see if they had
9   copies of the attachment?
10  A. The IT guys did.
11  Q. You know that for a fact?
12  A. They told that they were going to.
13  Q. Did they?
14  A. As far as I know. They would have had the
15  same issue.
16  Q. When did you switch from Novelle to
17  Microsoft?
18  A. I believe it was in the middle of '06.
19  MR. McCALLY: Counsel, we submitted a
20  litigation hold notice to Bonneville at the
21  beginning of this matter. That required any and all

Page 208

1   documents to be preserved. And that was submitted
2   well before the middle of '06.
3   I'm requesting to be notified of what was
4   done to preserve the documents in your system prior
5   to this change pursuant to litigation hold notice,
6   which directly impacts the attachment that was here,
7   that apparently cannot be retrieved now.
8   MR. CYS: You are going to need to send me
9   a letter, Tom. This is at best empirical. The
10  reason we are furnishing what we have is because it
11  arose at the last deposition of Mr. Oxley.
12  MR. McCALLY: Why did it -- I'm not
13  following you.
14  MR. CYS: You asked questions --
15  MR. McCALLY: I know that.
16  MR. CYS: -- about this area. You asked
17  specifically about any documents like this. That's
18  why it's produced.
19  MR. McCALLY: Pertaining to the decision
20  of which station to get rid of?
21  MR. CYS: No, the revenues.

Page 209

1   MR. McCALLY: This is being produced
2   pursuant to the revenues?
3   MR. CYS: Right.
4   BY MR. McCALLY:
5   Q. Do you recall what the attachment, the
6   numbers that it contained?
7   A. The ones that are listed on here.
8   Q. What else was it made up of? What went
9   in -- who created the attachment?
10  A. Linda Pfluger.
11  Q. How many pages was it?
12  A. One, as I remember.
13  Q. It had more numbers than just these,
14  correct?
15  A. Yes.
16  Q. What were the numbers drawn from? Were
17  they your best guesses, speculations about what
18  would happen in the future?
19  A. Yes.
20  Q. Who prepared it?
21  A. Me and Linda Pfluger.

# EXHIBIT 2

| | | | |
|---|---|---|---|
| From: | Joel Oxley | Sent:10/27/2005 1:18:23 PM |  |
| To: | Bob Johnson; Bruce Reese | | |
| Subject: | New numbers | | |

Attachments may contain viruses that are harmful to your computer. Attachments may not display correctly.

 BIC.doc (0Kb)

Bruce,

As you requested I added another scenario with GMS going on 104.1. GMS on 104.1 takes revenue down to 6M from nearly 10M. Ratings fall to a 1.8 share from a 3.0. NOI goes down to 1M from 3.5M. Severance costs of the GMS sales department are 300k. Z severance is 800k. Since TOP will manage and sell GMS there are some savings there. All told moving GMS to 104.1 and closing Z instead of keeping Z on 104.1 is a little over 1M more expensive.

Should we use the GMS to 104.1 scenario for our budget submission?

Pls let me know. Thanks, Joel

Joel Oxley
Senior VP/Market Manager
WGMS/WFED/WTOP/WWZZ
(202) 895-5012
joxley@wtopnews.com

BIC 010421

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
|     Defendant. | : | |

## **ORDER**

UPON CONSIDERATION of Plaintiff Leo Donohoe's Motion for Leave to File Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum and any opposition thereto, it is this _____ day of _____, 2008,

ORDERED, that Plaintiff's Motion for Leave to File Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum is hereby GRANTED; it is further

ORDERED, that Plaintiff's Supplement to the August 8, 2008 Joint Supplemental Memorandum attached to the foregoing Motion at Exhibit A and the attachments thereto, is hereby accepted as timely filed with this Court and shall be made a part of the August 8, 2008 Joint Supplemental Memorandum.

_____
The Honorable Magistrate Judge Deborah A. Robinson

Copies to:

Thomas L. McCally, Esq.
Tina M. Maiolo, Esq.
1615 L Street, NW, Suite 500
Washington, DC 20036

Richard Cys, Esq.
Davis, Wright, Tremaine, LLP
1500 K Street, NW
Suite 450
Washington, DC  20005