**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LEO DONOHOE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 07-949 (RWR) |
| | : | |
| BONNEVILLE INT'L CORP., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE ROBINSON'S JULY 29, 2008**
**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL AND GRANTING**
**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Yet again, Plaintiff Leo Donohoe has filed procedurally defective – and substantively

lacking – objections to an order issued by Magistrate Judge Robinson. Yet again, Mr. Donohoe

fails to even address the proper standards of review for such objections, instead attempting, in

clear contravention to this Court's rules, to rehash tired and meritless arguments regarding

discovery. Yet again, his objections should be rejected.

## I.  BACKGROUND

### A.    Factual Background

This is an age discrimination case, arising from a reduction-in-force ("RIF") in

Bonneville's Washington DC Radio Group in January 2006. At that time, Bonneville

restructured its operations and programming in the Washington area in an effort to acquire new

and to bolster existing news/talk formats and ventures. To this end, Bonneville eliminated

WWZZ, a rock station, to make space for a new news station, Washington Post Radio. WGMS,

a classical station, was moved to a weaker frequency, and its sales force was eliminated. The

sales forces of certain of the remaining stations (WTOP and WFED) and of the new station

(Washington Post Radio) were consolidated for purposes of efficiency. (WGMS was eliminated altogether a year later.) The RIF resulted in the termination of fifty-one employees.

One position open for hiring after the RIF was a newly created position: Director of National Sales/Sports Sales Manager. This position was designed to cover the four area stations: WTOP, Washington Post Radio, WGMS and WFED. Fifteen applicants, including Mr. Donohoe, applied for this position. Ultimately, Bonneville hired Michael Spacciapolli, the most qualified candidate for the position. Among other qualifications, Mr. Spacciapolli had previous experience managing Account Executives for sports sales, had a strong relationship with the Washington Nationals baseball team and had been integral in Bonneville's negotiations with the Nationals to broadcast Nationals' baseball games. No other applicant had these qualifications. Moreover, Mr. Spacciapolli had been employed by and was well regarded by representatives of Katz, Bonneville's rep firm, who shared their opinions with Bonneville decisionmakers Joel Oxley and Matt Mills that Mr. Spacciapolli was the superior candidate over Mr. Donohoe for the newly created position, based on prior experience with both candidates, and that Mr. Spacciapolli was better organized and more effective than Mr. Donohoe. Mr. Spacciapolli was subsequently promoted from the position of Director of National Sales/Sports Sales Manager to Local Sales Manager for WTOP – a position with a larger budget and more responsibility and a position that Mr. Spacciapolli actively sought to obtain.

**B.    Procedural Background**

On July 29, 2008, Magistrate Judge Robinson held a hearing regarding two discovery motions: plaintiff's motion to compel [#19] and defendant's motion for a protective order [#21]. This hearing had previously been scheduled for July 2, but the Judge was unable to hold the hearing due to obligations on the criminal calendar. *See* July 25, 2008 Joint Status Rep. [#41]. Instead, the parties were directed to confer in an effort to limit the scope of the dispute between

the parties.  The parties did so, and counsel resolved disputes regarding three of plaintiff's still-contested document requests.  Def.'s Motion for Protective Order [#21] at 1-2; July 25, 2008 Joint Status Rep. at 2-3.

All told, and taking into account numerous prior productions of documents over and above plaintiff's initial thirty requests (and notwithstanding numerous improprieties in the scope, number and form of Mr. Donohoe's many requests), Bonneville has responded to far more than thirty document requests from Mr. Donohoe[1] by providing over 10,500 pages of documents in this single-plaintiff age discrimination lawsuit.  *See* Def.'s Mot. for Protective Order [#21] at 4, 7-8, 11-13.  All the while, Mr. Donohoe has failed to comply with even the most basic of his discovery obligations.

At the July 29, 2008 hearing, Magistrate Judge Robinson denied plaintiff's motion to compel and granted defendant's motion for a protective order, with the exception of one issue:

> [T]he Court grants the Defendant's motion for protective order and denies the Plaintiff's motion to compel, except with respect to discovery regarding headquarters' role, if any, in the RIF in the District of Columbia – perhaps I should say the District of Columbia market, by which the Plaintiff in this case was affected.  As to that issue the Court will stay its determination until the parties file what I will call a 'supplement' to today's hearing in which the parties attach the transcript of the deposition of Mr. Oxley, since both sides appear to agree that during the deposition Mr. Oxley gave testimony which you've each characterized as dispositive.

July 29 Tr. at 45-46; *see also* July 29, 2008 Minute Entry (supplemental briefing required as to "Plaintiff's request for discovery regarding the role, if any of Defendant's headquarters in the D.C. RIF; as to that issue, the parties shall jointly file a supplemental hearing memorandum with the relevant portions of the transcript of the deposition in which counsel inquired about this

---

[1] Mr. Donohoe has propounded over 74 document requests, including his 32 original requests, 17 supplemental requests, 25 requests appended to his 30(b)(6) deposition notice, and nine requests appended to the deposition notice for Joel Oxley (these requests were withdrawn when Bonneville pointed out to Mr. Donohoe that they were *entirely* duplicative of earlier requests).  *See, e.g.*, July 29 Tr. at 29.

issue; said memorandum shall be filed by no later than 8/8/08.").  Plaintiff now objects to this order.

## II.  STANDARD OF REVIEW

Absent in plaintiff's objections, as before, is any recognition of the limited scope of review of a magistrate judge's decision on a nondispositive matter.  *Compare* Pl.'s Objections [#44] *with* Pl.'s First Objections [#20]; Fed. R. Civ. P. 72(a) and LCvR 72.2(b) ("Upon consideration of objections filed in accordance with this Rule, a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law."  The rule provides:  The standard of review here is highly deferential:  "On review, the magistrate judge's decision is entitled to great deference unless it is clearly erroneous or contrary to law, that is, if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed."  *Page v. Pension Benefit Guar. Corp.*, 498 F. Supp. 2d 223, 225 (D.D.C. 2007) (Roberts, J.) (quoting *Pulliam v. Continental Cas. Co.*, Civil Action No. 02-370 (RWO), 2006 WL 3003977, at *2 (D.D.C. Oct. 20, 2006)).

## III.  ARGUMENT

No error was committed here, much less a clear error.  The denial of Mr. Donohoe's motion was grounded in the sensible recognition that:  (1) Mr. Donohoe's fishing expedition to Northern California was entirely unwarranted; (2) Mr. Donohoe's insistence that a phantom file of complaints exists is nothing more than a flight of fancy; (3) Mr. Donohoe has had more than enough opportunity to take discovery from Bonneville and needs no more, and that, in any event, Mr. Donohoe had failed to overcome his own stipulation to a 30-document-request limit (which he substantially exceeded, anyway); and (4) Mr. Donohoe's use of a 30(b)(6) deposition as an

end-around to increase the number of his deposition requests was improper and duplicative of prior requests.[2]

A.    **Plaintiff's Objections Are Untimely.**

As an initial matter, plaintiff's objections are untimely.  Magistrate Judge Robinson ruled from the bench issuing her order denying plaintiff's motion on July 29, 2008.  This order was later memorialized by a minute entry (not a minute *order*), which was likewise docketed as being effective on July 29, 2008 (the date of entry was July 31, 2008).  Fed. R. Civ. P. 6 and LCvR 72.2(b) impose a ten-day deadline on the filing of objections.  Such objections were due ten business days from July 29, on August 12.  The three-day ECF safe harbor does not apply, as the order was issued in open court, and only memorialized later via ECF.  On this basis alone, plaintiff's objections should be rejected.

B.    **Washington, D.C. Is The Only Relevant Market To Donohoe's Claims Of Alleged Discrimination, And Plaintiff's "Objections" In This Regard Are, In Any Event, Premature.**

1.    **Plaintiff's Objections Are Premature.**

Plaintiff's objections to Magistrate Judge Robinson's bench order contain another glaring procedural deficiency, namely, he objects to an order which has not yet issued:  the question of discovery into Bonneville operations outside of D.C.  Both in open court and in the minute entry memorializing the July 29 hearing, Magistrate Judge Robinson plainly specified that this issue

---

[2] As is his wont, plaintiff attempts to expand his objections to cover "all issues argued in Donohoe's Motion" without actually raising particular objections regarding the vast majority of his discovery requests (and Bonneville's numerous objections thereto).  Pl.'s Objections [#44] at 6 n.2; *cf.* Pl.'s Mot. to Compel [#19]; Def.'s Mot. for Protective Order [#21].  Such bootstrapping is manifestly improper.  Fed. R. Civ. P. 34(b) (2007) (allowing a party to "move for an order under Rule 37(a) with respect to *any objection to* or other failure to respond to the request" (emphasis added); Fed. R. Civ. P. 34 (2008) (rule revised for stylistic purposes only).  Plaintiff's objections raise four, and only four issues:  the number of document requests; the improper use of a 30(b)(6) deposition notice to make additional document requests; discovery regarding San Francisco; and the nonexistent Mills complaint file.

was stayed pending supplemental briefing:  "[T]he Court grants the Defendant's motion for protective order and denies the Plaintiff's motion to compel, except with respect to discovery regarding headquarters' role, if any, in the RIF in the District of Columbia – perhaps I should say the District of Columbia market, by which the Plaintiff in this case was affected.  As to that issue the Court will stay its determination until the parties file what I will call a 'supplement' to today's hearing …."  July 29 Tr. at 45-46.

Rather than simply wait for a ruling, plaintiff has opted to mischaracterize the record:  First, in a footnote, plaintiff contends that he has "no option but to file this objection" because "the court's written order" – presumably a reference to the minute *entry* memorializing the already-given order dated the same day – "does not reflect [Magistrate Judge Robinson's] invitation to seek reconsideration."  Pl.'s Objections [#44] at 9 n.4.  Of course, it is a matter of simple logic that an invitation to seek reconsideration has not been made, since Magistrate Judge Robinson *has not ruled* on the question presented in the supplemental briefing.  July 29 Tr. at 45-46; July 29, 2008 Minute Entry ("Defendant's motion is granted and Plaintiff's motion is denied, *except with respect to Plaintiff's request for discovery regarding the role, if any of Defendant's headquarters in the D.C. RIF*.") (emphasis added).  Plaintiff's "objection," therefore, is entirely premature.  Second, plaintiff goes so far as to mischaracterize the scope of the remaining issue regarding Bonneville headquarters:  notwithstanding Magistrate Judge Robinson's repeated limitation of this supplemental briefing to "the D.C. RIF," *see also* July 29 Tr. at 45-46 (ordering supplemental briefing regarding headquarters' role in "the RIF in the District of Columbia"), plaintiff contends in his objections that such briefing was to address "whether Bonneville's corporate level employees were involved in the D.C. *and San Francisco* RIFs."  Pl.'s Objections [#44] at 9 (emphasis added).

## 2.    There Is No Basis For Additional Discovery Outside Of Washington, D.C.

Even if the Court were to overlook these glaring deficiencies, plaintiff's objections are without basis.  The proper scope of discoverable information in cases like this is limited to the appropriate work unit within the defendant company, and a plaintiff must make a particularized showing in order to justify exceeding this scope.  Cases establishing these limitations are legion.[3]

---

[3] *See Sallis v. University of Minn.*, 408 F.2d 470, 478 (8th Cir. 2005) ("Courts have also limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery."); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (per curiam); *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) (observing that plaintiff was not entitled to company-wide discovery absent particularized showing of need, and concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that "[a] vague possibility that loose and sweeping discovery might turn up something suggesting . . . [discriminatory] motive[ ] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry"); *Heward v. Western Elec. Co.*, 35 Fair Empl. Prac. Cas. (BNA) 807, 811-12 (10th Cir. 1984) (affirming limitation of discovery to region where ADEA plaintiff worked, on grounds that case was not brought as class action or one in which company-wide allegations of discrimination were central to plaintiff's claim); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (observing that "in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination the employing unit or work unit. To move beyond that focus the plaintiff and the EEOC must show a more particularized need and relevance") (internal citation omitted); *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) (stating that "[i]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains");  *McBride v. Medicalodges, Inc.*, No. 06-2535-JWL-GLR, 2008 WL 1744772 (D. Kan. Apr. 11, 2008) (observing that "[i]n non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on" the work unit); *Byers v. Illinois State Police*, No. 99-C-8105, 2002 WL 1264004, at *6, 53 Fed. R. Serv. 3d 740 (N.D. Ill. June 3, 2002) ("Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery unless she shows that the requested information is relevant and that she has a particular need for it."); *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) ("Likewise, Courts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery."); *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D. .J. 1996) (limiting discovery to work unit); *Hinton v. Entex Inc.*, 93 F.R.D. 336, 337-38 (E.D. Tex. 1981) (holding that scope of discovery should be limited to facility at which plaintiff is employed when "[p]laintiff has not

Plaintiff entirely ignores this body of settled case law as well as his obligation arising therefrom to provide a "particularized showing" of his entitlement to discovery beyond his work unit.  *See Carman*, 114 F.3d at 792 (requiring a particularized showing); *Hinton*, 93 F.R.D. at 337-38 (requiring "specific factual allegations of discrimination" in other facilities in order for discovery outside of the facility where plaintiff worked to be permitted); *McBride*, 2008 WL 1744772, at *3 (same, where plaintiff has shown that the "requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information," and collecting cases) (internal citations omitted); *Onwuka*, 178 F.R.D. at 517 (particularized showing required).  He does so without demonstrating either a clear error of law or fact in Magistrate Judge Robinson's order.  Instead, Mr. Donohoe merely repeats his unsubstantiated allegations of purported age discrimination involving high-level Bonneville officials, Pl.'s Opp'n at 10-11; *see also* Mot. to Compel at 16 – which officials, in any event, *had no role in terminating Mr. Donohoe's individual employment*.  *See* August 8, 2008 Joint Supplemental Brief at 11-17.[4]  Such a flimsy allegation is plainly insufficient.

---

made any specific factual allegations of discrimination that pertain to any facility of [defendant] other than the one [at which she physically worked]").

[4] In an attempt to side-step this settled case law, Mr. Donohoe relies, as he did before the Magistrate Judge, on three cases regarding the availability of respondeat superior liability for punitive damages, none of which speak to the proper scope of discovery in cases brought pursuant to state or federal age discrimination statutes.  *See Lake Shore & Mich. So. v. Prentice*, 147 U.S. 101 (1893) (pre-ADEA Supreme Court decision regarding employer liability for punitive damages for employees' acts); *Franklin Inv. Co. v. Smith*, 383 A.2d 355, 359 (D.C. App. 1978) (decision regarding same concepts of vicarious liability for punitive damages); *Wardman-Justice Motors, Inc. v. Petrie*, 39 F.2d 512, 515 (D.C. Cir. 1930) (same).  And these decisions merely reinforce Bonneville's point, given the paucity of any inkling, let alone a "particularized showing" of either actions warranting punitive damages or of any discrimination in San Francisco (let alone any that would be relevant to this case).  *See* Def.'s Mot. for Protective Order [#21] at 9-11.

8

*Carman*, 114 F.3d at 792; *Hinton*, 93 F.R.D. at 337-38; *McBride*, 2008 WL 1744772, at *3;

*Onwuka*, 178 F.R.D. at 517.

Plaintiff's hand-waving about Fed. R. Evid. 401 and 403 is illogical, and places the

burdens of production and proof in all the wrong places. Plaintiff alleges that the Court "simply

cannot conduct a proper analysis under Federal Rules of Civil [sic] Procedures [sic] 401 and 403

if it does not have any evidence (obtained through discovery) to analyze." Pl.'s Objections [#44]

at 10. That a court requires evidence in order to assess a party's need for further discovery is

true, so far as it goes, but this observation merely states the court's role. It does nothing to

justify plaintiff's tautological conclusion that the court *needs* (an unspecified and theoretically

limitless amount of) *more* discovery in order to conduct an analysis in a given case. *Id.* Quite to

the contrary, the burden to produce evidence justifying discovery beyond the plaintiff's work

unit in discrimination cases rests *upon the plaintiff*, who must make the "particularized showing"

in order to justify additional discovery. *Carman*, 114 F.3d at 792; *Hinton*, 93 F.R.D. at 337-38;

*McBride*, 2008 WL 1744772, at *3; *Onwuka*, 178 F.R.D. at 517. Plaintiff has not done so here.

August 8, 2008 Joint Supplemental Brief at 15 ("We [Bonneville corporate and I] had

discussions about the structure and what departments but not about individual personnel" Oxley

Dep. at 164.).[5] Indeed, even if he had, it would not be clear error for the Magistrate Judge to rule

against him.

_____

[5] *See also* July 29 Tr. at 27 (Magistrate Judge Robinson stating that "[h]eadquarters did
not make a decision regarding what would happen to employees who worked at stations
whose formats were changed," to which counsel for Bonneville responded, "That's correct."); *id.* at 37
(Counsel for Bonneville: "[T]he decision about relocating frequencies and stations was what
was made in headquarters, but nothing with respect to the RIF, nothing with respect to who
would be involved in the RIF. That was completely up to the Washington, D.C. operation."); *id.*
at 45 (Mag. Judge Robinson: "If it is the case, as the Defendant suggests, that headquarters had
not role except to dictate changes regarding what I believe we've characterized as 'format'
having to do with stations and frequencies and other terms of art, and did not provide for or

*Sprint/United Management Co. v. Mendelsohn*, 522 U.S. __ (2008) avails plaintiff nothing.  The holding of *Mendelsohn* was merely that the appellate court improperly engaged in its own analysis rather than remanding the case to the district court.  While plaintiff is correct that the initial reviewing court (here, Magistrate Judge Robinson) is entitled to address the probative value of evidence proffered in support of initial discovery, that only takes him back to square one, as this is precisely what Magistrate Judge Robinson will do in ruling on the supplemental issues still pending, and plaintiff has identified no error whatsoever in that (not-yet-made) determination.  Finally, plaintiff is entirely wrong to suggest that the denial of his motion to compel with respect to discovery 3,000 miles away in San Francisco amounts to a ruling that evidence outside of D.C. is "*per se* inadmissible."  Pl.'s Objections [#44] at 10.  Should plaintiff lose, that will not be the Magistrate Judge's ruling at all.  Plaintiff merely failed to produce evidence sufficient to justify such discovery, and Bonneville produced unequivocal evidence demonstrating that Mr. Donohoe's effort to expand his case nationwide is unjustified.[6]

### C.        There Is No File Of Complaints About Mr. Mills.

Bonneville has repeatedly informed Plaintiff that there is no file of complaints about Mr. Mills. Feb. 13, 2008 Defendant's Responses and Objections to Plaintiff's Request for Production of Documents at 5; April 8, 2008 letter to McCally at 2; April 14, 2008 Defendant's Response

---

dictate or require any reduction in force, then the Court's ruling would likely be that no discovery regarding headquarters would be permitted.").

[6] Plaintiff's reliance on a purported "statement" from a former San Francisco employee – which has never been produced, was presumably not made under oath, and which appears to have been based upon the employee's subjective speculation – has a probative value of next to nothing.  This is particularly so in light of uncontroverted evidence that the only decision regarding the D.C. RIF at issue in this case – the termination of the WGMS sales force was made by local Bonneville officials in D.C., without input from corporate headquarters.  Joint Supplemental Br. at 15 ("We [Bonneville corporate and I] had discussions about the structure and what departments but not about individual personnel" Oxley Dep. at 164.).  Needless to say, these officials responsible for the WGMS sales staff RIF have never had any involvement with employment matters in San Francisco.

and Objections to Plaintiff's Supplemental Request for Production of Documents at 9; May 8,
2008 letter to McCally at 1-2. Even after Magistrate Judge Robinson finally put a stop to his
insistence that one be produced – or that Bonneville submit to his arbitrary conditions for
satisfying his undying skepticism – he presses his case. Bonneville could not be more emphatic:
there is no file. Bonneville has searched its employment records, and queried all relevant
personnel and has repeatedly informed plaintiff's counsel that there is no file containing
complaints about Matt Mills, see Pl.'s Mot. to Compel Ex. 8, at 2 (stating that there is no such
file and that "no formal or written complaints were ever filed" against Mills); Pl.'s Ex. 5 at 9
(stating, over objections and in response to request for documents regarding Mills, that his
personnel file was already produced).

Mr. Donohoe insists, however, based upon the faulty memory of a former employee,
Mark O'Brien, who has not been employed by Bonneville in five years and who admits he is
relying purely on hearsay from four to five years ago, that such a file does exist.[7]  It does not.
*See* Oxley I Dep. at 313 ("There [are] absolutely no written complaints in Mr. Mills' personnel
file whatsoever.")  There is nothing "convenient" about this consistent response to Mr.
Donohoe's harassment in this regard. Any written complaints about Matt Mills – if they existed
– would be contained in his personnel file. This file was produced. Indeed, when Bonneville
conducted a search of written complaints about employees in its DC Radio Group, only three
complaints were found: two of the three concerned complaints about Leo Donohoe and <u>none</u>

---

[7]As Mark O'Brien testified in his deposition:  "My understanding was, *and I never saw it*,
that there was a file that had some complaints regarding the way Matt treated some employees.
***  I believe they were harassment complaints. *Technically exactly what they were, I do not
know*. *** [O'Brien's knowledge of the file was limited to] "just that there was, in fact, a file at
Bonneville…and that there were at least one, perhaps two, complaints regarding Matt with
harassment from people that worked for him. *I don't know specifically what they were and I
don't know who they were*."  O'Brien Dep. at 31-33 (emphasis added).

related to Mr. Mills. [BIC 007681-83]. The speculation of a long-departed former employee (Mr. O'Brien left Bonneville in 2003) without any actual knowledge (custodial or otherwise) of defendant's records-management policies and systems – and who conceded that he has never seen such a file – does not a file make.[8]

All this is to say nothing about Mr. Donohoe's failure to cite any clear error of law or fact in Magistrate Judge Robinson's ruling against him. *See* Pl.'s Objections [#44] at 10-11. Instead, Mr. Donohoe merely insists that Bonneville has been allowed to "improperly evade discovery by denying the existence of the evidence requested." *Id.* at 11. The only impropriety here is counsel's repeated refusal to accept reality; his "objection" is nothing more than sour grapes. Bonneville has now responded to this unsubstantiated allegation of the phantom complaint file at least eight times. *See* (1) Bonneville's April 8, 2008 response to Donohoe's March 12 deficiency letter; (2) Bonneville's April 10, 2008 letter objecting to Donohoe's supplemental document requests ("many [of which] appear duplicative and have already been responded to"); (3) Bonneville's April 14, 2008 Responses and Objections to Plaintiff's Supplemental Request for Production of Documents; Bonneville's May 7, 2008 production of "written complaints filed against managers at Bonneville's DC Radio Group"; (4) Bonneville's May 8, 2008 letter in response to Donohoe's Amended Notice of 30(b)(6) Deposition requiring that deponent Joel Oxley bring with him documents specified in Amended Attachment A; (5) Bonneville's May 20, 2008 Consolidated Motion for Protective Order and Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel Discovery [# 28] at 11-12; (6) July 25, 2008 Joint

---

[8] "[I]n his deposition testimony Mark O'Brien said he never actually saw this file. He doesn't know who made any of these complaints or what's contained in the file. The basis for his belief that this file exists, which is a faulty belief, is a conversation he had with Joel Oxley in which he seems to have conflated a discussion of two different employees and comes to some belief that there's a file of complaints about Matt Mills. This file does not exist. We've looked for it." July 29 Tr. at 31-32.

Status Rep. [# 41] at 3; (7) July 29 Tr. at 31-32; and; (8) orally, at the meet and confer in chambers.  Enough is enough.

>    D.    **Mr. Donohoe Is Entitled To No More Document Requests.**

As noted, *supra*, plaintiff's protestations notwithstanding, Bonneville has responded to far more than thirty of Mr. Donohoe's 74-plus document requests.  *See also* July 29 Tr. at 29-30 (detailing Bonneville's responses to Mr. Donohoe's numerous document requests); July 25, 2008 Joint Status Rep. at 1-2.  Accordingly, Mr. Donohoe's protests (regarding a limit to which he stipulated at the commencement of this litigation) are, as a matter of fact, superfluous.  And Mr. Donohoe's contention that "Bonneville refuses to provide responses to any more than thirty (30) requests" is patently false.  Pl.'s Objections [#44] at 7.

In any event, his protests are also baseless.  A stipulation entered into by the parties regarding the scope of discovery is binding.  *See* LCvR 26.2(b); Fed. R. Civ. P. 29; *see also Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D. Tex. 2005) (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order).  Here, the parties stipulated to an initial limit of thirty document requests and thirty interrogatories.  Pl.'s Ex. 12 at 9.  Without even the slightest nod to this contemplated limit, Mr. Donohoe sought, unilaterally, to propound *forty-nine* (thirty-two initial requests and seventeen "supplemental" requests) direct document requests and *twenty-five* additional document requests through the back door via his 30(b)(6) notice.  He sought no consent from Bonneville before serving them (nor applied to the Court) before exceeding the agreed-to limit.  He made no offer to narrow the scope or number of these "supplemental" requests and made no effort to comply with the limits to which he originally agreed.

Mr. Donohoe's effort to characterize the 30-request limit as not binding is a smokescreen.  As an initial matter, the parties used functionally identical language in the joint 16.3 report

regarding document requests as they did regarding the other discovery limitations.  Pl.'s Ex. 12 at 9.  And Mr. Donohoe provides no authority, allowing him to skirt his own agreed-to discovery limitation by claiming, after the fact, that he didn't really mean it when he said thirty requests would be sufficient, even if that limit was not incorporated into the Court's initial scheduling order.  LCvR 26.2(b); Fed. R. Civ. P. 29; *Riley*, 233 F.R.D. at 500 (stipulated deadlines for interrogatories included in discovery plan are binding unless contradicted by court order).

Moreover, Mr. Donohoe has *never* addressed the substance of Bonneville's other objections to these requests.  And, as Bonneville previously observed to the Magistrate Judge, the vast majority of them (1) were fully responded to by prior document productions and discovery responses, *see generally* Def.'s Mot. for Protective Order [#21] at 15-16; Pl.'s Mot. to Compel Ex. 5 (Def.'s  Resp. & Objections to Suppl. Req. Nos. 6, 8, 9, 13, 15, 16); (2) were designed to discover information outside of the only relevant geographical market (Washington, D.C.), *see generally* Def.'s Mot. for Protective Order [#21] at 5-7; Pl.'s Mot. to Compel Ex. 5 (regarding Suppl. Req. Nos. 1, 2, 3, 4, 6, 8, 15, and 16); *see also* Def.'s Mot. for Protective Order [#21] at 5-7 [II.A]; (3) were defective for other reasons set forth in Bonneville's opposition memorandum and motion for a protective order, *see supra*; Def.'s Mot. for Protective Order [#21] at 11-12 [ II.D] (regarding the alleged Mills complaint file)); Def.'s Mot. for Protective Order [#21] at 9-11 [II.C.2] (Suppl. Req. No. 5 (financial information)); (4) are unrelated to age discrimination, *id.* (regarding Suppl. Req. No. 17 (demanding all documents regarding any and all employment-related complaints or concerns in the Washington/Baltimore metropolitan region)); and/or (5) were subject to agreements reached between the parties in Magistrate Judge

Robinson's chambers, and are therefore not before the Court.[9]  Accordingly, Mr. Donohoe's motion to compel, even if it had any merit as to the number of allowed discovery requests, would not have survived Bonneville's substantive objections to those requests.  And Mr. Donohoe's failure to grapple with these objections – at any point – renders any response waived.  *See* Fed. R. Civ. P. 34(b) (2007) (allowing a party to "move for an order under Rule 37(a) with respect to *any objection to* or other failure to respond to the request") (emphasis added); Fed. R. Civ. P. 34 (2008) (rule revised for stylistic purposes only); *see also* Pl.'s Mot. to Compel Ex. 5 (Bonneville responses and objections to supplemental discovery requests, objecting, *inter alia*, on grounds of overbreadth, duplication, irrelevance, excessive geographic scope, and nondiscoverability of financial information).

### E.  Donohoe May Not Evade Discovery Limits Via His Rule 30(b)(6) Notice.

Mr. Donohoe attempted to use his Rule 30(b)(6) notice as a functional *subpoena duces tecum* in a transparent effort to evade his agreed-to limit of thirty document requests.  Pl.'s Mot. to Compel Ex. 10.  This tactic is prohibited by rule.  Requests for documents from party-opponents are to be propounded via Rule 34, and not via the circuitous route of Rule 30(b)(6). *See* Fed. R. Civ. P. 34; Fed. R. Civ. P. 30(b)(2) ("The [deposition] notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition."); *see also* Pl.'s Mot. to Compel Ex. 10 (deposition notice citing the now-abrogated Rule 30(b)(5) but failing to comply with Fed. R. Civ. P. 34, as required).

After a proper challenge to this effort by Bonneville, *see* Def.'s Mot. for Protective Order Ex. C, Mr. Donohoe then shifted tactics and sought leave of the Court to use his 30(b)(6) notice

---

[9] The only remaining requests (Suppl. Req. Nos. 7, 11, 12, and 14) were either resolved by agreement of the parties, *see* July 25, 2008 Joint Status Rep. [#41] at 2, and/or were defective for the reasons set forth in Bonneville's Objections and Responses.  *See* Pl.'s Mot. to Compel Ex. 5.

to obtain documents – inviting the Court to contravene the clear mandates of the Federal Rules of Civil Procedure – to obtain the documents. To Magistrate Judge Robinson, Mr. Donohoe alleged this end-around was necessary to avoid unsubstantiated and unspecified "undue prejudice and irreparable harm to him resulting from the arbitrary constraints placed on his ability to seek evidence" from Bonneville. Pl.'s Mot. to Compel at 15. Of course, for the reasons set forth above, these constraints were self-imposed and are hardly arbitrary. *See* Pl.'s Ex. 12 at 9; LCvR 26.2(b); Fed. R. Civ. P. 29. Moreover, in his present objections to the Court, as before, Mr. Donohoe has failed to identify with any specificity what the "irreparable" harm he claims to suffer is. (This harm arises not from Defendant's actions, but from his own demonstrated failure to manage his case within the boundaries contemplated by the Rules of Civil Procedure.) Mr. Donohoe also fails to address (yet again) the prohibition against using Rule 30(b)(6) to circumvent Rule 34. Indeed, Mr. Donohoe fails to raise *any* meaningful objection to Magistrate Judge Robinson's denial of his motion to compel, instead relying on (1) the same allegation of "undue prejudice and irreparable harm" on which he repeatedly rested previously;[10] and (2) the fact that Magistrate Judge Robinson did not address his request for leave to use his Rule 30(b)(6) deposition notice as a subpoena *duces tecum*. Pl.'s Objections [#44] at 8 n.3. The former is insufficient and unsubstantiated. As to the latter, Magistrate Judge Robinson was under no obligation to address Mr. Donohoe's specific arguments at all, let alone his in-the-alternative arguments. And simply pointing out that the argument was not addressed does not constitute a substantive objection to the ruling.

      In any event, as with Mr. Donohoe's other requests, his 30(b)(6) requests were duplicative, overbroad, and excessively burdensome. Many of the requests covered Bonneville

---

[10] Pl.'s Objections [#44] at 8 n.3; *cf.* Pl.'s Mot. to Compel [#19] at 15; Pl.'s Opp'n/Reply [#27] at 10; *see also* Def.'s Mot. for Protective Order [#21] at 15; Def.'s Reply [#31] at 9-10.

operations outside of Washington, D.C., which, for the reasons exhaustively briefed by Bonneville in this and prior filings, are outside the scope of relevant information for this lawsuit. *See supra*; Def.'s Mot. for Protective Order [#21] at 5-7 [II.A] & Ex. D ¶¶ 1, 6, 7, 9, 10, 11, 17, 21, & 25 (Amended Attachment A to Fed. R. Civ. P. 30(b)(6) Notice).  One was for the alleged written complaints against Mr. Mills.  *Id.* ¶ 8.  Others, while possibly proper subjects of questioning at a 30(b)(6) deposition, sought documents that Bonneville had already provided, that do not exist, or that are privileged.[11]  And yet others were overbroad requests for financial information, which were protected from discovery by Magistrate Judge Robinson's July 29 order and which Mr. Donohoe now abandons in his objections to this Court.  Pl.'s Objections [#44] at 6 n.2; *see also* Def.'s Mot. for Protective Order [#21] at 9-11 [II.C.2] & Def.'s Ex. D ¶¶ 19, 21.

Finally, as before, Mr. Donohoe's has failed to address these substantive objections to this Court.  As before, this failure renders any response to them likewise waived.  *See* III.D, *supra*; Fed. R. Civ. P. 34(b) (2007); Fed. R. Civ. P. 34 (2008); Pl.'s Mot. to Compel Ex. 5 (Bonneville responses and objections).

## IV.  CONCLUSION

For all these reasons, Mr. Donohoe's objections to the Magistrate Judge's order are baseless.  By no stretch has he demonstrated a clear error of law.  His objections are untimely, partially premature, and substantively lacking.  Magistrate Judge Robinson held a lengthy hearing, reviewed the parties' multiple submissions thoroughly, and made a wholly justified decision.  Plaintiff has failed to provide a showing, in any respect, that would warrant this Court

---

[11] *See* Def.'s Mot. for Protective Order [#21] at 2, n.2 and 16 n.20 (setting forth Bates ranges corresponding to documents already produced that were responsive to plaintiff's requests).

reaching "the definite and firm conviction that a mistake has been committed." *Page*, 498 F.

Supp. 2d at 225.

 WHEREFORE, Bonneville respectfully requests that the Court reject Mr. Donohoe's

objections to the Magistrate Judge's order denying his motion to compel and granting

Bonneville's motion for a protective order.


Dated: August 28, 2008


     DAVIS WRIGHT TREMAINE LLP


      /s/  Constance M. Pendleton
     Richard L. Cys (D.C. Bar No. 087536)
     Constance M. Pendleton (D.C. Bar No. 456919)
     1919 Pennsylvania Avenue, N.W., Suite 200
     Washington, DC  20006-3402
     (202) 973-4200
     (202) 973-4499 facsimile
     richardcys@dwt.com
     conniependleton@dwt.com

     Counsel for Defendant Bonneville International
      Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August, 2008, true and correct copies of the foregoing Memorandum of Points and Authorities in Opposition to Plaintiff's Objections to Magistrate Judge Robinson's July 29, 2008 Order Denying Plaintiff's Motion to Compel and Granting Defendant's Motion for Protective Order were served via ECF upon all counsel of record.

  /s/ Constance M. Pendleton
Constance M. Pendleton